## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **LEONA FAREN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | Case No. 1:23-cv-01270-MJM |
| | * | |
| **ZENIMAX ONLINE STUDIOS, LLC** | | |
| **And** | * | |
| **AP BENEFIT ADVISORS, LLC** | * | |
| * | | |
| | * | |
| **Defendants.** | | |

*   *   *   *   *   *   *   *   *   *   *   *   *   *

### MEMORANDUM IN SUPPORT OF DEFENDANT'S OF MOTION TO DISMISS
### AND MOTION TO SRIKE

Defendant ZeniMax Online Studios LLC ("ZOS")[1] by and through its undersigned counsel, and pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, submits the following Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint and Motion to Strike Plaintiff's request for a jury trial, and in support thereof state as follows:

### INTRODUCTION

Plaintiff, Leona Faren ("Ms. Faren"), filed this litigation claiming alleged improprieties in the handling of her health insurance benefits after her employment with ZOS ended in May 2022. She sues two defendants:  ZOS, her prior employer (which sponsors an employee group healthcare

---

[1] Plaintiff's actual employer was ZeniMax Media Inc. ("ZMI"), which is the parent company of ZOS.  For purposes of this Motion only, "ZOS" shall include and be interchangeable with ZMI. Plaintiff has also incorrectly spelled Defendant's name, which does not have a comma, and is ZeniMax Online Studios LLC.

benefit plan) and AssuredPartners Benefit Advisors, LLC ("AP"), ZOS's insurance broker and third-party administrator for the plan. Plaintiff asserts four claims: (1) Interference under the Employee Retirement Income Security Act of 1974 ("ERISA") § 510; (2) Retaliation under ERISA § 510; (3) alleged failure to provide Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage under ERISA § 601; and (4) Breach of Fiduciary Duty under § 502(a)(3).

All of Plaintiff's claims against defendant ZOS should be dismissed for failure to state a claim. Plaintiff's first two causes of action (Interference and Retaliation under ERISA § 510) fail to allege any intentional actions taken by ZOS or even that ZOS had knowledge of Ms. Faren's lapse in coverage prior to this lawsuit. Plaintiff's third claim fails because ZOS has taken all required steps to notify Ms. Faren of her right to COBRA, enroll her in COBRA coverage, and facilitate payment of claims according to the terms of the plan, and Plaintiff failed to exhaust administrative remedies prior to filing this litigation. Plaintiff cannot establish a breach of fiduciary duty claim under the facts pled here. Finally, Plaintiff's demand for a jury trial is improper given the nature of relief sought, and as such, that request should be stricken.

## STATEMENT OF RELEVANT FACTS[2]

ZOS employed Ms. Faren as a media artist until her voluntary resignation on May 9, 2022. Complaint ("Compl.") at ¶¶ 9, 14, 17. At that time, in exchange for a general release of all claims against ZOS, Ms. Faren executed a Separation Agreement, which provided, among other terms, that ZOS would subsidize a portion of her monthly COBRA costs so that she would pay the same monthly premium for her health insurance coverage as she had paid during her active employment for a period of up to four months after her employment ended (June 1, 2022 through September

---

[2] For purposes of this Motion only, while it disputes many of the facts as alleged, as is required by FRCP Rule 12(b)(6), ZOS assumes the truth of and relies solely on the facts pled by Ms. Faren in her Complaint.

30, 2022). *Id.* at ¶¶18-19; **Exhibit A**.[3] ZOS offered Ms. Faren's medical insurance benefits through Group Hospitalization and Medical Services, Inc. d/b/a/ CareFirst BlueCross BlueShield ("CareFirst"). Compl. at ¶ 20.

Following her resignation, Ms. Faren received the COBRA notice that ZOS was required to send her,[4] and on May 31, 2022, she elected to continue in the Company's group healthcare insurance plan, enrolling and sending her portion of the premium payment to AP. Compl. at ¶23. Ms. Faren contends that shortly thereafter, and as would be expected following the conclusion of her employment with ZOS, CareFirst informed her that her ZOS-provided health insurance policy was canceled.[5] Compl. at ¶25. On June 2, 2022, Ms. Faren contacted Tracey Zerhusen ("Ms. Zerhusen"), Human Resources Director at ZOS, and Michelle Cool ("Ms. Cool"), Benefits Director at ZOS, about the need to ensure her health insurance coverage continued under COBRA. *Id.* at ¶26. She alleges that Ms. Cool sent an "**urgent**" message to CareFirst in response to her concerns to ensure her timely enrollment in COBRA. *Id.* at ¶27 (emphasis added). Ms. Cool thereafter advised Ms. Faren that CareFirst was working to establish coverage under COBRA and that she would ensure that Ms. Faren would not have a gap in coverage. *Id.* at ¶¶28-29.

The next day, on June 3, Ms. Faren sent an email to Ms. Zerhusen about an issue she had obtaining medication. *Id.* at ¶32. Ms. Zerhusen responded that ZOS had done what was required

---

[3] A court may consider documents outside of the Complaint without converting a Motion to Dismiss to a Motion for Summary Judgment if the facts contained therein are subject to judicial notice or the documents are integral to the Complaint and there is no dispute as to the authenticity of the documents. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (*citing Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). Here the Separation Agreement Ms. Faren signed is integral to and repeatedly referenced in the Complaint. *See* Compl. ¶¶14-17. Because that document is confidential, ZOS is filing it under Seal. ZOS submits the Declaration of Michelle Cool at **Exhibit B**, swearing to the authenticity of the Separation Agreements and other Exhibits attached hereto.

[4] Ms. Faren received the COBRA notice on May 27, 2022, well within the deadline required under § 606 of ERISA. Compl. ¶22. Indeed, because ZOS accommodated and expedited her request, she was enrolled in COBRA (June 3) before she received the COBRA notice in the mail.

[5] Ms. Faren also alleges that COBRA somehow "informed" her of the same thing (Compl. at ¶25), but COBRA is a federal statute that has no capacity to inform.

so that Ms. Faren's benefits would continue through COBRA, and the current issue was outside of the Company's control. *Id.* Nevertheless, in an attempt to further support Ms. Faren, Ms. Zerhusen provided Ms. Faren a letter confirming her COBRA coverage. *Id.* at ¶33; **Exhibit C**.[6]

In mid-June 2022, consistent with Ms. Zerhusen's letter, CareFirst advised Ms. Faren that she was covered under their health plan and she proceeded with her scheduled medical procedures. Compl. at ¶34. Ms. Faren alleges that sometime thereafter, her health insurance coverage was retroactively terminated, and she was left responsible for her hospital and doctor bills. *Id.* at ¶ 35. Ms. Faren allegedly remained without healthcare coverage until September 25, 2022. *Id.* at ¶ 36. While alleging that neither ZOS nor AP sought to rectify the problem, *id.* at ¶38, Ms. Faren's Complaint is devoid of any facts indicating that she took any action to notify ZOS or AP of any problems she encountered after June 3, 2022, or the fact that her coverage had been retroactively terminated. Upon discovering these facts through this litigation, ZOS, AP, and CareFirst have retroactively reinstated her coverage from June 1, 2022 through September 30, 2022 and reprocessed and paid all of the claims previously rejected. *See* **Exhibit D**.[7]

## STANDARD OF REVIEW

### A. Motion to Dismiss

In order to survive a motion to dismiss under FRCP Rule 12(b)(6), the Complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The United States Supreme Court has made clear that this

---

[6] Again, this correspondence is expressly referred to in the Complaint and ZOS is simply producing an actual copy it. *See* Compl. ¶¶32-33; **Exhibit C**.

[7] The confirmation of payment is integral to the Complaint, as it reflects that payments were made after the Complaint in the case was filed and that she was in fact later reimbursed, and the document is authentic (*see* Exhibit B) and thus, appropriate for reference in this Motion. *See Am. Chiropractic Ass'n*, 367 F.3d at 234. Because this document may contain confidential medical and/or personal information about Ms. Faren, it is being filed under Seal.

requires that the plaintiff do more than just plead "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557). Rather, the facts pled must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court, however, need not accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B.  Motion to Strike

Under FRCP Rule 12, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'[I]mpertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question. *See* Wright and Miller, Federal Practice and Procedure § 1382 (3d ed.). Whether to grant a motion to strike is a matter of the court's discretion. *See Jay Clogg Realty Grp., Inc. v. Burger King Corp.*, 298 F.R.D. 304, 307 (D. Md. 2014) (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)) (noting that, while motions to strike are generally disfavored, "the court maintains wide discretion in considering a motion to strike").

## <u>ARGUMENT</u>

### A.  Ms. Faren Has No Claim Against ZOS for Interference Under ERISA

Ms. Faren fails to state a claim of interference under ERISA against defendant ZOS. To do so, she must "allege conduct on the part of the defendant that is *actually proscribed* by ERISA's interference statute" with the particularity required by *Twombly* and *Iqbal,* as described *supra*. *Eweka v. Hartford Life & Acc. Ins. Co.*, 955 F. Supp. 2d 556, 563 (E.D. Va. 2013) (emphasis

added). Plaintiff must "show more than the mere denial of a claim to establish that [Defendant] has acted with the intent of interfering with a future right under [ERISA]." *Id.* (*citing Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 422 (4th Cir.1993)). Rather, the Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted).

Here, rather than alleging interference, Ms. Faren's Complaint reinforces that ZOS repeatedly tried to ensure enrollment in and continuation of her COBRA coverage. Ms. Faren concedes that ZOS provided her a subsidy to cover a portion of her COBRA expenses. *See* Compl. at ¶19. When she informed ZOS of concerns with continuing her coverage shortly after her employment ended, ZOS took immediate action to ensure her coverage. *See id.* at ¶¶27-33. Specifically, on June 2, Ms. Cool sent an **urgent** message to CareFirst seeking to expedite and confirm the coverage and informed Ms. Faren that they were working to ensure that she did not have a gap in coverage and to try to reactivate any prior approved authorizations. *Id.* On June 3, Ms. Zerhusen sent an email and letter to Ms. Faren confirming her enrollment in COBRA coverage. *Id.* While complaining that her health insurance was later retroactively terminated, Ms. Faren alleges **no facts** to indicate that ZOS had any involvement in such later termination, much less that it interfered with her rights in some way.

By contrast, courts have found interference where an employer publicly expressed concerns over increasing health care costs, including costs relating to the plaintiff's hospitalization in particular, made significant changes to its health plan and stop-loss coverage, and even commented on the plaintiff's medical expenses and their effect on the company. *See Stein v. Atlas Indus., Inc.*, 730 F. App'x 313, 320 (6th Cir. 2018). Here, Ms. Faren fails to allege that ZOS took any action that interfered with her temporary loss of COBRA coverage after June 3, much less that

it did so with an unlawful specific intent to interfere.  At most, she complains that ZOS did not sufficiently assist her in rectifying her coverage issue, though she states no facts to indicate that she even informed ZOS of the problem. Mere nonfeasance is not "interference," which must be active and intentional. *See Eweka,* 955 F. Supp. at 563 (finding that the plaintiff did not establish a *prima facie* case of interference when he failed to provide facts showing that defendant took intentional actions to interfere with his benefits claim).

### B.  Ms. Faren States No Claim Against ZOS for ERISA Retaliation

Ms. Faren similarly fails to state a claim against ZOS for retaliation under ERISA.  Under § 510 of ERISA, it is unlawful for an employer to take an adverse employment action against an employee for purposes of retaliating against or interfering with coverage. Specifically:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S. Code § 1140. *See Adkins v. CSX Transportation, Inc.,* No. 21-2051, 2023 WL 4035811, at *4 (4th Cir. June 16, 2023) (citing *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016)) (internal quotations omitted) (A plaintiff "must first make a prima facie showing that he . . . engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's . . . protected activity.").

Ms. Faren's claim for retaliation is entirely devoid of any facts indicating that ZOS retaliated against her for exercising protected rights under ERISA. Indeed, as shown *supra*, her allegations highlight the support ZOS provided her, including that ZOS subsidized her COBRA coverage and repeatedly and "urgently" tried to assist her upon notification of challenges she experienced shortly after her employment ended.  As for her asserted temporary loss of coverage

after June 3 and denial of her claims, she does not allege that ZOS had **any** involvement, direct or indirect, in these purported outcomes or that ZOS took any action to cause her harm, much less that any such conduct was "connected to her protected activity." In sum, what facts she alleges show only assistance to her by ZOS in confirming coverage rather than retribution of any kind for availing herself of ERISA benefits, or any other protected activity. As such, Ms. Faren fails to state even a remotely facially plausible claim against ZOS for ERISA retaliation.

### C. Ms. Faren Has No Claim Against ZOS for a Violation of COBRA

Ms. Faren's claim that ZOS violated COBRA fails for two reasons. First, as alleged, her Complaint identifies no conduct by ZOS that constitutes a violation of COBRA. She concedes that she received a timely COBRA notice in May of 2022 after her resignation. Compl. at ¶ 22. More than this, ZOS facilitated her expeditious enrollment in COBRA without a gap in coverage following her termination of employment. *Id.* at ¶33; **Exhibit C**. Thus, to the extent that her COBRA claims involve either (1) a failure to provide timely COBRA notice under §502(a)(1)(A) or (2) interference with her right to elect COBRA coverage or other adverse action to prevent her from exercising that right, these claims are without merit.

Second, to the extent Ms. Faren is claiming a violation of COBRA for failing to provide her continuing coverage (as opposed to just failing to provide the required notice of rights or interfering with her right to enroll in COBRA), she must (1) show an improper denial of claims for benefits that would have otherwise been covered under COBRA and (2) exhaust administrative remedies prior to filing such a claim in court, neither of which she has done. As provided by the Claims Statement Summary, CareFirst reprocessed and paid all of the claims previously denied. *See* **Exhibit D**. Had Ms. Faren taken any action to earlier notify ZOS, AP or CareFirst of the alleged eventual retroactive denial of her claims, which she nowhere alleges that she did, this issue could have been rectified months ago. While not required for a claim of mere improper notice

under COBRA, this Court has stressed that a benefit claim, even if couched in theories ordinarily not requiring exhaustion, should trigger the court's discretion to refer it for administrative review under the plan's procedures. *See Barnett v. Perry*, 2011 WL 5825987, \*5-\*6 (D. Md. Nov. 16, 2011). Therefore, even if CareFirst had not reversed the claims that had previously been denied, Ms. Faren would still have been required to appeal the denials under the plan's claims procedure, which she has not alleged that she has done. *Id.* Indeed, Judge Blake cautioned against such "a naked attempt to circumvent the exhaustion requirement." *Id*.

Here, Ms. Faren's COBRA claim is likewise clearly a claim for benefits that should be referred for administrative review prior to allowing it to proceed in litigation. Ms. Faren frames this allegation as a violation of COBRA in "a naked attempt to circumvent the exhaustion requirement." *See id.; see also* Compl. at ¶50-51:

> Defendants unilaterally, without cause or justification, failed to provide coverage to Ms. Faren in violation of COBRA, ERISA §601, 29 U.S.C. §1161(a). Under COBRA, Ms. Faren's health insurance coverage should have remained in effect for a period of eighteen (18) months or until November 30, 2023. Defendants have failed to fulfill their obligations under the group healthcare plan and have violated the applicable provisions of COBRA.

Administrative review will require substantive consideration of what the healthcare plan provides, as well as the Separation Agreement that the plan sponsor made with Ms. Faren. Here, Ms. Faren asserts no facts to allege that she sought administrative review. Instead, she merely states that she emailed Ms. Zerhusen and Ms. Cool about her concern on June 2, and then emailed Ms. Zerhusen further on June 3, after which CareFirst initially acknowledged her coverage, and she received medical treatment. Compl. ¶¶26-34. Thereafter, she alleges no further contact with ZOS, not to mention the filing of a claim under the plan to obtain coverage from CareFirst or an appeal of any claim denial. Count III of the Complaint fails for this further reason.

### D. Ms. Faren Has No Fiduciary Duty Claim Against ZOS

#### 1. ZOS was not a fiduciary when negotiating Ms. Faren's Severance.

Ms. Faren's claim for breach of fiduciary duty under ERISA, by ZOS, similarly fails. Ms. Faren alleges that ZOS acted in a fiduciary capacity when negotiating the Severance Agreement with her, while allegedly intending not to honor the terms of the parties agreement. *See* Compl. at ¶¶52-55. She does not allege, nor is there any legal basis to conclude, that the Separation Agreement is an ERISA plan or that ZOS is an ERISA fiduciary with respect to the Separation Agreement. ZOS was not acting as a fiduciary in negotiating and entering into the Separation Agreement with Ms. Faren. *See Wilson v. Dantas*, No. 12 Civ. 3238 (GBD), 2013 WL 92999, at *3 (S.D.N.Y. Jan. 7, 2013), *aff'd*, 746 F.3d 530 (2d Cir. 2014) (providing that "employers owe current employees no fiduciary duties," and "similarly do not owe such duties to former employees"); *see also Barton v. Smartstream Techs., Inc*, No. 16 CIV. 1718 (PAE), 2016 WL 2742426, at *7 (S.D.N.Y. May 9, 2016) ("a fiduciary relationship arises only when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.") (internal quotation marks omitted).

For Ms. Faren to adequately plead that she was owed a fiduciary duty, she would have to allege that ERISA imposed a duty on ZOS to give advice for her benefit when they were negotiating the Separation Agreement, which she has not done, nor would such allegations if made state "a *facially plausible* claim" under the *Twombly/Iqbal* standard. Instead, while negotiating an agreement that was **not** subject to ERISA, the parties were adverse, with ZOS depending upon her resignation and waiver of claims and Ms. Faren seeking the severance benefits. In fact, consistent with these realities, ZOS encouraged Ms. Faren to seek whatever independent review she desired over the period from January to May of 2022 and then expressly advised her to seek her own counsel prior to signing the agreement. *See* **Exhibit A:**

> You have been advised in writing to consult with an attorney before executing this Agreement…You have obtained and considered such legal counsel as you deem necessary

*See also id.*:

> I HAVE READ THE OFFER PRESENTED IN PARAGRAPHS 1 THROUGH 7 ABOVE AND I FULLY UNDERSTAND THEIR TERMS AND AGREE TO ACCCEPT THESE TERMS. I AM SIGNING THIS AGREEMENT FREELY AND VOLUNTARILY, HAVING BEEN GIVEN A FULL AND FAIR OPPORTUNITY TO CONSIDER IT AND CONSULT WITH ADVISORS OF MY CHOICE.

As such, Ms. Faren could not have reasonably relied on or believed that ZOS was acting in a fiduciary capacity under ERISA in negotiating her Separation Agreement, as ZOS clearly stated that Ms. Faren should not rely on ZOS for advice. See *Wilson*, 2013 WL 92999, at *3.

> **2.  Ms. Faren's allegations fail to state that ZOS breached any fiduciary duty.**

Ms. Faren further alleges that ZOS breached its fiduciary duty when it accepted her premium payment but failed to provide continuation coverage, failed to make reasonable efforts to remedy her situation, misrepresented to her that it would uphold the terms of the Separation Agreement, failed to disclose that her insurance had been canceled, and failed to disclose that ZOS had canceled her insurance coverage. Compl. at ¶56.

The Complaint alleges that AP was the third-party administrator of the healthcare plan. (Compl. at ¶5). To the extent that ZOS could be characterized as retaining any relevant administrator role, ZOS could not have breached any fiduciary duty to Ms. Faren under the facts alleged in the complaint. "[A] plan administrator acts in a fiduciary capacity when it conveys (or fails to convey) material information to a plan participant concerning the retention of eligibility for a benefit plan ***when that administrator is aware*** that the participant wishes to maintain his participation therein." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 279 (4th

Cir. 2019)(emphasis added). *See also Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001)("[A]n ERISA fiduciary that ***knows or should know*** that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent") (emphasis added). Thus, the Fourth Circuit makes clear that a breach occurs when a plan administrator or other fiduciary has knowledge that there is a conflict between the administration of the plan and the participant's understanding of their coverage. In this case, Plaintiff has alleged that each time ZOS was informed that there was an issue with her coverage, ZOS took remedial action. Moreover, Plaintiff has not alleged that ZOS was aware of facts that would prevent her from being covered or result in a denial of her valid claims. Nor does she allege that ZOS misrepresented to her that she would be covered when she would not have been covered under the terms of the plan. At all times prior to receiving a copy of this litigation, it was ZOS's understanding that Plaintiff was eligible for and receiving coverage as provided for in the Separation Agreement. Thus, Plaintiff fails to allege facts to suggest that ZOS ever breached a fiduciary duty.  Further, to the extent there was any improper denial of her benefits, it was promptly rectified upon notice to ZOS of same. As described *infra*, Ms. Faren is not entitled to any other damages.

> 3.  **Ms. Faren's claim for a breach of fiduciary duty is an attempt improperly to mask a claim for nonpayment of benefits that she has elected not to assert as such.**

Both the Fourth Circuit and this Court also have made clear that attempted artful pleading of an alleged breach of fiduciary duty claim under ERISA cannot be used to redress what is essentially an alleged grievance for nonpayment of benefits due under a plan.  *See, e.g.*, *Coyne & Delaney Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712 (4th Cir. 1996) (failure to pay an employee's healthcare benefits not redressable as a claim for breach of fiduciary duty);

*Estate of Spinner v. Anthem Health Plans of Virginia, Inc.*, 388 F. App'x 275, 282 (4th Cir. 2010) ("mere recitation of the statutory requirements does not covert what is essentially a claim to recover individual benefits into a proper claim under [502](a)(2)" for breach of fiduciary duty); *Barnett v. Perry*, 2011 WL 58259877 at *4 (D. Md. Nov. 16, 2011) (rejecting "artful pleadings that recharacterize the denial of benefits as breach of fiduciary duty.") Ms. Faren's attempted fiduciary duty claim must also be rejected for this additional reason.

The gist of her grievance is clearly seeking to obtain payment of medical costs she claims are owed to her.  Her factual allegations focus on her having incurred medical expenses for which she claims not to have received reimbursement under the plan.  Compl. at ¶¶ 17-18, 23-40.  She further emphasizes this essential nature of the purported wrongdoing by demanding such payment as the first and foremost item in her prayer for relief:  i.e. the "awarding actual and consequential damages as may be proven, **including out of pocket costs** for the discontinuance of her health care coverage."  She identifies such "costs" as being "medically necessary." Compl.  at ¶ 40.  While she seeks to bury such cost reimbursement in cryptic generic verbiage about "actual and consequential damages as may be proven," compensatory damages are not included among the equitable remedies under section 502 of ERISA.  *Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 195 (4th Cir. 2002)*, Porter v. Elk Remodeling Inc.,* 2010 WL 2640162 at *7 (E.D. Va., July 1, 2010.) What § 502 does provide for is enforcement of a plan to obtain benefits due under 502(a)(1)(B), which Ms. Faren has deliberately avoided trying to invoke.

Other typical indicia of claims for benefits due are that (1) that the relief sought is individual rather than directed for the benefit of the plan as a whole, and (2) the claim will require interpretation and application of the plan.  *See, e.g., Barnett*, 2011 WL 5825987 at * 4 (no fiduciary duty claim where relief of "retroactive reinstatement to the Plan and reimbursement for their costs

13

would benefit only the Barnetts" and "where resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan")(quoting *Coyne & Delaney Co*., 102 F.3d at 714). The relief Ms. Faren seeks of reimbursement for costs and retroactive reinstatement to the plan (see prayer at items i and ii) is individual and not sought for the plan as a whole. In awarding Ms. Faren the out-of-pocket medical costs she seeks, the Court will need to engage both in application of the plan to make the award and interpretation of the plan to confirm what would be covered and owed.

The trivial expedient of adding an allegation in Count IV that ZOS purportedly did not intend to pay her when promising to does not change the essential nature of the grievance. The claim also fails because of the absence of any specifics making such an intent allegation "facially plausible" rather than an assertion of a mere possibility.

Ms. Faren has eschewed pleading a benefits-due claim because she knows she has not exhausted administrative remedies (see above), as is required for such a claim. *See Perry,* 2011 WL 5825987, *5-*6 (condemning such "a naked attempt to circumvent the exhaustion requirement."). In all events, because Count IV seeks to disguise such an apparent complaint in a defective fiduciary duty claim under Section 502, it must be dismissed for that reason in addition to the others noted above.

### E.  The Court Should Strike Plaintiff's Request for a Jury Trial.

Ms. Faren demands a trial by jury for her claims. The Seventh Amendment's right to a jury trial applies when "legal rights, not equitable rights, are at issue." *Williams v. Centerra Grp.*, LLC, 579 F. Supp. 3d 778, 782 (D.S.C. 2022). To determine whether the claim is equitable or legal, "courts engage in a two-prong inquiry" based on "(1) the nature of the issues involved, and (2) the remedy sought." *Id.* Claims under ERISA are decidedly "equitable, not legal, in nature." *Id.* Thus, the first prong weighs in favor of striking the trial by jury.

As for the second prong, Ms. Faren requests (1) actual and consequential damages, including out of pocket costs resulting from the discontinuance of her health care coverage; (2) injunctive relief to reinstate Plaintiff as a participant; (3) equitable remedy of surcharge; (4) attorneys' fees and costs; and (5) granting such other relief that may be just and proper. All damages sought are equitable in nature. As discussed *supra,* Ms. Faren's demand of "actual and consequential" damages are nothing more than a demand for benefits. Ms. Faren's request for injunctive relief – too – is "plainly equitable." *Williams*, 579 F. Supp. at 783. While a request for surcharge is a request for monetary damages, "this monetary remedy has historically been considered a form of equitable relief." *Id.* Finally, any award of attorneys' fees are similarly equitable in nature. *Ringling Bros.-Barnum & Bailey, Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F. Supp. 598, 605 (E.D. Va. 1997). Thus, a trial by jury would be inappropriate to resolve the matters before the Court, and ZOS's Motion to Strike should be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, ZOS respectfully requests that the Court grant its Motion to Dismiss and Motion to Strike and provide such other relief as the Court deems warranted under the circumstances.

Respectfully submitted,

*/s/ Stephanie K. Baron*
Stephanie K. Baron (Fed. Bar No. 27417)
Paolo Pasicolan (Fed. Bar No. 28334)
Victoria K. Hoffberger (Fed. Bar No. 21231)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 385-3712
(410) 385-3700 (facsimile)
sbaron@milesstockbridge.com
ppasicolan@milesstockbridge.com
vhoffberger@milesstockbridge.com
*Attorneys for ZeniMax Online Studios LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of July 2023 a copy of the foregoing **Defendant's ZeniMax Online Studios LLC's Motion to Dismiss and Motion to Strike, Memorandum of Law in Support, and proposed Order** was served on all counsel of record, electronically, via this Court's electronic filing system.

*/s/ Stephanie K. Baron*
Stephanie K. Baron (Fed. Bar No. 27417)