# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEONA FAREN <br> 11693 North Shore Drive, Unit #01 <br> Reston, VA 20190 <br><br> Plaintiff, <br><br> v. <br><br> ZENIMAX ONLINE STUDIOS LLC <br> 200 International Circle <br> Cockeysville, MD 21030 <br><br> and <br><br> AP BENEFIT ADVISORS, LLC <br> 200 Colonial Place Parkway, Suite 140 <br> Lake Mary, FL 32746 <br><br> Defendants. | Civil Case No: 1:23-cv-01270-MJM |

## AMENDED COMPLAINT

Plaintiff Leona Faren ("Ms. Faren"), by and through her undersigned counsel, files this Amended Complaint in her action she commenced against Defendants ZeniMax Online Studios LLC ("ZOS") and AP Benefit Advisors, LLC ("AP"), and alleges the following facts in support of her Complaint.

## NATURE OF THE ACTION

1. This is a claim by a former employee against her former employer and its plan administrator for their failure to provide continuation coverage in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, Plaintiff alleges that Defendants unlawfully interfered with her right to continuation coverage in violation of ERISA, 29 U.S.C. § 1140 and 29 U.S.C. § 1161(a). Plaintiff seeks appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3).

## PARTIES

2. Plaintiff Leona Faren currently resides in Reston, Virginia. She previously resided in Timonium, Maryland during her employment with Defendant ZOS.

3. Defendant ZOS is a Delaware limited liability company with its principal place of business located in Hunt Valley, Maryland. ZOS employs over twenty employees and transacts business in Maryland. ZOS is a wholly owned subsidiary of ZeniMax Media Inc. ("ZMI").

4. Defendant AP is a Maryland limited liability company with its principal place of business located in Lake Mary, Florida. AP is wholly owned by AssuredPartners Capital, Inc., which is a Delaware corporation with the same principal place of business as AP. AP does business in the state of Maryland as a plan administrator and an insurance broker offering insurance products and related services.

5. ZMI, the parent company of ZOS, sponsors a group healthcare plan that provides health benefits to its and ZOS's employees, former employees, and families of former employees. AP serves as the third-party administrator for the plan.

6. At all relevant times to this Complaint, the group healthcare plan constituted a "welfare plan" as defined by 29 U.S.C. § 1002(1), and Plaintiff is a "participant" as defined by 29 U.S.C. § 1002(7) by reason of her participation in the group healthcare plan.

## JURISDICTION AND VENUE

7. This action arises under ERISA, and therefore this Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f). Additionally, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over actions that arise under the laws of the United States.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1132(e)(2). Alternatively, venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in Maryland.

## STATEMENT OF THE FACTS

**The Parties' Contractual Agreement**

9. In 2018, Ms. Faren began her employment as a Media Artist with ZOS, a division of ZMI, in Hunt Valley, Maryland.

10. Ms. Faren is a transgender woman. Although assigned male at birth, Ms. Faren is female.

11. When her supervisor outed her as transgender, Ms. Faren was forced to come out in January 2021.

12. Subsequently, her supervisor and a group of other employees subjected Ms. Faren to harassment based on her gender identity and expression. They disrespected her privacy by publicly sharing her medical information, excluded her from projects, refused to update her credentials, and used her old name ("deadnaming").

13. Ms. Faren reported the issues to Human Resources ("HR") in April 2021 after enduring such discriminatory harassment daily for approximately four months.

14. In January 2022, ZOS approached Ms. Faren with a Severance Agreement ("Agreement"), which included coverage of her health insurance pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

15. However, the Agreement was also presented with a performance improvement plan ("PIP"), advising that the Agreement was a one-time offer.

16. Aware that continuation coverage would help her pay for medical expenses that she needed, including transition-related care, ZOS offered Ms. Faren the Agreement under the

3

condition that she would not bring a lawsuit.

17. After months of pressure from the PIP, Ms. Faren executed the Agreement on May 13, 2022 while she was still physically recovering from major surgery. Her decision was driven by the concern that she would not be able to have her follow-up treatments covered without employer-subsidized health insurance.

18. Continuation coverage under the Agreement included medical, dental, and vision benefits. It provided for eighteen months of continuation coverage under COBRA, starting June 1, 2022 and ending November 30, 2023.

19. Additionally, the Agreement provided that the employee portion of Ms. Faren's COBRA premium would be paid by ZMI as a subsidy, starting June 1, 2022 and ending September 30, 2022. AP is the third-party administrator for ZMI's group healthcare plan.

20. While employed at ZOS, Ms. Faren's medical benefits were provided by CareFirst Blue Cross Blue Shield ("CareFirst" or "BCBS").

21. By signing the Agreement on May 13, 2022, Ms. Faren terminated her employment at ZOS.

22. On May 27, 2022, AP sent Ms. Faren a notice containing a summary of her COBRA rights, the terms of the group healthcare plan, and information on how to elect for continuation coverage.

**Defendants' Denial of Health Coverage**

23. On May 31, 2022, Ms. Faren elected to continue coverage by enrolling online. She paid her first month's premium to AP.

24. However, the medical clinic that Ms. Faren had been planning her procedures with alerted her that her pre-authorizations had been canceled due to lack of coverage. According to the clinic, they needed active insurance information to restart the authorization process, which

could take weeks. This would effectively reset the authorization process and potentially delay the procedures that Ms. Faren had planned to take place before the end of the summer.

25. BCBS and AP informed Ms. Faren that her insurance policy was canceled. Both directed her to contact her former employer's HR Department.

26. On June 2, 2022, Ms. Faren reached out via email to Tracey Zerhusen ("Ms. Zerhusen"), HR Director at ZMI, to correct the problem with her insurance. Ms. Zerhusen responded by adding Michelle Cool ("Ms. Cool"), the company's Benefits Director, to the conversation.

27. Ms. Cool sent an urgent message to CareFirst to see when their system would be updated and confirmed with her contacts that it was a "timing thing" with the file sent from AP to CareFirst.

28. Ms. Cool stated that they were working to have Ms. Faren's insurance set up by close of business, and that it would be retroactive to June 1 so Ms. Faren would not have a gap in coverage.

29. Ms. Cool further confirmed from her CareFirst contact that they would reach out to the authorization team to see what could be done to reactivate any prior approved authorizations.

30. Ms. Faren's medical clinic tried to submit the authorizations again, but their system would not let them do that so long as Ms. Faren's insurance plan was inactive.

31. Because the errors were not corrected, Ms. Faren's ability to schedule and obtain her healthcare needs was interrupted.

32. On June 3, 2022, Ms. Faren sent an email to Ms. Zerhusen expressing how she could not get her medication refilled before a planned trip because the insurance information was not up to date, notwithstanding the fact that Ms. Faren paid her insurance premiums.

33. Ms. Zerhusen responded that the company had "done all that it was supposed to" so that her benefits would be continued through COBRA, and that the issue was "outside of the Company's control." She attached a letter to her email, and the attached letter confirmed Ms. Faren's COBRA coverage.

34. In June, while waiting for her insurance to become active again, Ms. Faren was forced to pay out-of-pocket for medically necessary prescription drugs.

35. In mid-June, Ms. Faren confirmed with BCBS that she was still covered under ZMI's group plan and scheduled her surgeries to take place in July.

36. Ms. Faren's medical clinic was sympathetic to her situation and expedited the process to get her procedures re-authorized through her insurance so that she would not have to reschedule her surgeries.

37. However, it was only when she received her medical bills that Ms. Faren learned that she was not covered for her July surgeries. Specifically, the charges on the bill were labeled as "Expenses incurred after coverage terminated."

38. Other than the aforementioned medical bills, Ms. Faren received no other notice that her health coverage was retroactively terminated.

39. Ms. Faren did not receive a benefit denial letter when BCBS reversed the previously approved charges. Therefore, she was not put on notice of any obligation to file an administrative appeal or notice of her rights under ERISA and COBRA.

40. Ms. Faren continued to be without health insurance until September 25, 2022, when she started her new job, resulting in high priced prescription drug payments, as well as physician and hospital bills, many of which she was not aware of for months following services.

41. Ultimately, Ms. Faren's coverage under the group healthcare plan was no longer effective after June 1, 2022.

42. Neither ZOS nor AP sought to remedy the situation after June 3, 2022 until Ms. Faren commenced this law suit.  If she had been advised of an administrative process for addressing the retroactively denied claims, she would have known what was expected in terms of filing an appeal.

43. Since neither ZOS or it vendor, BCBS followed through with providing the required notice of the appeal process or Ms. Faren's rights, commencing this action to remedy the situation is consistent with ERISA's regulatory requirements and controlling case law in this jurisdiction.

44. Ms. Faren has been damaged in that she was deprived of her right to health benefits starting June 2, 2022 because of Defendants' conduct, and she has been forced to pay for medically necessary expenses out-of-pocket.

## COUNT I
## ERISA § 510 (Interference)

45. All allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

46. Section 510 of ERISA, 29 U.S.C. § 1140, makes it unlawful for any person to interfere with the attainment of any right to which the participant may become entitled under the employee benefit plan or under ERISA.

47. Knowing that Ms. Faren needed health coverage to cover necessary medical expenses, and to dispose of what they saw as a "liability," ZOS induced Ms. Faren to accept the Agreement by offering an employer subsidy to partially cover the cost of her premiums.

48. Because Ms. Faren reached out to Defendants in June 2022 informing them of her lapse of coverage, Defendants had actual knowledge that Ms. Faren was without insurance.

49. The discrimination based on gender identity and expression that Ms. Faren experienced while employed at ZOS gives rise to an inference that ZOS had a discriminatory

motive to interfere with Ms. Faren's ERISA rights by retroactively canceling her insurance.

50. Furthermore, the close temporal proximity of Ms. Faren's exercise of her ERISA rights and the subsequent and repeated retroactive cancellations of her health coverage give rise to an inference of Defendants' motive to interfere with her ERISA rights.

51. To avoid bearing the cost of her medical expenses, and in particular, those procedures relating to her transition, Defendants illegally and intentionally interfered with Ms. Faren's right to obtain health benefits by failing to provide her with continuation coverage and retroactively canceling her coverage in violation of ERISA § 510.

## COUNT II
## ERISA § 510 (Retaliation)

52. All allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

53. Section 510 of ERISA makes it unlawful for any person to discriminate or otherwise take adverse employment actions against a participant because of the participant's exercise of rights under the provisions of the employee benefit plan or under ERISA.

54. Ms. Faren exercised and/or attempted to exercise her rights under the group welfare plan by seeking continuation coverage provided to former employees under COBRA and pursuant to the terms of the Agreement.

55. As described previously, Defendants acted with discriminatory motive when it took adverse action against Ms. Faren by retroactively canceling her insurance because of her exercise of rights under ERISA in violation of ERISA § 510.

## COUNT III
## ERISA § 601 (COBRA)

56. All allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

57. Under COBRA, Ms. Faren's health insurance coverage should have remained in effect for a period of eighteen (18) months or until November 30, 2023.

58. Ms. Faren received no notice from Defendants or BCBS informing her of the denial of her claims or her right to appeal the denials.

59. Defendants unilaterally, without cause or justification, failed to provide continuation of coverage to Ms. Faren in violation of COBRA, ERISA § 601, 29 U.S.C. § 1161(a).

60. Defendants have failed to fulfill their obligations under the group healthcare plan and have violated the applicable provisions of COBRA.

## COUNT IV
## Breach of Fiduciary Duty

61. All allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

62. Defendants owed Ms. Faren the duties of a fiduciary pursuant to ERISA § 404, 29 U.S.C. § 1104.

63. Knowing that Ms. Faren needed healthcare coverage for her ongoing medical procedures, ZOS acted as a fiduciary when it presented the Agreement to Ms. Faren under the threat of a PIP.

64. Furthermore, ZOS acted as a fiduciary when, by sending her a letter confirming that her insurance was active, it represented to Ms. Faren that she was covered when she was not.

65. Ms. Faren reasonably relied on ZOS's June 3, 2022 letter representing that she was covered, and subsequently incurred medical expenses.

66. Ms. Faren reasonably relied on ZOS's representations when she signed the Agreement. She would not have signed the Agreement if she had known that both ZOS and AP did not intend to honor the terms of the Agreement.

67. As plan administrator, AP also owed fiduciary duties to Ms. Faren.

68. Furthermore, Ms. Faren made both Defendants aware of her lack of insurance coverage when she reached out to them in June 2022.

69. Defendants continued to be aware of Ms. Faren's lapse in coverage when Defendants retroactively terminated her insurance, resulting in the improper denial of her claims.

70. In sum, Defendants breached their fiduciary duties to Ms. Faren in that they:

   (a) took Ms. Faren's premium payment;

   (b) failed to provide continuation coverage as prescribed by COBRA;

   (c) failed to make reasonable efforts to remedy her situation;

   (d) misrepresented to her that they would uphold the terms of the Agreement;

   (e) failed to disclose that her insurance had been canceled; and

   (f) failed to disclose that ZOS had canceled her insurance coverage.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the entry of judgment by the Court:

   (i) awarding actual and consequential damages as may be proven, including out of pocket costs resulting from the discontinuance of her health care coverage;

   (ii) entering injunctive relief directing Defendants to reinstate Plaintiff as a participant the group healthcare plan until the end of the 18-month period for continuation coverage under COBRA, in accordance with the Agreement;

   (iii) ordering that Plaintiff is entitled to the equitable remedy of surcharge;

   (iv) awarding attorneys' fees and costs to Plaintiff, pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

   (v) granting such other and further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO THE CLAIMS OF BREACH OF FIDUCIARY DUTY AND VIOLATION OF ERISA SECTION 510**

Dated: August 4, 2023                    Respectfully submitted,


                                         /s/Denise M. Clark
                                         Denise M. Clark (17385)
                                         Clark Law Group, PLLC
                                         1100 Connecticut Avenue, N.W., Suite 920
                                         Washington, D.C. 20036
                                         Tel: (202) 293-0015
                                         Fax: (202) 293-0115
                                         dmclark@benefitcounsel.com

                                         *Counsel for Plaintiff*