## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LEONA FAREN,

        Plaintiff,

        v.

ZENIMAX ONLINE STUDIOS LLC AND
AP BENEFIT ADVISORS, LLC

        Defendants.

Civil Case No.: 1:23-cv-01270-MJM

## PLAINTIFF'S OPPOSITION TO DEFENDANT
## ZENIMAX ONLINE STUDIOS LLC'S MOTION TO DISMISS
## AND MOTION TO STRIKE THE AMENDED COMPLAINT

Respectfully submitted,

/s/ Denise M. Clark
Denise M. Clark (17385)
CLARK LAW GROUP, PLLC
1100 Connecticut Ave., N.W., Suite 920
Washington, D.C. 20036
Tel: (202) 293-0015
Fax: (202) 293-0115
dmclark@benefitcounsel.com

*Attorney for Plaintiff*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF RELEVANT FACTS ............................................................................ 1

STANDARDS OF REVIEW ................................................................................................ 3

    I.     Motion to Dismiss ................................................................................................... 3

    II.    Motion to Strike .................................................................................................... 4

ARGUMENT .......................................................................................................................... 5

    I.     Ms. Faren Has Established an ERISA Interference Claim Against ZOS ...................... 5

    II.    Ms. Faren Has Established an ERISA Retaliation Claim Against ZOS ....................... 7

    III.   Ms. Faren Has Established a Claim for Violation of COBRA Against ZOS ................. 8

       A.    ZOS Failed to Provide Continuation Coverage as Required by COBRA ................... 8

       B.    Ms. Faren is Not Required to Exhaust Administrative Remedies ............................... 9

         1.    Futility ............................................................................................................. 10

         2.    Claiming Rights Based on Statutory Obligation ......................................... 11

         3.    Lack of Meaningful Access to Review Procedures .................................... 11

    IV.   Ms. Faren Has Established a Fiduciary Duty Claim Against ZOS .............................. 13

       A.    ZOS is a Fiduciary, Despite Not Being Named ......................................................... 13

         1.    ZOS Acted as a Fiduciary When Negotiating Ms. Faren's Severance ...................... 13

         2.    ZOS Acted as a Fiduciary in its Misrepresentations and Omissions ......................... 15

         3.    Factual Development is Necessary to Determine Fiduciary Status .......................... 16

       B.    ZOS Breached its Fiduciary Duty ............................................................................ 18

       C.    Ms. Faren Requires Appropriate Relief to Remedy ZOS's Breach ........................... 19

    V.    Ms. Faren is Entitled to a Jury Trial ....................................................................... 21

CONCLUSION ...................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 3

*Beacon Theaters, Inc. v. Westover*,
   359 U.S. 500 (1959) ........................................................................................ 21, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 3

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ......................................................................... 4, 7, 18

*Chauffeurs, Teamsters & Helpers,*
   *Local No. 391 v. Terry*, 494 U.S. 558 (1990) ...................................................... 21

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) ........................................................................................ 20, 21

*Conkwright v. Westinghouse Elec. Corp.*,
   933 F.2d 231 (4th Cir. 1991) ................................................................................. 5

*Counts v. Am. Gen. Life & Acc. Ins. Co.*,
   111 F.3d 105 (11th Cir. 1997) ............................................................................. 12

*Curtis v. Loether*,
   415 U.S. 189 (1974) .............................................................................................. 21

*Custer v. Sweeney*,
   89 F.3d 1156 (4th Cir. 1996) ............................................................................... 16

*Dairy Queen Inc. v. Wood*,
   369 U.S. 469 (1962) .............................................................................................. 22

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,
   931 F.3d 269 (4th Cir. 2019) ............................................................................... 14

*E.I. du Pont de Nemours & Co.*,
   279 F.R.D. 331 (D. Md. 2012) ............................................................................... 4

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ................................................................................. 8

*Ellis v. Metro. Life Ins. Co.*,
   126 F.3d 228 (4th Cir. 1997) ............................................................................... 12

*Feamster v. Mountain State Blue Cross & Blue Shield, Inc.*,
   No. 6:10-CV-00241, 2010 WL 2854302 (S.D.W. Va. July 19, 2010) ................ 9, 17

*Feinberg v. T. Rowe Price Grp., Inc.*,
   No. CV MJG-17-0427, 2018 WL 3970470 (D. Md. Aug. 20, 2018) ................... 4, 18

*Gearlds v. Entergy Services, Inc.*,
   709 F.3d 448 (5th Cir. 2013)................................................................. 19

*Gnossos Music v. Mitken, Inc.*,
   653 F.2d 117 (4th Cir. 1981)................................................................. 22

*Griggs v. E.I. Dupont de Nemours & Co.*,
   237 F.3d 371 (4th Cir. 2001)............................................... 13, 14, 15, 21

*Harman v. Unisys Corp.*,
   746 F. Supp. 2d 755 (E.D. Va. 2010).................................................... 3

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000)............................................................................... 9

*Henson v. Liggett Group, Inc.*,
   61 F.3d 270 (4th Cir. 2000)................................................................... 5

*In re Electronic Data Sys. Corp. "ERISA" Litig.*,
   305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ........................................ 17

*James v. Pirelli Armstrong Tire Corp.*,
   305 F.3d 439 (6th Cir. 2002)............................................................... 18

*Kenseth v. Dean Health Plan, Inc.*,
   722 F.3d 869 (7th Cir. 2013)............................................................... 20

*Kruger v. Novant Health, Inc.*,
   131 F. Supp. 3d 470  (M.D.N.C. 2015)................................................. 4

*LeBlanc v. Cahill*,
   3 F. App'x 98 (4th Cir. 2001)............................................................... 9

*Lucero v. Early*,
   873 F.3d 466 (4th Cir. 2017)................................................................. 3

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*,
   872 F.2d 80 (4th Cir. 1989)................................................................. 10

*McCravy v. Metro. Life Ins. Co.*,
   690 F.3d 176 (4th Cir. 2012)............................................................... 20

*McGann v. H & H Music Co.*,
   946 F.2d 401 (5th Cir. 1991)................................................................. 7

*Mertens v. Hewitt Associates*,
   508 U.S. 248 (1993)....................................................................... 21, 22

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*,
   577 U.S. 136 (2016)............................................................................. 21

*Piontek v. Serv. Ctrs. Corp.*,
   PJM 10–1202, 2010 WL 4449419 (D. Md. Nov. 5, 2010) .................... 4

*Riggs v. A.J. Ballard Tire & Oil Co Pension Plan & Tr.*,
   979 F.2d 848, 1992 WL 345584 (4th Cir. 1992)................................. 10

*Rowe v. Marley Co.*,
  233 F.3d 825 (4th Cir. 2000) ..................................................................... 5

*Salus v. GTE Directories Serv. Corp.*,
  104 F.3d 131 (7th Cir. 1997) ..................................................................... 6

*Shanks v. Honda of Am. Mfg.*,
  2009 WL 2132621 (S.D. Ohio July 10, 2009) .......................................... 17

*Shores v. Lucent Techs., Inc.*,
  203 F.3d 822, 2000 WL 20580 (4th Cir. 2000) .......................................... 5

*Smith v. Sydnor*,
  184 F.3d 356 (4th Cir. 1999) ................................................................... 11

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ........................................................................... 14, 15

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
  252 F.3d 316 (4th Cir. 2001) ..................................................................... 4

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
  93 F.3d 397 (7th Cir. 1996) ..................................................................... 11

*Williams v. Wright*,
  No. CV BPG-21-2076, 2022 WL 2818949 (D. Md. July 19, 2022) ................... 7, 8

**Statutes**

29 U.S.C. § 1002(16)(A) ............................................................................ 20

29 U.S.C. § 1002(21)(A) ............................................................................ 20

29 U.S.C. § 1022(a) ................................................................................... 20

29 U.S.C. § 1022(b) ................................................................................... 20

29 U.S.C. § 1102(a)(2) ............................................................................... 19

29 U.S.C. § 1132(a)(3) .......................................................................... 12, 22

29 U.S.C. § 1132(g)(1) ............................................................................... 24

29 U.S.C. § 1133 ............................................................................ 12, 15, 16

**Other Authorities**

29 C.F.R. § 2560.503–1(f) ......................................................................... 15

**Rules**

Rule 12 of the Federal Rules of Civil Procedure ............................... 4, 7, 15

Plaintiff Leona Faren ("Ms. Faren"), by and through her undersigned counsel, and pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, submits the following Memorandum in Opposition to Defendant ZeniMax Online Studios LLC ("ZOS") Motion to Dismiss the Amended Complaint and Motion to Strike her request for a jury trial, and in support thereof, states as follows:

## INTRODUCTION

Plaintiff Leona Faren filed this litigation against ZOS, her former employer, and AP Benefit Advisors, LLC ("AP"), ZOS's insurance broker and third-party administrator. She states four claims: (1) Interference under the Employee Retirement Income Security Act of 1974 ("ERISA") § 510; (2) Retaliation under ERISA § 510; (3) failure to provide Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage under ERISA § 601; and (4) Breach of Fiduciary Duty under § 502(a)(3).

As set forth in more detail below, Plaintiff has established all her claims and has demonstrated that she should be excused from the requirement to exhaust administrative remedies. Moreover, Defendant's Motion to Dismiss should be denied because there is a need for factual development to prove the facts of this case, particularly on the issue of whether ZOS is a fiduciary. Finally, Plaintiff's demand for a jury trial is proper because she seeks legal relief, and the right to a jury trial of legal issues is appropriate when equitable issues are involved in the same case. Accordingly, both Defendant's Motion to Dismiss and Motion to Strike should be denied.

## STATEMENT OF RELEVANT FACTS

Ms. Faren was employed as a Media Artist with ZOS in Hunt Valley, Maryland. Am. Compl. ¶ 9. After her supervisor outed her as transgender, her supervisor and a group of other

1

employees subjected Ms. Faren to harassment based on her gender identity and expression. *Id.* ¶ 11–12. Aware that continuation coverage would help her pay for medical expenses that she needed, including transition-related care, ZOS approached Ms. Faren with a Severance Agreement ("Agreement") in January 2022 under the threat of a PIP and advised her that the Agreement was a one-time offer. *Id.* ¶ 14–16. The Agreement provided ZeniMax Media Inc. ("ZMI") would pay for the employee portion of Ms. Faren's healthcare premium until September 30, 2022. *Id.* ¶ 18–19. After months of pressure from the PIP, Ms. Faren executed the Agreement on May 13, 2022. *Id.* ¶ 17, 21.

On May 31, 2022, Ms. Faren elected to continue coverage by enrolling online, and paid her first month's premium to AP. *Id.* ¶ 23. After learning that she was not covered, she contacted BlueCross BlueShield and AP to correct the issue, but both directed her to contact ZOS's HR Department. *Id.* ¶ 24. On June 2, Ms. Faren reached out to Tracey Zerhusen ("Ms. Zerhusen"), HR Director at ZMI, to correct the problem with her insurance. *Id.* ¶ 26. Ms. Zerhusen responded by adding Michelle Cool, the company's Benefits Director to the conversation. *Id.* On June 3, Ms. Zerhusen indicated that the Company could not assist Ms. Faren further and provided a letter to Ms. Faren that purportedly confirmed Ms. Faren's coverage. *Id.* ¶ 33–34.

After reaching out to BlueCross BlueShield to confirm that she was still covered in mid-June, and relying on ZMI's representations, Ms. Faren scheduled her surgeries to take place in July. *Id.* ¶ 33–35, 65–66. Only when she received her medical bills did Ms. Faren learn that she was not covered as she should have been. *Id.* ¶ 37. Specifically, the bills notified her that the expenses were "incurred after coverage terminated." *Id.* Other than those bills, Ms. Faren received no other notice that her health coverage was retroactively terminated. *Id.* ¶ 38. Neither did she receive any benefits denial letters when CareFirst reversed the previously approved

charges. *Id.* ¶ 39, 42. Defendant attempts to introduce exhibits that support their argument that Ms. Faren had notice of the denial of her claims. *See* ECF 34-7 (Def. Exhibit D), ECF 34-8 (Def. Exhibit E), ECF 34-9 (Def. Exhibit F), ECF 34-10 (Def. Exhibit G). As discussed *infra*, because Ms. Faren did not receive such notices, Exhibits D and G are irrelevant and prejudicial to Ms. Faren's claims and should not be considered by this Court when ruling on Defendant's Motion.

Ultimately, Ms. Faren's coverage under ZMI's group healthcare plan was no longer effective after June 1, 2022. Am. Compl. ¶ 41. Neither ZOS nor AP sought to remedy the situation or properly advise Ms. Faren on the administrative process for addressing the retroactively denied claims until Ms. Faren commenced this lawsuit. *Id.* ¶ 42–43.

## STANDARDS OF REVIEW

### I.     Motion to Dismiss

On a motion to dismiss, the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In accepting all non-conclusory facts as true, the court must also draw all reasonable inferences from these facts in a plaintiff's favor. *Lucero v. Early*, 873 F.3d 466, 469 (4th Cir. 2017). The court must also "read the complaint as a whole" rather than evaluate individual allegations in isolation. *Harman v. Unisys Corp.*, 746 F. Supp. 2d 755, 760 (E.D. Va. 2010). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted).

In the ERISA context, Plaintiffs are not "required to describe directly the ways in which [defendants] breached their fiduciary duties," or "the process by which the Plan was managed" as such facts are outside of Plaintiffs' reach. *Feinberg v. T. Rowe Price Grp., Inc.*, No. CV MJG-

17-0427, 2018 WL 3970470, at *5 (D. Md. Aug. 20, 2018) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595–96 (8th Cir. 2009)); *see also Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 477–78 (M.D.N.C. 2015) (finding that the *Braden* analysis "agrees with Fourth Circuit precedent" and is persuasive on the issue of stating an excessive fees claim for breach of fiduciary duty under ERISA at the motion to dismiss stage). Nor are plaintiffs required "to plead facts tending to contradict . . . inferences" that could be drawn in defendants' favor. *Feinberg*, 2018 WL 3970470, at *5.

## II.     Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In determining whether to grant a motion to strike, the court "enjoys wide discretion . . . in order to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012).

"Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks omitted). Therefore, "[w]hen reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" *Piontek v. Serv. Ctrs. Corp.*, PJM 10–1202, 2010 WL 4449419, at *8–9 (D. Md. Nov. 5, 2010) (citation omitted).

<u>**ARGUMENT**</u>

**I.      Ms. Faren Has Established an ERISA Interference Claim Against ZOS**

Ms. Faren has sufficiently pled that Defendant ZOS interfered with her right to
continuation coverage in violation of ERISA § 510. To take advantage of ERISA § 510, a
plaintiff must prove a specific intent of the employer to interfere with an employee's rights. *See
Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991). In seeking to prove
intent, a claimant in the ERISA context confronts proof problems like those encountered by Title
VII plaintiffs. *Id.* The Fourth Circuit has thus held that the *McDonnell Douglas* scheme of
presumptions and shifting burdens of production is appropriate in the context of those claims
brought under ERISA § 510. *Id.* Under the burden shifting framework, a plaintiff must establish
a *prima facie* case that: (1) the plaintiff is entitled to the benefits at issue; (2) the plaintiff
suffered an adverse employment action, and (3) the adverse action occurred under circumstances
that give rise to an inference of discrimination. *Shores v. Lucent Techs., Inc.*, 203 F.3d 822, 2000
WL 20580, at *3 (4th Cir. 2000) (citing *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277 (4th
Cir. 2000)).

Once a plaintiff establishes a *prima facie* case, the burden shifts back to the defendant to
offer a legitimate, non-discriminatory reason for the adverse employment action. *See
Conkwright*, 933 F.2d at 239. If the defendant produces a legitimate reason, then the burden
shifts back to the plaintiff to show that the reason is pretext. *Id.* A plaintiff can establish pretext
either by demonstrating that the defendant's stated reason is false or by presenting additional
evidence that the defendant's true reason was discriminatory. *See Rowe v. Marley Co.*, 233 F.3d
825, 830 (4th Cir. 2000).

Several factors indicate an inference of discrimination, including when there is a close

temporal proximity between the assertion of an ERISA right and the adverse employment action. *See Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 137 (7th Cir. 1997) (finding that the close temporal proximity of the dates between plaintiff's eligibility and termination provided circumstantial evidence in favor of the district court's finding of a specific intent to interfere with ERISA rights). The court in *Salus* upheld the district court's finding that the employer's proffered explanation was pretextual, and that circumstantial evidence supported a finding of illegal intent to interfere with the plaintiff's right to short-term disability benefits. *Id.* at 136. Specifically, the fact that (1) the employer was aware that the employee would be eligible for short-term disability benefits the day before he would return to work; (2) that the employer was aware that the employee's benefits would end upon the termination of his employment, and (3) that the conflicting dates on the employee's termination documents suggested an intent to interfere with the employee's right to disability benefits. *Id.* at 137–38.

Defendant contends that Ms. Faren has not alleged facts indicating that ZOS was involved in the termination of her health benefits. *See* Def. Mem. at 7–9. However, to establish a *prima facie* case of interference under ERISA § 510, Ms. Faren must only allege that the termination of her health coverage occurred under circumstances giving rise to an inference of discrimination. She has: (1) outlined the context of discrimination that gave rise to her Separation Agreement and terms of her continued coverage; (2) pointed out the close temporal proximity of the exercise of her ERISA rights on May 30th and the subsequent denial and repeated retroactive cancellations of her health coverage starting June 2nd, especially after bringing the issues to ZOS's attention on June 2nd; (3) pointed out ZOS's refusal to assist her or provide her with proper notice of the denial of her claims and benefits after June 3rd. Am. Compl. ¶ 9–18, 26, 33, 42, 43, 50.

Other than ZOS's denial that it had any knowledge of the developments after June 3, 2022, it does not offer an explanation for their denial of Ms. Faren's coverage. However, Ms. Faren put ZOS on notice of the issues with her healthcare starting June 2nd, and ZOS cannot be excused for ignorance of the matter given their apparent ability to monitor the benefits of former employees. *See id.* ¶ 26, 33. Finally, ZOS contends that the facts establish the opposite of Ms. Faren's claim. However, a district court should not (1) ignore reasonable inferences supported by the alleged facts, and (2) draw inferences in the defendant's favor, faulting the plaintiff for pleading facts tending to contradict those inferences. *See Braden*, 588 F.3d at 595. Accordingly, Ms. Faren's *prima facie* case of interference must stand.

## II.     Ms. Faren Has Established an ERISA Retaliation Claim Against ZOS

Ms. Faren can also establish that Defendants violated ERISA § 510 by retaliating against her for exercising her rights. The exercise and interference clauses of ERISA § 510 are not mutually exclusive. Rather, the same behavior may give rise to a claim that both clauses were violated. *See, e.g.*, *McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir. 1991) (employee with AIDS claimed that the employer violated both the exercise and interference clause when it amended its health care plan to limit benefits for AIDS-related claims after the employee had submitted claims for treatment of AIDS). Ms. Faren's allegations under Section 510 should therefore be construed together.

To survive a motion to dismiss where the employer is no longer the plaintiff's employer, a plaintiff must allege conduct that is "actually proscribed" by Section 510 and "satisfy the pleading requirements of *Iqbal/Twombly*." *See Williams v. Wright*, No. CV BPG-21-2076, 2022 WL 2818949, at *4 (D. Md. July 19, 2022) (quotation omitted). In *Williams*, the plaintiff asserted that "the timing and content of the [state court lawsuit] make clear that the purpose of

the suit against Ms. Williams is to discriminate and retaliate against her for exercising her rights under ERISA. . . ." *Id.* at *4. The court ultimately denied defendant's motion to dismiss because "based on the specific allegations asserted by plaintiff . . . as well as the timing of the state court complaint," the plaintiff alleged sufficient facts to state a plausible claim of retaliation under Section 510. *Id.* at *5.

As in *Williams*, Ms. Faren has asserted that the "close temporal proximity of [the] exercise of her ERISA rights and the subsequent and repeated retroactive cancellations of her health coverage give rise to an inference of Defendants' motive to interfere with her ERISA rights." Am. Compl. ¶ 50. The facts in this case—namely, Ms. Faren's attempt to enroll in COBRA and the close timing of the subsequent cancellation of her coverage—support a reasonable inference of retaliation. Additionally, Defendant ZOS appears to construe her claim of retaliation as attributing the denial of her benefits to CareFirst, and not itself. Def. Mem. at 10. However, Ms. Faren specifically alleges that Defendants ZOS and AP were responsible for retroactively cancelling her coverage once she had obtained it in June. Am. Compl. ¶ 55.

At this stage, and drawing all reasonable factual inferences in plaintiff's favor, the court should find that Ms. Faren has stated a plausible claim of retaliation under ERISA § 510. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III.    Ms. Faren Has Established a Claim for Violation of COBRA Against ZOS

### A.    ZOS Failed to Provide Continuation Coverage as Required by COBRA

Count III of the Amended Complaint alleges that Defendants violated COBRA by failing to provide continuation coverage. ERISA's civil enforcement provisions provide several ways for a claimant to recover from a COBRA violation with the goal of placing the claimant in the position that he or she would have been in had COBRA coverage been provided and to

compensate the claimant for his or her losses. Enforcement of COBRA may be brought under ERISA's civil enforcement provisions, which Ms. Faren has done by bringing claims under ERISA § 510 (Claims I and II) and ERISA § 502 (Claim IV), which are discussed *supra* and *infra.*

Defendant ZOS further argues that after "the COBRA notice issued, ZOS had no further duty," and shifts responsibility to "the plan administrator." Def. ZOS's Mem. at 12. However, Section 502(a)(3) "makes no mention at all of which parties may be the proper defendants—the focus, instead, is on redressing the '*act or practice* which violates any provision of [ERISA Title I].'" *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (quoting 29 U.S.C. § 1132(a)(3)). Rather, "defendant status under § 502(a)(3) may arise from duties imposed by § 502(a)(3) itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions." *Id.* at 247; *see also LeBlanc v. Cahill*, 3 F. App'x 98, 101 (4th Cir. 2001) (stating that "there is 'no limit . . . on the universe of possible defendants' in a Section 502(a)(3) action (quoting *Harris Trust*, 530 U.S. at 246)). As such, ZOS's argument that "it is not the administrator or fiduciary does not go far enough." *See Feamster v. Mountain State Blue Cross & Blue Shield, Inc.*, No. 6:10-CV-00241, 2010 WL 2854302, at *3 (S.D.W. Va. July 19, 2010), aff'd, 502 F. App'x 278 (4th Cir. 2012).

### B.     Ms. Faren is Not Required to Exhaust Administrative Remedies

Ms. Faren has demonstrated that the three exceptions to the requirement to exhaust administrative remedies apply to her, and she should therefore be excused from the requirement. 29 U.S.C. § 1133 provides that every benefit plan shall establish an administrative review procedure for "any participant or beneficiary whose claim for benefits under the plan has been denied." 29 U.S.C. § 1133. Courts have read into the statute an exhaustion of administrative

remedies requirement. *See, e.g.*, *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989). The three exceptions to the exhaustion requirement apply to the instant case and are discussed as follows.

### 1. Futility

An employee must generally exhaust administrative remedies before bringing an action under ERISA to recover benefits under a plan. *See Makar*, 872 F.2d at 82; *Riggs v. A.J. Ballard Tire & Oil Co Pension Plan & Tr.*, 979 F.2d 848, 1992 WL 345584, at *2 (4th Cir. 1992) (upholding trial court's finding that exhaustion was futile in this instance in view of defendant's bad faith and failure to take action on plaintiff's claim or to supply him with the information he sought). Ms. Faren has stated in her Amended Complaint that she did not receive notification of the retroactive termination of her insurance until she received her medical bills. *See* Am. Compl. ¶ 37–38. One example of Ms. Faren's medical bills, which was generated August 8, 2022, is attached as Exhibit 1. *See* Exhibit 1. Defendant has submitted several Explanations of Benefits statements, the earliest which is dated January 20, 2023. *See* ECF 34-10 (Exhibit G). Ms. Faren would have had to appeal within 180 days of the denial of her claim. Even if she had received a notice on August 8, 2022, she would have had to appeal by February 4, 2023. Therefore, CareFirst's notices to appeal were issued so late as to render an appeal futile, and some notices were issued even after the presumed period to appeal her claims.

Furthermore, Ms. Faren reached out several times to correct the problems with her insurance: to AP and BCBS on or before June 2nd, to ZOS on June 2nd and 3rd, and to BCBS again in mid-June. *See* Am. Compl. ¶ 25, 26–32, 35. ZOS nor its vendors ever informed Ms. Faren in writing that her claim had been denied, nor were any reasons for their denial provided to her. *See* Am. Compl. ¶ 38, 43. Ms. Faren filed this litigation because ZOS indicated in its June 3

letter that it would no longer assist her. *See* ECF 34-6 (Def. Exhibit C).

### 2.   Claiming Rights Based on Statutory Obligation

Administrative remedies must be exhausted for *plan-based* claims, but not when a plaintiff brings a *statute-based* claim. *See Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir. 1999) (holding that the plaintiff did not need to exhaust administrative remedies before bringing an action in federal court alleging a breach of fiduciary duty in violation of ERISA). This is because, "unlike a claim for benefits under a plan, which implicates the expertise of a plan fiduciary, adjudication of a claim for a violation of an ERISA statutory provision involves the interpretation and application of a federal statute, which is within the expertise of the judiciary." *Id.* at 365.

Defendant ZOS contends that Ms. Faren was first required to exhaust administrative remedies. But as in *Sydnor*, the administrative exhaustion requirement simply does not apply. The exhaustion requirement applies only where the matter in contention concerns an interpretation of the plan, and not the language of the statute itself.  Defendant does not argue whether Ms. Faren was or was not eligible for continuation coverage under an ERISA-governed plan. Rather, the allegations made in Ms. Faren's Amended Complaint are exclusively *statute-based* claims. Count III alleges a violation of Ms. Faren's rights under the applicable provisions of COBRA and ERISA—specifically, that she had not been provided with continuation coverage as required by 29 U.S.C. § 1161(a)—and not under the terms of any group benefit plan.

### 3.   Lack of Meaningful Access to Review Procedures

The exhaustion requirement may be waived by a court where it can be demonstrated that a claimant was denied meaningful access to the plan claims review procedure. *See Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397 (7th Cir. 1996); *Counts v. Am. Gen. Life & Acc. Ins.*

*Co.*, 111 F.3d 105 (11th Cir. 1997). ERISA § 503 requires that an adequate notice, "[set] forth the specific reasons for [the] denial, written in a manner calculated to be understood by the participant," as well as the opportunity for a full and fair review, must be given to any participant whose claim is denied. 29 U.S.C. § 1133.

ERISA regulations elaborate specifically what a denial notice must contain: the administrator must provide the claimant with written notice setting forth the reasons for the adverse decision, reference to specific plan provisions on which the determination is based, a description of any additional information or material necessary to perfect the claim, and a description of the plan's review procedures, including a statement of the claimant's right to bring a civil action under ERISA § 502 following an adverse benefit determination on review. *See* 29 C.F.R. § 2560.503–1(f); *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir. 1997).

Defendant ZOS has introduced several exhibits with their Motion that purportedly support their contention that it complied with the notice requirements.[1] *See* ECF 34-7 (Def. Exhibit D), ECF 34-8 (Def. Exhibit E), ECF 34-9 (Def. Exhibit F), ECF 34-10 (Def. Exhibit G). Ms. Faren has already stated that she did not receive any notice of the appeal process, nor any benefit denial letter. Am. Compl. ¶ 38–39, 43. Defendant has accepted these facts for the purposes of its Motion.

Neither Exhibit E nor F provide meaningful access to the administrative process. Exhibit E only refers back to ZeniMax Media Inc.'s Summary Plan Description ("SPD") but does not describe the Plan's review procedures nor does it inform Ms. Faren that she would have a right to

---

[1] Defendant ZOS introduces Exhibits D and G as "integral to the claims." However, ZOS has conceded that for the purposes of this Motion, ZOS accepts the allegation that Ms. Faren did not receive these letters. Exhibits D and G are thus irrelevant and prejudicial to Ms. Faren's claims and should be stricken from ZOS's Motion. *See* Fed. R. Civ. P. 12(f). Even had the Explanation of Benefits letters been received, they do not set forth the "specific reasons" for the denial of Ms. Faren's claims and are therefore defective.

bring a civil action under ERISA § 502 following an adverse benefit determination upon review. Similarly, Exhibit F only sets forth a process for "initially denied claims." *See* ECF 34-9 at 3 (Exhibit F). In this case, Ms. Faren's claims were initially approved, but BCBS reversed the previously approved charges. Am. Compl. ¶ 37–39. Because Exhibit F only sets forth a process for initially denied claims and does not detail a process for claims that were initially approved but retroactively denied, the SPD did not provide Ms. Faren with meaningful access to the appropriate claims procedure for her specific situation. Furthermore, Exhibit F does not meet the requirements of a denial notice because it, among other things, does not "set forth specific reasons for [a] denial." *See* 29 U.S.C. § 1133. Therefore, Ms. Faren was never provided with a reasonable claims procedure giving access to the administrative process, and the exhaustion requirement must be waived.

## IV.     Ms. Faren Has Established a Fiduciary Duty Claim Against ZOS

An ERISA fiduciary has a duty not to make material representations to beneficiaries, or provide incomplete, inconsistent, or contradictory disclosures that misinform beneficiaries. *See Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 380–81 (4th Cir. 2001). A plaintiff may succeed on a claim for breach of fiduciary duty where she proves: (1) that the defendant was a fiduciary of the ERISA plan; (2) that the defendant breached its fiduciary responsibilities under the plan; and (3) that the participant needs injunctive or other appropriate equitable relief to remedy the violation or enforce the plan. *Id.* at 379–80.

### A.     ZOS is a Fiduciary, Despite Not Being Named

#### 1.     ZOS Acted as a Fiduciary When Negotiating Ms. Faren's Severance

Conveying information about plan benefits to a beneficiary to assist plan-related decisions can constitute fiduciary activity. *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931

F.3d 269, 280 (4th Cir. 2019) (plaintiff plausibly alleged that employer acted as a fiduciary by offering "tailored advice"); *see Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996). ("Conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation" is a fiduciary activity); *Griggs*, 237 F.3d at 379–80 (accepting that plan administrator acted in fiduciary capacity by communicating with participant about pension benefits).

An examination of the terms of the Severance Agreement makes it clear that Defendant ZOS has engaged in fiduciary activity. *See* ECF 34-4 at 3 (Def. Exhibit A):

> **Health Insurance Benefits.** Pursuant to COBRA, the Company will provide you with written notice of the right to elect to continue health coverage, effective on June 1, 2022. If you elect to continue your healthcare benefits pursuant to COBRA and enroll on a timely basis, the Company shall pay the same percentage of the monthly cost of COBRA that it paid for your (and any covered dependents) coverage during your active employment, including the two percent (2%) COBRA administrative premium on Employee's medical, dental and vision coverage through September 30, 2022. Thereafter, you may continue to receive healthcare coverage pursuant to COBRA at your own expense. Any failure by you to pay your portion of coverage will result in termination of continuation coverage. If at any point while the Company is paying for your COBRA coverage you obtain alternative health insurance coverage, you must immediately notify the Company and its obligations to pay for your COBRA coverage shall cease. All payments pursuant to this paragraph will be paid by the Company directly to the COBRA benefit provider.

According to the above, Defendant ZOS "conveyed information about the likely future of plan benefits" regarding the terms of Ms. Faren's continuation coverage in remarkable detail, and therefore engaged in fiduciary activity. *See Varity Corp*, 516 U.S. at 502. Furthermore, the terms of the Severance Agreement required the employee to notify *the Company* if the employee obtained alternative insurance, which supports a finding of ZOS's fiduciary status.

Additionally, the circumstances around the negotiation of Ms. Faren's Agreement as alleged in the Amended Complaint are analogous to the facts of *Varity Corp*. There, the Supreme Court upheld the district court's factual findings that Varity exercised its discretionary authority

regarding the management or administration of the plan when it misrepresented Massey Combine's prospects and the security of its benefits. *See id*. at 498–503. According to the Court, "the factual context in which the statements were made, combined with the plan-related nature of the activity, engaged in by those who had plan-related authority to do so, together provide sufficient support for the District Court's legal conclusion that Varity was acting as a fiduciary." *Id.* at 503.

Here, ZOS presented the Agreement to Ms. Faren as her best option, especially when contrasted with the threat of a Performance Improvement Plan. Am. Compl. ¶ 14–17. ZOS further made plan-related representations when it offered to subsidize her healthcare and provided her with a letter assuring her of the security of her benefits. *See* Am. Compl. ¶ 14–17, 33. ECF 34-4 (Def. Exhibit A); ECF 34-6 (Def. Exhibit C). Additionally, the text of the Agreement provided detailed health insurance benefits information to help Ms. Faren decide whether to remain with the Company. *See* ECF 34-4 at 3 (Def. Exhibit A). Therefore, reasonable employees in Ms. Faren's circumstance could have thought that ZOS was communicating with them both as an employer and plan administrator.

### 2. ZOS Acted as a Fiduciary in its Misrepresentations and Omissions

A failure to speak, or "omission," can be the basis of a breach of fiduciary duty claim when the fiduciary knows that not disclosing the material information could be harmful to the beneficiary. *Griggs*, 237 F.3d at 380. In other words, the duty to inform "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* (quotation omitted).

Here, Defendant ZOS promised Ms. Faren would receive continued coverage under the Agreement, but never intended to follow through on the terms of the Agreement. *See* Am.

Compl. ¶ 14–19, 66. Ms. Faren ensured that ZOS had notice that she was not covered on June 2. *Id.* ¶ 26. ZOS further represented to Ms. Faren that she was covered when she was not, and relying on those representations, she incurred medical expenses. *Id.* ¶ 35. Ms. Faren was not aware—and ZOS did not take steps to make her aware—that she was not covered until she received medical bills indicating that her coverage was retroactively terminated. *Id.* ¶ 37, 70. In sum, Defendant ZOS breached its fiduciary duty because it did not provide adequate and appropriate information about her coverage in violation of ERISA.

### 3.    Factual Development is Necessary to Determine Fiduciary Status

Nevertheless, it is not proper at this juncture to determine whether ZOS is an administrator or fiduciary with respect to the group healthcare plan. Whether ZOS is a fiduciary requires an examination of the Plan, as well as other relevant facts. ERISA fiduciaries include "not only those named as fiduciaries in the plan instrument, or who, pursuant to a procedure specified in the plan, are identified as fiduciaries under 29 U.S.C. § 1102(a)(2), but any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996) (internal quotation marks and alterations omitted).[2] Fiduciary status is "not an all-or-nothing concept." *Id.* at 1162. According to § 3(21)(A) of ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

---

[2] 29 U.S.C. § 1102(a)(2) provides that a "named fiduciary" under an ERISA plan is one "who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." 29 U.S.C. § 1102(a)(2).

29 U.S.C. § 1002(21)(A).

ERISA defines "administrator" as "the person specifically so designated by *the terms of the instrument under which the plan is operated*," or, "if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A) (emphasis added). ERISA dictates that "[a] summary plan description of any employee benefit plan shall be furnished to participants" and "shall be written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). An SPD should contain "the name and address of the administrator." *See* 29 U.S.C. § 1022(b).

Here, Defendant ZOS has provided an excerpt of its SPD. However, the SPD provides at most that any questions about Plan benefits or claims procedures should be directed to "the Plan Administrator c/o Human Resources Department." *See* ECF 34-9 (Def. Exhibit F at 1). Other than the vague identification of roles such as "Reviewer" and "Plan Administrator," nowhere in the excerpt of the SPD does it concretely state the identity or information of the purported alternative fiduciary of the plan. Factual development is therefore necessary on the issue of ZOS's role as a fiduciary. *See Feamster*, 2010 WL 2854302, at *4 (citing *Shanks v. Honda of Am. Mfg.*, 2009 WL 2132621, at *2 (S.D. Ohio July 10, 2009) ("[T]he question of who is an ERISA fiduciary usually has a factual component that is not susceptible to resolution by way of a motion to dismiss.")); *In re Electronic Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings. . . . under Federal Rule of Civil Procedure 8(a)'s notice pleading requirements, courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine functional or named fiduciary status.")).

### B.     ZOS Breached its Fiduciary Duty

To prove a breach, a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the representations, the information misrepresented was material, and the misrepresentation was relied upon to plaintiff's detriment. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).

Defendant contends that Ms. Faren's allegations fail to state the ZOS breached any fiduciary duty, but she has precisely alleged that. She has, and Defendant has recognized, that she alleged that *Defendants*—which includes ZOS—took her premium payment, failed to provide continuation coverage as prescribed by COBRA, failed to make reasonable efforts to remedy her situation, misrepresented to her that they would uphold the terms of the Agreement, failed to disclose that her insurance had been canceled, and failed to disclose that ZOS had canceled her insurance coverage. Am. Compl. ¶ 70; Def. ZOS's Mem. at 17–18.

Defendant ZOS further argues that it was not aware of facts that would prevent her from being covered, that Ms. Faren has not alleged facts to suggest that ZOS breached a fiduciary duty, and that it took action to rectify the same. Def. ZOS's Mem. at 18–19. However, "a claim alleging a breach of fiduciary duty may survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Feinberg*, 2018 WL 3970470, at *5 (quoting *Braden*, 588 F.3d 585, 596). "Alleged facts need not directly address[] the process by which the plan was managed" as "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Id.* (internal quotations omitted).

Here, Ms. Faren has repeatedly pointed out facts to support the allegation that ZOS breached its fiduciary duty by retroactively terminating her health insurance, not disclosing the

cancellation of her coverage, and misrepresenting to her that she would receive coverage, among her other allegations. *See, e.g.*, Am. Compl. ¶ 13–16 (facts describing the discrimination she endured at ZOS related to gender identity), 26 (that ZOS was made aware of her lack of insurance starting June 2022 when she reached out to HR), 37 (receiving medical bills labeled with "Expenses incurred after coverage terminated"), 33 (providing a letter and representing to Ms. Faren that she was covered when she was not), 38, 68–69. Therefore, Ms. Faren has stated specific facts, not merely conclusory statements, that a Court must accept as true at this stage that support her allegation that ZOS breached its fiduciary duty.

### C.      Ms. Faren Requires Appropriate Relief to Remedy ZOS's Breach

Defendant's final argument is that Ms. Faren's claim for fiduciary breach must fail because the "gist of her grievance" concerns the nonpayment of benefits due under a plan. Def ZOS's Mem. at 19–20. They further attempt to recharacterize the relief that she seeks under section 502(a)(1)(B) instead of under 502(a)(3),[3] under which she has actually brought her claims. *See* Am. Compl. ¶ 1 ("Plaintiff seeks appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3)."). Defendant points to *Coyne & Delaney Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712 (4th Cir. 1996) to stand for the proposition that the failure to pay for an employee's healthcare benefits are not redressable as a claim for breach of fiduciary duty. In doing so, Defendant ignores more recent precedent in the Supreme Court and in multiple circuits that expanded the relief available under 29 U.S.C. § 1132(a)(3).[4]

---

[3] Section 502(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

[4] *See McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 180 (4th Cir. 2012) (Fourth Circuit explaining the "striking development" of the expanded relief available under ERISA § 1132(a)(3) for plaintiffs asserting breach of fiduciary duty in the form of 'surcharge'); *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448, 450 (5th Cir. 2013) (Fifth Circuit recognizing that *Amara* provided "an expansion of the kind of relief available under § 502(a)(3) when the plaintiff is suing a plan fiduciary and the relief sought makes the plaintiff whole for losses caused by the defendant's breach of a

The Supreme Court in *Amara* held that, although § 502(a)(1)(B) did not authorize the

district court to reform the terms of the plan, § 502(a)(3) might provide a remedy under its

provision for "other appropriate equitable relief." *See CIGNA Corp. v. Amara*, 563 U.S. 421,

434–436 (2011). Although the district court's remedy was in the form of monetary damages, the

Court held that it was not beyond the scope of traditional equitable relief because "[e]quity

courts possessed the power to provide relief in the form of monetary 'compensation' for a loss

resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* at

441–42. This form of relief imposed upon a fiduciary is known as "surcharge," a form of "make-

whole relief" within the scope of "appropriate equitable relief" in § 502(a)(3). *Id.* at 442.

The Fourth Circuit in *McCravy* held that after *Amara*, the remedies of surcharge and

estoppel were available to a plaintiff against an ERISA plan fiduciary under § 502(a)(3). *See*

*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 177–78 (4th Cir. 2012). There, the plaintiff paid

life insurance premiums for her dependent child for several years, only to learn upon the child's

death that the child had been ineligible for dependent coverage. *Id.* Although the plan sought

only to reimburse the plaintiff for the premiums that she had paid, the court ultimately held that

because a monetary make-whole remedy was available under § 502(a)(3), she was not limited to

recovering only the premiums that she had paid. *Id.*

Ms. Faren's claims for "appropriate equitable relief" under § 502(a)(3) are therefore

viable after *Amara* and *McCravy.* She has specifically pleaded "surcharge," "actual and

consequential damages as may be proven," "attorneys' fees and costs," and "such other and

further relief as this Court may deem just and proper," which are damages that follow from

fiduciary duty"); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 891-892 (7th Cir. 2013) (Seventh Circuit holding
that Amara "substantially changes our understanding of the equitable relief available under section 1132(a)(3)" to
include "make-whole relief in the form of monetary compensation for a breach of fiduciary duty").

ZOS's breach of fiduciary duties and Ms. Faren's reliance on its representations, the redress of which would "make her whole" under § 502(a)(3). *See* Am. Compl. at Prayer; *Amara*, 563 U.S. at 442; 29 U.S.C. § 1132(g)(1) (permitting district courts discretion to award "a reasonable attorney's fee"). Further, Ms. Faren's prayer for "reinstatement" as a plan participant is "appropriate equitable relief" under *Griggs. See Griggs*, 237 F.3d 371, 384 (finding that plaintiff's request to be "reinstated" to his previous position was appropriate under § 502(a)(3)). Finally, redress of Ms. Faren's claims does not require "interpretation and application of the plan" as Defendant contends, as she seeks equitable relief outside of purely medical expenses.

## V.     Ms. Faren is Entitled to a Jury Trial

The Seventh Amendment "appl[ies] to statutory actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194 (1974); *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564–65 (1990). The Supreme Court has "carefully preserved the right to trial by jury where legal rights are at stake." *Terry*, 494 U.S. at 565. "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Id.* (quoting *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 501 (1959)).

The two-step test to determine whether a particular ERISA remedy is legal or equitable depends on: (1) the basis for the plaintiff's claim; and (2) the nature of the underlying remedies sought. *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*, 577 U.S. 136, 142 (2016). In analyzing the nature of ERISA remedies, the Supreme Court has expressly relied on its Seventh Amendment cases. *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993) (relying

on *Curtis* and *Terry* to conclude that an ERISA plaintiff seeking "compensatory *damages*" was seeking the "classic form of *legal* relief").

Defendant asserts that Ms. Faren has no right to a jury trial under ERISA because her claims for damages are purely equitable. Def. ZOS's Mem. at 21–22. However, the primary remedies that Ms. Faren seeks are "actual and consequential damages as may be proven" as well as "equitable surcharge," which are compensatory damages—monetary relief for losses sustained because of the alleged breach of fiduciary duties—the "classic form of *legal* relief." *See Mertens*, 508 U.S. at 255.

Furthermore, the right to a jury trial of legal issues is appropriate when equitable issues are involved in the same case. *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 119 (4th Cir. 1981) (citing *Beacon Theatres*, 359 U.S. at 500). Mixed legal and equitable claims require legal claims to be tried first to a jury where they share common issues with equitable claims. *Dairy Queen Inc. v. Wood*, 369 U.S. 469, 472–73 (1962). Defendant's motion to strike Ms. Faren's jury demand is unwarranted and premature as she has sufficiently pled mixed legal and equitable claims.

Accordingly, Defendant's Motion to Strike the jury demand should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and Motion to Strike should be denied.

Dated: September 1, 2023                       Respectfully submitted,

/s/ Denise M. Clark
Denise M. Clark (17385)
CLARK LAW GROUP, PLLC
1100 Connecticut Ave., N.W., Suite 920
Washington, D.C. 20036
Tel: (202) 293-0015
Fax: (202) 293-0115
dmclark@benefitcounsel.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of September 2023, a copy of the foregoing was filed

with this Court's CM/ECF Filing System upon the following counsel of record:

Stephanie K. Baron
Paolo Pasicolan
Victoria K. Hoffberger
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 385-3712
(410) 385-3700 (facsimile)
sbaron@milesstockbridge.com
ppasicolan@milesstockbridge.com
vhoffberger@milesstockbridge.com

*Attorneys for ZeniMax Online Studios LLC*

/s/ Denise M. Clark
Denise M. Clark
