# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **LEONA FAREN,** | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:23-cv-01270-MJM |
| **ZENIMAX ONLINE STUDIOS LLC, et al.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT ZENIMAX ONLINE STUDIOS LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE PLAINTIFF LEONA FAREN'S AMENDED COMPLAINT

Defendant ZeniMax Online Studios LLC ("ZOS"), by and through its undersigned counsel, files this Reply Memorandum in Support of its Motion to Dismiss and Motion to Strike the above-captioned Amended Complaint of Leona Faren ("Plaintiff" or "Ms. Faren"), and states as follows:

### I. Introduction

Plaintiff's Opposition to ZOS's Motion to Dismiss and Motion to Strike the Amended Complaint ("Opposition" or "Opp.") fails to overcome the factual and legal deficiencies in Plaintiff's arguments, as highlighted in ZOS's Memorandum in Support of its Motion to Dismiss and Motion to Strike ("Memorandum"). Particularly, Counts I and II of the Amended Complaint fail to plead sufficient facts to demonstrate that ZOS took any adverse action against Ms. Faren sufficient to constitute either interference or retaliation under Section 510 of ERISA. Further, Ms. Faren's Count III and IV claims for violation of COBRA and breach of fiduciary duty are nothing more than attempts to mask a claim she deliberately eschewed under Section 502(a)(1)(B) of ERISA for "benefits due," likely because Ms. Faren has already received such benefits. As her arguments fail, ZOS's Motion to Dismiss should be granted. To the extent any counts survive, they are not appropriate for a jury trial, and therefore, ZOS's Motion to Strike should be granted.

## II. Argument

### A. Ms. Faren Fails to State a Claim for Interference under ERISA.

In her Opposition, Ms. Faren alleges that she has sufficiently pled a *prima facie* case of interference under ERISA, Opp. at 10, which requires her to show that (1) she was entitled to the benefits at issue; (2) she suffered an adverse employment action, and (3) the adverse action occurred under circumstances that give rise to an inference of discrimination. *Shores v. Lucent Techs., Inc.*, 203 F.3d 822, 2000 WL 20580, at *3 (4th Cir. 2000)(citing *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277 (4th Cir. 2000)). *See Meredith v. Navistar Intern'l Transp. Co.,* 935 F.2d 124, 127 (7th Cir.1991).

Ms. Faren's arguments fail for two reasons. First, Ms. Faren was not an employee or subject to any adverse employment action at the time she alleges ZOS interfered with her rights under ERISA. *See* Amended Complaint ("Am. Compl.") at ¶ 21. Instead, at that point, she had voluntarily resigned her employment, and as such, could not have suffered an "adverse employment action," much less one that gave rise to an inference of discrimination. *See Mallik v. Sebelius*, 964 F. Supp. 2d 531, 542 (D. Md. 2013)("An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's ***employment***.")(internal quotations omitted)(emphasis added).

Second, to establish both elements (2) and (3) of her *prima facie* case, Ms. Faren must allege a ***benefit-depriving employment action*** under circumstances that gives rise to an inference of discriminatory, ***benefit-depriving intent*** by the particular defendant. *See* 29 U.S.C. § 1140; *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994). Ms. Faren relies on *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131 (7th Cir. 1997), which is clearly distinguishable from the present circumstances. Salus was terminated the day before he became eligible for short-term disability benefits. *Id*. at 137. There, the Seventh Circuit found that the plaintiff plausibly alleged

specific intent by the employer to interfere because the timing of its benefit-depriving employment action reflected a probable benefit-depriving intent. *Id*. Here, no such benefit-depriving employment action by ZOS is alleged (nor can it be since Ms. Faren's employment ended significantly prior to her alleged loss of benefits). *See Teumer,* 34 F.3d at 550 ("When the alleged interference is not to the employment relationship which *gives rise* to an individual's benefit rights, §510 is not implicated.")(internal citations and quotations omitted).

Ms. Faren relies on her communication with ZOS employees between June 2 and June 3 to establish that ZOS knew or should have known that she experienced a lapse in coverage. *See* Am. Compl. at ¶¶ 26-29; Opp. at 11. This early June communication with ZOS was limited to Ms. Faren's efforts to *initially enroll* in COBRA, following the end of her employer-provided coverage resulting from her resignation. *See* ZOS's Motion to Dismiss (ECF #34) at Exhibit A (Ms. Faren's Severance Agreement expressly advised her that her insurance benefits provided by the Company would end May 31, 2022 and that she would thereafter be entitled to COBRA) & Exhibit C (correspondence with Ms. Faren regarding her efforts to enroll in COBRA). To ZOS's knowledge, by June 3 that issue had been fully resolved and Ms. Faren had been timely enrolled, something she herself acknowledges. *See* Am. Compl. ¶ 35. Ms. Faren alleges no further interactions with or actions by ZOS related to her claims. As such, the Amended Complaint includes ***no*** allegations of knowledge or interfering action <u>by</u> <u>ZOS</u> in the post-June 3 alleged retroactive denial of her COBRA coverage. To the contrary, Ms. Faren alleges that ZOS provided her a COBRA subsidy, took urgent steps to help her obtain her initial COBRA enrollment, and sometime thereafter, her benefits were somehow and by some unknown party terminated. *See* Am. Compl ¶¶18-19, 27-29, 37-38, 41.

Indeed, in ZOS's letter to her confirming her COBRA coverage on June 3, which she refers to but did not attach to her Amended Complaint, ZOS expressly offered further assistance, which Ms. Faren fails to allege that she ever sought from ZOS before filing suit:

> We have repeatedly responded to your concerns and attempted to help you, ***and will continue to try to do so***…***If there is anything further that we can do, please let me know***.

*See* ZOS's Motion to Dismiss (ECF #34) at Exhibit C (emphasis added). Because Ms. Faren does not allege particular facts indicating any benefit-depriving action or a benefit-depriving intent by ZOS, and for the reasons set forth in its original Motion, her entirely conclusory claim for interference against ZOS must be dismissed.

### B. Ms. Faren Fails to State a Claim for ERISA Retaliation.

Ms. Faren's claim for ERISA retaliation similarly fails, and her assertion that an interference claim and a retaliation claim may, in a proper case, involve the same conduct is irrelevant and one the Court does not need to reach. *See* Opp. at 12. The fact that Ms. Faren has baldly alleged interference provides her no short-cut under §510 for either claim. To plead an ERISA retaliation claim, whether related to her interference claim or not, Ms. Faren must show that the defendant "discharge[ed], fine[d], suspend[ed], expel[led], discipline[d] or discriminate[d] against" her with a retaliatory intent in response to her exercising the right to seek benefits. 29 U.S. Code § 1140; *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 792 (4th Cir. 2023). Her interference claim cannot serve as the basis for a parallel retaliation claim first because, as set forth *supra,* there is no allegation of facts showing interference by ZOS. There is similarly no allegation of any action taken by ZOS constituting a discharge, fine, suspension, expulsion, discipline, discrimination, or a benefit-depriving intent by ZOS because Ms. Faren exercised her ERISA rights. ZOS personnel were simply helpful as alleged.

Ms. Faren claims that after she applied for benefits, and after ZOS supported her COBRA claim with calls and a letter, and after CareFirst assured her that she was covered, "Defendants" purported to retroactively deny her coverage. Opp. at 8. Even assuming she could allege some involvement by ZOS in such denial (which she has not and cannot), she states no claim. In response to assertion of a benefit claim, mere denial of the benefit and taking other related action or changing claimant's status as part of the claim administration process is not actionable. *See e.g., Tirone v. New York Stock Exchange*, 2006 WL 2773862 at * 4 (S.D.N.Y. Sept. 28, 2006):

> <u>The Amended Consolidated Complaint, at bottom, alleges denial of benefits in violation of the Plan. That the alleged denial of benefits entailed a change in Plaintiffs' administrative status as an "employee" is of no consequence for the purposes of Section 510</u>. *See Mansfield v. Lucent Techs.,* No. 04 Civ. 3589(MLC), 2005 WL 2175452, at *3 (S.D.N.Y. Sept. 6, 2005) (dismissing § 510 claim asserted by former employee whose long term disability benefits were discontinued after the employee was misclassified as a "retired employee" instead of an "active employee"); *cf. Downes,* 2004 WL 1277991, at *5 (holding that no cause of action lies under § 510 for employee misclassified as an "independent contractor" instead of an "employee"); *Schwartz v. Independence Blue Cross,* 299 F.Supp.2d 441, 450 (E.D.Pa.2003) (same).

If in response to a benefit claim, mere denial of the claim and some change in status as part of the claim administration process could constitute actionable "retaliation," plans would be flooded with claims arising from routine denials and claim processing. The retaliatory conduct must be <u>collateral</u> to the claim administrative process to be retaliatory, like a discharge, and not simply part and parcel of it, as was the denial of her claim and alleged erroneous adjustment of her status as a participant.

As with her interference claim, the case law cited by Plaintiff is inapposite. In *Williams v. Wright*, the plaintiff alleged a plausible cause of action for retaliation when the plaintiff filed suit against the ERISA administrator, and on the same day that the plaintiff attempted to join her former employer as a defendant in the lawsuit, her former employer filed suit against her. *See* 2022 WL 2818949 (D.Md. July 19, 2022). The court there relied on evidence that the former employer had

5

stated that she was waiting to see if she would be a defendant in the lawsuit before filing suit against the former employee. *See id.* at *5 (Defendant "held off filing the state lawsuit against [plaintiff] until it was clear that the ERISA lawsuit in Delaware was not going to settle.")(internal quotations omitted). Such admitted retaliation is entirely absent here. Ms. Faren's attempted reliance on the so-called "proximity" of her applying for benefits and the retroactive denial of them is likewise misplaced. The fact that applying for benefits triggers either a prompt claim denial or related administrative action based upon her new, non-employee status is simply claims administration at work. Proximity in time does not cure the basic flaw in her theory: mere denial of benefits and changed status is the process of claims administration, rather than some collateral adverse action such as firing, or filing a lawsuit as in *Williams*, which can support a retaliation claim under ERISA. Accordingly, and as stated in ZOS's original Motion, Count II should be dismissed.

### C. Ms. Faren has no Claim against ZOS for a violation of COBRA.

In attempting to salvage her Count III COBRA claim, Ms. Faren principally relies on *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 246 (2000). Such reliance is misplaced, as all that *Harris Trust & Sav. Bank* holds is that one can sue for equitable relief against a nonfiduciary party under 502(a)(3) for engaging in prohibited transactions under ERISA. *Id.* at 245. Prohibited transactions include a sale, exchange, or lease between the plan and party-in-interest; lending money or other extension of credit between the plan and party-in-interest; and furnishing goods, services, or facilities between the plan and party-in-interest. *See* ERISA §502(a)(3). The instant case is not a prohibited transactions case, nor is ZOS arguing that it could not be sued for equitable relief in a proper case. Here, of the COBRA rights in question, ZOS's duties are limited as described in the cases cited in ZOS's underlying Memorandum, and ZOS

cannot be sued for supposedly breaching substantive duties it does not have under the law. *Roberts v. Ground Handline, Inc*., 2005 WL 8179294 (S.D. N.Y., March 11, 2005; s*ee also, Local 217 Hotel and Restaurant Employees Union v. MHM, Inc.*, 976 F.2d 805, 809 (2nd Cir. 1992).

Ms. Faren also fails to avert the alternative defect in her COBRA claim – that she did not exhaust administrative remedies before suing, which might well have obviated the need for this wasteful lawsuit against ZOS. She claims that she should not be required to exhaust administrative remedies because any attempted administrative appeal would be futile, and she did not have meaningful access to the review procedures. Opp. at 15. She disingenuously relies on ZOS's statement in its June 3rd letter to her that it could not do anything further to assist her in regard to her COBRA enrollment process. *See id*. at 15-16. However, at that time, ZOS had appropriately directed Ms. Faren to CareFirst for assistance, where she allegedly was then able to enroll in COBRA benefits. *See* ZOS's Motion to Dismiss (ECF #34) at Exhibit C. Ms. Faren fails to mention, however, that in the very same letter, the Company simultaneously assured her that it was ready to provide further ongoing assistance, and the Company expressly says: "We have repeatedly responded to your concerns and attempted to help you, ***and will continue to try to do so…If there is anything further that we can do, please let me know***." *Id.* (emphasis added). As Ms. Faren concedes, ZOS's actions to enroll her under COBRA were ultimately successful, as she confirmed that she was covered under the Company's plan and scheduled her surgeries to take place in July. *See* Am. Compl. at ¶35 ("In mid-June, Ms. Faren confirmed with BCBS that she was still covered under [the Company]'s group plan and scheduled her surgeries to take place in July."). Ms. Faren cites no basis for contending that if she contacted ZOS about her subsequent denials, ZOS would not have – as it did before – helped her and directed her to the party that could have taken action to address her concern. Moreover, cases that have accepted the futility argument have

18048\000033\4862-6457-0485.v2

required more than simple inaction. *See Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989); *see also Rogers v. Unitedhealth Grp., Inc.,* 144 F. Supp. 3d 792, 801 (D.S.C. 2015) (citing *Kunda v. C.R. Bard., Inc.*, 671 F.3d 464, 472 (4th Cir.2011) ("An exception to the exhaustion requirement exists when there is clear and positive evidence that the [administrative] remedies are futile or useless.")(internal quotations omitted).

Similarly, Ms. Faren cannot argue that she did not have meaningful access to the review procedures.[1] As ZOS set forth in its Memorandum, Ms. Faren alleges that she did not receive any notice that her benefits were terminated (not that CareFirst did not send them to the address that they had on file). Further, Ms. Faren was previously provided a customer service line to call, information regarding the policy, and the expectation that she maintain a copy of the plan. At the very least, Ms. Faren could have again sought assistance from ZOS or CareFirst, like she successfully did in June 2022, and ZOS encouraged her to do.

Further, Ms. Faren's contention that her claims merely require construction of ERISA and not consideration of the Plan is erroneous. To prove that the particular costs she claims are owed to her are covered by the Plan and due to her, and to compute what she is supposedly owed, would obviously require consideration of the Plan. As previously argued, what her allegations show, at most, might be a claim for benefits due, which she strains to masquerade as other statutory claims, both because what she would be due was paid to her immediately once ZOS finally learned, through this litigation, of her issue, and because she seeks to sidestep exhaustion. The Fourth Circuit:

> require[s] a plaintiff to exhaust administrative remedies before bringing a claim for breach of fiduciary duty in federal court where the basis of the claim is a plan administrator's ***denial of benefits or an action by the defendant closely related to***

---

[1] Ms. Faren does not allege (nor could she) that any actions by ZOS were not in "strict compliance" with ERISA's claims procedure. *See* 26 C.F.R §54.9815-2819(b)(2)(ii)(F); 29 C.F.R. §2590.715-2719(b)(a)(ii)(F)(1); 45 C.F.R. §147.136(b)(2)(ii)(F)(1); 29 C.F.R. §2560.503-1(*l*)(2).

> ***the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits***. Under those circumstances, it is clear that such a claim is ***a naked attempt to circumvent the exhaustion requirement***.

*Barnett v. Perry*, No. CCB-11-CV-00122, 2011 WL 5825987, at *4 (D. Md. Nov. 16, 2011)(emphasis added) (citing *Smith v. Sydnor,* 184 F.3d 356, 362). Further, as set forth *supra*, any assertions related to actions taken against Ms. Faren's entitlement to benefits are based on conclusory allegations. Plaintiff cannot bring a violation of ERISA against ZOS, as she fails to allege anything that ZOS did that can survive a motion to dismiss.

### D. Ms. Faren has no Fiduciary Duty Claim against ZOS.

Ms. Faren's Opposition admits that her fiduciary duty claim is based upon ZOS's alleged representation that it would honor the commitments in the Severance Agreement while supposedly harboring an intent not to do so. *See* Opp. at 20 ("Defendant ZOS promised Ms. Faren would receive continued coverage under the Agreement, but never intended to follow through on the terms of the Agreement."). In fact, she is alleging what, at common law, would be promissory fraud – i.e. fraudulently promising with an intent not to perform. *See, e.g., The Charter Oak Fire Co. v. American Capital Ltd.,* 2016 WL 827380 at *16 (D. Md. Aug. 3. 2017), *aff'd* 760 Fed. Appx. 224 (4th Cir. 2019). The analogy is particularly apt since it is a contractual severance agreement, and not a Plan itself, at the heart of her claim.

Stating a claim for promissory fraud requires non-conclusory facts showing an intent not to perform at the time of the commitment, and not simply a showing that the commitment was not kept. *See Aton Ctr., Inc. v. Carefirst of Md., Inc.*, 2021 WL 1856622 at *10 (D. Md. May 10, 2021):

> A simple failure to perform does not suffice as direct or circumstantial evidence of the present intent to defraud necessary to support this claim. *See UMG Recordings*, *Inc*. *v*. *Global Eagle Ent*., *Inc*., 117 F.Supp.3d 1092, 1110 (C.D.Cal. 2015) (citing *Tenzer v*. *Superscope*, *Inc*., 39 Cal.3d 18, 30-31 (1985)) (granting a motion to dismiss, as "nonperformance alone will not support a finding of promissory fraud.").

18048\000033\4862-6457-0485.v2

Ms. Faren's conclusory statements that ZOS fraudulently never intended to perform are insufficient without further factual allegations that establish actual contemporaneous intent not to perform.

In fact, as noted within this circuit and elsewhere, when the crux of an ERISA fiduciary duty claim is fraud, as Ms. Faren is effectively alleging here, the requirements of greater, particularized pleading under Rule 9(b) must be met. *See, e.g.*, *Vigeant v. Meek*, 953 F.3d 1022, 1027 (8th Cir. 2020) (Rule 9(b) applies to ERISA a "breach of fiduciary duty claim[s] when the alleged breach is the commission of a fraud."); *Moore v. Virginia Community Bankshares*, 2020 WL 3490224 (W.D. Va. June 26, 2020)(applying Rule 9(b) to fraudulent valuation ERISA claim); *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp 2d 974, 984 (N.D. Ill 2006) *aff'd*, 521 F.3d 702 (7th Cir. 2008)("where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act", the plaintiff must meet the heightened pleading standard of Rule 9(b)). Even without FRCP Rule 9(b), however, Ms. Faren must allege more than a simple breach of the Agreement, showing that a contemporaneous intent not to perform by ZOS was not just a possibility, but supported by sufficient non-conclusory assertions of fact, so as to state a plausible rather than conjectural claim. *See Aton Ctr.*, 2021 WL 1856622 at *10.

Additionally, the focal point of the alleged fraudulent intent and misrepresentation, the Severance Agreement, is in itself not an ERISA plan (nor does Ms. Faren allege it to be). *See* Am. Compl. at ¶66. The Severance Agreement pertained to a single employee and contained a waiver of claims, a simple lump sum payment, COBRA rights prescribed by statute, and a brief 4-month subsidy of health care benefits, requiring no administration separate from or in addition to those of the preexisting health insurance plan. It involved no long-term commitment, prescribed only a one-time lump sum amount, was triggered by a single resignation event, and required no "separate,

ongoing administrative scheme" or "new administrative structure." *Emery v. Bay Capital Corp.*, 354 F. Supp. 2d 589, 594, 596 (D. Md. 2005). Therefore, in negotiating with Ms. Faren about the terms of the Severance Agreement itself, ZOS was not acting as an ERISA fiduciary. To the extent the Severance Agreement discusses COBRA or the health plan, it merely describes Ms. Faren's rights under COBRA and a brief 4-month subsidy under the pre-existing plan, but it does not alter in any way or misrepresent those rights. What misrepresentation Ms. Faren does allege relates to the Company's alleged intent to uphold its obligations within the S*everance Agreement*, and not anything related to the underlying healthcare plan or Ms. Faren's statutory right to COBRA.

Ms. Faren relies on hollow artful pleading in contending her claim rests on "specific facts" suggesting that ZOS failed to comply with the requirements of COBRA, including that ZOS retroactively terminated her health insurance. *See* Opp. at 23-24. Specifically, all Ms. Faren actually alleges is an accusation phrased in conclusory, collective terms: "…*Defendants* retroactively terminated her insurance, resulting in the improper denial of her claims." Am. Compl. at ¶69 (emphasis added). Her Opposition identifies this allegation as the relevant "specific fact" underlying her claim against ZOS. Opp. at 19. However, the assertion that ZOS terminated her insurance coverage is no more than a naked assertion devoid of any reference to actual actions by ZOS to do so, much less some intent to do so at the time of contract formation. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Finally, Ms. Faren has alleged no injury aside from being owed benefits to cover medical costs. Am. Compl. at ¶44. While such damages would be the subject of a possible "benefits due" claim under ERISA §502 (a)(1)(B), she has gone to great lengths to avoid pleading such a claim here. The Fourth Circuit has vigilantly rejected such disguising of claims. *See, e.g.*, *Coyne & Delaney Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712 (4th Cir. 1996) (failure to

pay an employee's healthcare benefits not redressable as a claim for breach of fiduciary duty); *Estate of Spinner v. Anthem Health Plans of Virginia, Inc.*, 388 F. App'x 275, 282 (4th Cir. 2010) ("mere recitation of the statutory requirements does not covert what is essentially a claim to recover individual benefits into a proper claim under (502)(a)(2)" for breach of fiduciary duty); *Barnett v. Perry*, 2011 WL 58259877 at *4 (D. Md. Nov. 16, 2011)(rejecting "artful pleadings that recharacterize the denial of benefits as breach of fiduciary duty."). For all of these reasons, and as alleged in ZOS's Memorandum, Count IV of the Amended Complaint should be dismissed.

### E. Plaintiff is Not Entitled to a Jury Trial Under any Cause of Action.

Ms. Faren's Opposition provides no support for her demand for a jury trial, and ERISA claims generally are bench trials. She purportedly seeks a jury trial for Counts III and IV of the Amended Complaint. However, courts have rejected the argument that Congress, in creating § 510, established a legal right to which the right to a jury trial attaches. *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 650 (3d Cir. 1990); *see also Pane v. RCA Corp.*, 868 F.2d 631, 636-37 (3d Cir. 1989) (holding that Congress did not intend Section 510 to provide a legal remedy in addition to the equitable remedies permitted under ERISA Section 502(a)). Accordingly, there is no right to a jury trial in ERISA § 510 actions. *Spinelli v. Gaughan*, 12 F.3d 853, 858 (9th Cir. 1993).

Further, as discussed *supra* and in Defendant's Memorandum, Ms. Faren's demand of "actual and consequential" damages is nothing more than a demand for healthcare benefits, and her demand for injunctive relief is "plainly equitable." *Williams v. Centerra* Grp., LLC, 579 F. Supp. 3d 778, 783 (D.S.C. 2022). Even if Ms. Faren could somehow be eligible for compensation under a theory of equitable surcharge, to which she makes a one-word reference in her prayer for relief, "this monetary remedy has historically been considered a form of equitable relief." *Id.* Further, Ms. Faren provides no basis for any actual and consequential damages, and any award of

18048\000033\4862-6457-0485.v2

attorneys' fees are similarly equitable in nature. *Ringling Bros.-Barnum & Bailey, Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F. Supp. 598, 605 (E.D. Va. 1997). Thus, a trial by jury would be inappropriate to resolve the matters before the Court, and to the extent any counts survive ZOS's Motion to Dismiss, ZOS's Motion to Strike should be granted.

### F. Conclusion

Based upon the arguments set forth above, ZOS respectfully requests that the Court grant its Motion to Dismiss and/or if necessary, its Motion to Strike and provide such other relief as the Court deems warranted under the circumstances.

<div style="margin-left:3em;">

Respectfully submitted,

*/s/ Stephanie K. Baron*
Stephanie K. Baron (Fed. Bar No. 27417)
Paolo Pasicolan (Fed. Bar No. 28334)
Victoria K. Hoffberger (Fed. Bar No. 21231)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 385-3712
(410) 385-3700 (facsimile)
sbaron@milesstockbridge.com
ppasicolan@milesstockbridge.com
vhoffberger@milesstockbridge.com

***Attorneys for ZeniMax Online Studios LLC***

</div>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of September 2023 a copy of the foregoing **Defendant's Reply Memorandum in Support of its Motion to Dismiss and Motion to Strike** was served on all counsel of record, electronically, via this Court's electronic filing system.

*/s/ Stephanie K. Baron*
Stephanie K. Baron (Fed. Bar No. 27417)