2023 WL 5839282
Only the Westlaw citation is currently available.
United States Court of Appeals, Fourth Circuit.

Jody ROSE, as Administratrix of the Estate of Kyree Devon Holman, Plaintiff - Appellant,

v.

PSA AIRLINES, INC.; PSA Airlines, Inc. Group Benefit Plan; UMR, Inc.; Quantum Health, Inc., a/k/a MyQHealth by QuXantum; MCMC, LLC, Defendants - Appellees,

and

PSA Airlines Group Insurance Plan; PSA Airlines Group Health Benefit Plan; PSA Airlines Plan B Employee Benefit Plan; PSA Airlines Shared Services Org., Defendants.

No. 21-2207
|
Argued: December 9, 2022
|
Decided: September 11, 2023
|
Amended: September 12, 2023

**Synopsis**
**Background:** Administratrix of insured's estate sued employer, employer's health and welfare benefit plan, and companies that provided administrative services for plan under Employee Retirement Income Security Act (ERISA), seeking relief for wrongful denial of benefits or, alternatively, for breach of fiduciary duty. The United States District Court for the Western District of North Carolina, Graham C. Mullen, Senior District Judge, 2021 WL 4314459, granted motion to dismiss, after adopting in part the report and recommendation of David C. Keesler, United States Magistrate Judge, 2021 WL 4318315. Administratrix appealed.

**Holdings:** The Court of Appeals, Richardson, Circuit Judge, held that:

[1] estate could not recover monetary cost of benefit that was wrongfully denied, i.e., surgery for insured that was extremely costly but could have saved his life, under ERISA provision that allowed beneficiary to recover benefits due under terms of plan;

[2] relief awarded under unjust-enrichment theory may qualify as "equitable" under ERISA "catch-all" provision; and

[3] remand was required for district court to determine in first instance whether administratrix plausibly stated facts that would entitle her to relief under ERISA "catch-all" provision.

Affirmed in part, vacated in part, and remanded.

Heytens, Circuit Judge, wrote opinion concurring in part and dissenting in part.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim.

West Headnotes (25)

[1]  **Federal Courts** ⚬ Pension and benefit plans

De novo review applied on appeal of dismissal of action for failure to state a claim that had been brought by administratrix of insured's estate against employer, employer's health and welfare benefit plan, and companies that provided administrative services for plan under Employee Retirement Income Security Act (ERISA), seeking relief for wrongful denial of benefits or, alternatively, for breach of fiduciary duty. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. §§ 1132(a)(1)(B), 1132(a)(3); Fed. R. Civ. P. 12(b)(6).

[2]  **Labor and Employment** ⚬ Duties in general

ERISA imposes fiduciary duties on those who administer employee benefit plans. Employee Retirement Income Security Act of 1974 § 409, 29 U.S.C.A. § 1109.

[3]  **Labor and Employment** ⚬ Parties in general;  standing

ERISA plan participants may bring a derivative action to obtain recovery for losses sustained by the plan because of breaches of fiduciary duties. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(2).

[4] **Labor and Employment** Action on behalf of plan or as individual

Recovery for losses sustained by the ERISA health and welfare benefit plan because of breaches of fiduciary duties goes to the plan, not to the beneficiary bringing the action. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(2).

[5] **Labor and Employment** Actions to Recover Benefits
**Labor and Employment** Equitable relief; injunction

Plaintiffs seeking relief under the ERISA provision that allows a beneficiary to recover benefits due under the terms of the plan generally may either (1) pay for the treatment and seek reimbursement later, or (2) seek an injunction to force the plan provider to provide the treatment. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(1)(B).

[6] **Labor and Employment** Judgment and Relief

Administratrix of insured's estate could not recover monetary cost of benefit that was wrongfully denied, i.e., surgery for insured that was extremely costly but could have saved his life, under ERISA provision that allowed beneficiary to recover benefits due under terms of plan, since plan's terms had to be enforced as written which meant that insured could pay and seek reimbursement or sue for injunction and wait. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(1)(B).

[7] **Implied and Constructive Contracts** Unjust enrichment
**Labor and Employment** Equitable relief; injunction

Relief awarded under unjust-enrichment theory may qualify as "equitable" under ERISA "catch-all" provision. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[8] **Labor and Employment** Equitable relief; injunction

The "catch all" ERISA provision allows a plan beneficiary to seek an injunction or "other appropriate equitable relief" to either (1) "enforce" ERISA's terms or "the terms of the plan," or (2) "redress" a violation of those terms. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[9] **Labor and Employment** Adequacy of other remedies
**Labor and Employment** Judgment and Relief

Recovery of monetary cost of surgery that was wrongfully denied to insured was not provided under ERISA provision that allowed beneficiary to recover benefits due under terms of plan, and therefore that provision did not prevent estate of insured from bringing claim under "catch all" provision; although administratrix of estate claimed that insured's injury was redressable under terms of plan provision, recovery under that provision was not available. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. §§ 1132(a)(1)(B), 1132(a)(3).

[10] **Labor and Employment** Adequacy of other remedies

Where Congress elsewhere provided adequate relief for beneficiary's injury, beneficiary cannot also obtain relief under ERISA's

civil enforcement provision since such relief would not be appropriate. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[11] **Federal Civil Procedure** ← Alternate, Hypothetical and Inconsistent Claims

Administratrix of insured's estate could plead in alternative that monetary cost of surgery that insured was wrongfully denied was recoverable under ERISA provision that allowed beneficiary to recover benefits due under terms of plan or under "catch all" provision. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. §§ 1132(a)(1)(B), 1132(a)(3).

[12] **Labor and Employment** ← Equitable relief; injunction

Administratrix of insured's estate could not recover cost of surgery that was wrongfully denied as compensation for insured's death under ERISA's "catch all" provision, since that provision only allowed for equitable relief and compensatory damages intended to provide monetary relief for losses sustained as result of alleged breach of fiduciary duties were legal relief. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[13] **Implied and Constructive Contracts** ← Unjust enrichment

**Labor and Employment** ← Equitable relief; injunction

Monetary relief based on a defendant's unjust enrichment can be "equitable," within the meaning of ERISA's "catch all" provision. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[14] **Labor and Employment** ← Equitable relief; injunction

Monetary relief is available under ERISA's "catch all" provision only if such relief was typically available in equity, which requires a court to look to equity's traditional concurrent jurisdiction. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[15] **Implied and Constructive Contracts** ← Unjust enrichment

**Labor and Employment** ← Equitable relief; injunction

A plaintiff can recover money under ERISA's "catch-all" provision only if a court of equity could have awarded it in a concurrent-jurisdiction case, and a court of equity could award money when a plaintiff pointed to specific funds that he rightfully owned but that the defendant possessed as a result of unjust enrichment. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[16] **Labor and Employment** ← Equitable relief; injunction

The constructive trust and the equitable lien qualify as equitable remedies under the ERISA "catch-all" provision. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[17] **Implied and Constructive Contracts** ← Restitution

**Labor and Employment** ← Equitable relief; injunction

For restitution to lie in equity, as require for relief under the ERISA "catch-all" provision, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[18]  **Implied and Constructive Contracts**  Unjust enrichment

**Labor and Employment**  Equitable relief; injunction

To qualify as "equitable" under the ERISA "catch-all" provision, restitutionary relief imposed to remedy unjust enrichment must be proprietary, not personal, and therefore the plaintiff cannot recover out of defendant's general assets; instead, plaintiff must identify certain property or money belonging in good conscience to him, and that property must clearly be traced to particular funds or property in defendant's possession. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[19]  **Implied and Constructive Contracts**  Unjust enrichment

**Labor and Employment**  Equitable relief; injunction

A plaintiff alleging unjust enrichment can get a monetary remedy under the ERISA "catch-all" provision only if she seeks specific funds that are wrongfully in the defendant's possession and rightfully belong to her; a court cannot award relief that amounts to personal liability paid from the defendant's general assets to make the plaintiff whole. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[20]  **Implied and Constructive Contracts**  Unjust enrichment

**Labor and Employment**  Equitable relief; injunction

The funds sought need not have originated with the plaintiff to obtain relief under the ERISA "catch-all" provision; it is enough that the funds are an unjust benefit that rightfully belong to the plaintiff either because they were stolen from him or because the defendant interfered with the plaintiff's interests to get them. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[21]  **Courts**  Number of judges concurring in opinion, and opinion by divided court

A Court of Appeals panel is not bound to follow prior decisions in the Circuit that use reasoning inconsistent with Supreme Court authority even where some of the prior panel decisions were decided after the Supreme Court case rendered them untenable.

[22]  **Labor and Employment**  Equitable relief; injunction

Plaintiffs seeking merely personal liability upon the defendants to pay a sum of money ask for legal, not equitable, relief within the meaning of the ERISA "catch-all" provision. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[23]  **Implied and Constructive Contracts**  Unjust enrichment

**Labor and Employment**  Equitable relief; injunction

Relief seeking to strip away defendant's unjust gains qualifies as "equitable" under the ERISA "catch-all" provision so long as the plaintiff can trace those unjust gains to specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[24]  **Federal Courts**  Issues or questions not passed on below

Remand was required for district court to determine in first instance whether administratrix of insured's estate plausibly stated facts, in action against employer, employer's health and welfare benefit plan, and companies

that provided administrative services for plan, that would entitle her to relief under ERISA "catch-all" provision on allegations that one or more defendants were unjustly enriched by interfering with insured's rights, such as by breaching their fiduciary duties to him, and that fruits of that unjust enrichment remained in one or more defendants' possession or could be traced to other assets. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[25] **Federal Courts**  Issues or questions not passed on below

Remand was required for district court to determine in first instance, in action by administratrix of insured's estate under ERISA "catch-all" provision, whether companies that provided administrative services for plan were "fiduciaries" under ERISA if they were unjustly enriched by refusal to pay. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Senior District Judge. (3:19-cv-00695-GCM-DCK)

**Attorneys and Law Firms**

ARGUED: Norris Arden Adams, II, ESSEX & RICHARDS, P.A., Charlotte, North Carolina, for Appellant. Edward Joseph Meehan, GROOM LAW GROUP, CHARTERED, Washington, D.C.; Brian D. Boone, ALSTON & BIRD LLP, Charlotte, North Carolina, for Appellees. ON BRIEF: Caitlin Hale Walton, ESSEX RICHARDS, P.A. Charlotte, North Carolina, for Appellant. Ross P. McSweeney, GROOM LAW GROUP, CHARTERED, Washington, D.C., for Appellees PSA Airlines, Inc. and PSA Airlines, Inc. Group Benefit Plan. Brandon C.E. Springer, ALSTON & BIRD LLP, Charlotte, North Carolina, for Appellee UMR, Inc. Rachel Ann Smoot, TAFT STETTINIUS & HOLLISTER, LLP, Columbus, Ohio, for Appellee Quantum Health, Inc. Victoria Therese Kepes, Alfred Victor Rawl, Jr., GORDON REES SCULLY MANSUKHANI LLP, Charleston, South Carolina, for Appellee MCMC, LLC.

Before RICHARDSON, QUATTLEBAUM, and HEYTENS, Circuit Judges.

**Opinion**

Affirmed in part, vacated in part, and remanded by published opinion. Judge Richardson wrote the opinion, in which Judge Quattlebaum joined. Judge Heytens wrote an opinion concurring in part and dissenting in part.

RICHARDSON, Circuit Judge:

**\*1** The Employee Retirement Income Security Act's § 502(a)(1)(B) allows a beneficiary to "recover benefits due to him under the terms of his plan." And ERISA's § 502(a)(3) allows a beneficiary to sue for "other appropriate equitable relief." This case requires us to answer when—and under what conditions—a plaintiff may seek monetary relief under one of those provisions.

Jody Rose's son had a rare heart condition. He died at the age of twenty-seven, awaiting a heart transplant, which Rose says that Defendants—who administered her son's employer-based health benefits program—wrongfully denied. So she sued on behalf of his estate, seeking monetary relief under both § 502(a)(1)(B) and § 502(a)(3). The district court dismissed both claims. As to Rose's (a)(1)(B) claim, the court held that money was not one of the "benefits" that her son was owed "under the terms of his plan." And, as to her (a)(3) claim, the court held that her requested monetary relief was too similar to money damages and was thus not "equitable."

We now affirm in part and vacate in part. The district court correctly held that money was not one of the "benefits" that Rose's son was "due" "under the terms of his plan." So it was right to dismiss her (a)(1)(B) claim. But we must vacate its complete dismissal of Rose's (a)(3) claim. While the district court correctly noted that compensatory, "make-whole" monetary relief is unavailable under § 502(a)(3), it did not consider whether Rose plausibly alleged facts that would support relief "*typically*" available in equity. *Montanile v. Bd. of Trs.*, 577 U.S. 136, 142, 136 S.Ct. 651, 193 L.Ed.2d 556 (2016). We thus remand for the district court to decide in the first instance whether Rose can properly allege such a theory based on a Defendant's unjust enrichment, including whether an unjust gain can be followed to "specifically

identified funds that remain in the defendant's possession" or to "traceable items that the defendant purchased with the funds." *Id.* at 144–45, 136 S.Ct. 651

**I. Factual and Procedural Background**

It was Christmas Eve in 2018 when Rose's son, Kyree Devon Holman, first found out that he had a heart condition called myocarditis. Less than two months later—and only a few short weeks after his twenty-seventh birthday—he was dead.

At the time, Kyree was working as a flight attendant for PSA Airlines, Inc. Like many Americans, Kyree received health benefits through his employer. PSA Airlines runs a "health and welfare benefit plan" for its employees, governed by ERISA. J.A. 13. The Plan is "fully self-funded," meaning that PSA Airlines "assumes the sole responsibility for funding the Plan benefits out of its general assets." J.A. 13. PSA Airlines is the named "Plan Administrator" and "fiduciary" of the Plan. J.A. 14. But a smattering of other companies—including UMR, Inc., Quantum Health, Inc., and MCMC, LLC—help PSA Airlines provide administrative services, like reviewing benefits claims, for the Plan. [1]

**\*2** When doctors discovered Kyree's health condition, they determined that he needed a heart transplant to survive and prepared to proceed with surgery as soon as his benefits claim was approved. By the second week of January 2019, Kyree's doctors had submitted the required information and had twice requested approval for the surgery. Yet, on January 17, Defendants denied his request, asserting that the treatment that he sought was experimental. When Kyree pushed for a re-evaluation, his claim was once again denied, this time on the grounds that he did not meet certain alcohol-abuse criteria.

The terms of Kyree's plan, however, contained no such criteria. So Kyree's doctors appealed once more, noting that Kyree would not survive without a heart transplant. But once more—despite realizing the life-or-death nature of the decision—Defendants denied Kyree's request, based on these same supposed criteria.

By now it was February 1, and time was running short. Kyree's doctors thus sought an "expedited" external claim review, which was conducted by MCMC. Yet, although federal law requires "expedited" reviews to be completed within—at most—seventy-two hours, *see* 45 C.F.R. § 147.136(d)(3)(iv) (2019), MCMC treated Kyree's review as a "standard" review to be completed within forty-five days.

Kyree died a little over a week after submitting his external review application (five days after a decision should have been rendered). Ultimately, after completing its review on March 6, MCMC vindicated Kyree, overturning the previous claim denials. But it was too little, too late: By then, Kyree had been dead for almost a month.

**[1]** Rose, as administratrix of Kyree's estate, sued PSA Airlines, the Plan, UMR, Quantum, and MCMC, seeking relief for a wrongful denial of benefits under ERISA § 502(a)(1)(B) or, alternatively, for a breach of fiduciary duty under § 502(a)(3). [2] She sought declaratory and injunctive relief, monetary damages, and "appropriate equitable relief" including "surcharge, disgorgement, constructive trust, restitution, [and] equitable estoppel." J.A. 40–41. But the district court granted Defendants' motion to dismiss both claims under Rule 12(b)(6). Rose timely appealed that dismissal, which we review de novo. *See Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

**II. Background on ERISA**

**[2]** ERISA governs "employee benefit plans" that cover employees' retirement benefits, death benefits, and, as relevant for this case, health benefits. ERISA has a host of provisions, one of which imposes fiduciary duties on those who administer these plans. *See Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

**[3]** If an ERISA fiduciary breaches their fiduciary duty, § 409 makes them liable to the plan. And § 502(a)(2) allows plan participants to bring a derivative action to enforce § 409 and "to obtain recovery for losses sustained by the plan because of breaches of fiduciary duties." *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 210 (4th Cir. 2008).

**[4]** But recovery under § 502(a)(2) goes to the plan, not to the beneficiary bringing the action. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Of course, the beneficiary might benefit indirectly by increasing their plan's assets. Yet if the beneficiary wants to recover directly, like Rose does, then she would need to sue under a different provision of § 502's enforcement scheme.

**\*3** There are two major provisions to pick from. Subparagraph 502(a)(1)(B) allows a "beneficiary" to bring suit "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or

to clarify [her] rights to future benefits under the terms of the plan." If that doesn't provide the beneficiary with the relief that she seeks, then she can resort to § 502(a)(3), the enforcement scheme's "catchall" provision, *see* *Varity*, 516 U.S. at 512, 116 S.Ct. 1065, which allows a beneficiary to sue "to enjoin any act or practice which violates [ERISA] or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce [ERISA] or the terms of the plan."

With that background in mind, we turn to Rose's claims under § 502(a)(1)(B) and § 502(a)(3).

### III. Subparagraph 502(a)(1)(B) Claim

[5] Rose's § 502(a)(1)(B) claim must fail. Plaintiffs seeking relief under § 502(a)(1)(B) generally have two options: either (1) pay for the treatment yourself and seek reimbursement later, or (2) seek an injunction to force the plan provider to give you the treatment. *See* *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 211, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). And these two choices are reflected in the statutory text, which says that a plaintiff may sue either "to *recover benefits* due to him under the terms of his plan" (i.e., seek reimbursement—"recovery"—of out-of-pocket expenses), or "to *enforce his rights* under the terms of the plan" (i.e., seek an injunction).[3] § 502(a)(1)(B) (emphasis added). But § 502(a)(1)(B) does not authorize a plaintiff to seek the monetary cost of a benefit that was never provided.

[6] The reason is that both provisions of § 502(a)(1)(B) are limited by "*the terms of the plan.*" That "statutory language speaks of '*enforcing*' the 'terms of the plan,' not of *changing* them." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011) (cleaned up). Though the terms of the Plan are not in the record—we are at the pleading stage, after all—Rose has not alleged in her complaint that the Plan's terms contemplated paying money directly to Kyree. Instead, Rose alleges that Kyree's doctors requested that the Plan approve coverage for Kyree's surgery —meaning Kyree, through his doctors, filed a claim with the Plan which, if approved, would then pay the doctor to operate on Kyree. So the "benefit" that Kyree would be getting under the "terms of the plan" would be the surgery, not a direct monetary payment. Perhaps, if he had been able to pay for the costly surgery out-of-pocket, then the Plan would have been required to reimburse him. *See* *Davila*, 542 U.S. at 211, 124 S.Ct. 2488. But that did not happen here.

In short, Rose does not seek to recover a benefit under the terms of the Plan. She seeks to recover the *monetary cost* of the benefit that was never provided. But that is a remedy that § 502(a)(1)(B)—which requires us to enforce the Plan's terms *as written*—does not allow. While *Davila*'s choice of remedies (pay now and seek reimbursement, or sue for an injunction and wait) may leave plan beneficiaries like Kyree in a bind, we must do what the statute commands. And that requires affirming the dismissal of Rose's § 502(a)(1)(B) claim.

### IV. Paragraph 502(a)(3) Claims

[7] [8] [9] [10] [11] Because Rose cannot prevail under § 502(a)(1)(B), we must consider whether she is entitled to relief under § 502(a)(3), the "catchall" provision of ERISA's civil enforcement scheme. *Varity*, 516 U.S. at 512, 116 S.Ct. 1065.[4] That provision allows a plan beneficiary to seek an injunction or "other appropriate equitable relief" to either (1) "enforce" ERISA's terms or "the terms of the plan," or (2) "redress" a violation of those terms.

*4 [12] [13] The key question that we must answer is whether the relief that Rose seeks—the monetary cost of the surgery that her son was wrongfully denied—qualifies as "equitable relief" under the statute. As the district court recognized, compensatory damages intended to provide "monetary relief for all losses ... sustained as a result of the alleged breach of fiduciary duties" are legal, not equitable, relief. J.A. 85 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). So the district court was correct not to give her the cost of the surgery as compensation for Kyree's death. But Rose also alleges the defendants have been unjustly enriched by keeping the money they should have paid Kyree's doctors.[5] And—subject to certain limits—monetary relief based on a defendant's unjust enrichment can be "equitable."

#### A. When is monetary relief "equitable"?

Courts must often determine whether a plaintiff's requested relief is "equitable." That is because many federal statutes authorize courts to award "equitable relief" or "equitable remedies" to plaintiffs suing under their terms. *See* Samuel L. Bray, *The Supreme Court and the New Equity*, 68 Vand. L. Rev. 997, 1013 n.76 (2015) (listing some statutes). Over the past thirty years, the Supreme Court has taken an interest

in deciding what relief counts as "equitable" under those statutes. The bulk of the Court's cases, like this one, arose under § 502(a)(3) of ERISA. *See* [Mertens v. Hewitt Assocs.](), 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); [Great-West Life & Annuity Ins. Co. v. Knudson](), 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); [Sereboff v. Mid Atl. Med. Servs., Inc.](), 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006); [CIGNA Corp. v. Amara](), 563 U.S. 421, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011); [US Airways, Inc. v. McCutchen](), 569 U.S. 88, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013); [Montanile v. Bd. of Trs.](), 577 U.S. 136, 136 S.Ct. 651, 193 L.Ed.2d 556 (2016). But the approach that it developed did not end there. Instead, the Court has extended that approach to other statutes too. *See* [Liu v. SEC](), ––– U.S. ––––, 140 S. Ct. 1936, 1942, 207 L.Ed.2d 401 (2020) (citing [Mertens](), [Great-West](), [Amara](), and [Montanile]() when considering the meaning of "equitable relief" under the Securities Act of 1933).

**\*5** The focus of these cases is often on whether a plaintiff's plea for money is a request for an "equitable" remedy or a "legal" remedy. Our focus is the same. To answer that question, we first consider—more broadly—what distinguishes legal remedies from equitable ones. Then we investigate how to apply this distinction to Rose's monetary claims.

### 1. The distinction between "legal" and "equitable" remedies

The term "equitable relief" references the Anglo-American tradition of "the divided bench." [Great-West, 534 U.S. at 212, 122 S.Ct. 708](). That is, in both England and the United States, there were once separate "courts of law" and "courts of equity." These courts used different procedures, had different substantive rules, and—most critically here—offered different remedies. Bray, *The New Equity, supra*, at 998–99. While the separate courts were gradually merged over the course of the nineteenth and twentieth centuries, the distinction between "legal" and "equitable" remedies remains salient. *Id.*

Untangling the situations when equitable relief was appropriate from those in which legal relief was available is difficult. The remedies that courts of equity traditionally offered were complicated and nuanced because those courts' jurisdiction was complicated and nuanced as well. But, as a baseline, equity existed only on the backdrop of the law; its role was to provide relief where the law was inadequate. *See* F.W. Maitland, *Equity: A Course of Lectures* 19 (John Brunyante ed., 2d ed. 1936).

Sometimes, that meant merely providing different remedies for a given cause of action. For instance, perhaps a party suing for breach of contract thought that money damages could not compensate them adequately for the breach. So —rather than sue in a court of law for money damages— the party could instead choose to sue in equity for specific performance. Thus, in a sense, courts of equity shared "concurrent jurisdiction" with courts of law over contract disputes. *See id.* at 18–20; Samuel L. Bray, [*Equity, Law, and the Seventh Amendment*, 100 Tex. L. Rev. 467, 470 (2022)](). And we might think that the critical distinction between "equitable" and "legal" remedies is that "equitable" remedies were offered by equitable courts—but not courts of law—in these concurrent-jurisdiction cases.

Other times, suits were brought in equity because the courts of law didn't recognize a cause of action for them *at all*. The canonical example is the "law" of trusts—i.e., the concept that one person could own legal title to property but be obligated to manage it as a fiduciary on behalf of someone else— which was developed in equity.[6] *See* Bray, *Equity, Law, and the Seventh Amendment, supra*, at 470. Courts of law refused to recognize the law of trusts. *See* R.H. Helmholz, [*The Early Enforcement of Uses*, 79 Colum. L. Rev. 1503, 1503 & n.2, 1304 & n.5–6 (1979)](). So trust suits had to be brought in courts of equity, making them fall within equity's "exclusive jurisdiction." *See* Bray, *Equity, Law, and the Seventh Amendment, supra*, at 470. One could thus fairly characterize any remedy available in these exclusive-jurisdiction cases as an "equitable," rather than "legal," remedy since it was only available in an equity court.

**\*6** This dichotomy meant that courts of equity could offer broader relief within their exclusive jurisdiction because they did not have to worry about what relief was available in courts of law. Remember, equity steps in where the law runs out. If there is no law, then equity can do things that the law would normally cover. But if there is law, then equity is excluded from taking certain actions. So, in concurrent-jurisdiction cases, courts of law and courts of equity offered notably different relief. That was the whole point of the concurrent

jurisdiction—to offer uniquely "equitable" remedies. But in "exclusive jurisdiction" cases, like suits for breach of trust, only courts of equity could hear the case, and they offered a correspondingly wider range of remedies that often looked a lot like the remedies traditionally seen at law.

### 2. Adding money to the picture

To this point, we have been speaking about historical "remedies" broadly. But it is now time to address what matters to these parties: money. While courts of law and equity created a dividing line between themselves for claims involving money, that division, like everything in this field, is nuanced.

As first-year law students might learn in their Civil Procedure class, the quintessential legal remedy—both before and after the courts of law and equity merged—is compensatory damages: money "ordered to be paid to ... a person as compensation for loss or injury." *Damages*, Black's Law Dictionary (11th ed. 2019). And the quintessential equitable remedy is the injunction. (Students might also learn about the equitable remedy of specific performance in their Contracts class.) Those students might thus come to think that a "legal" remedy is just another term for *monetary* remedies, while an "equitable" remedy simply means *non-monetary* ones.

The actual history is less simple. Money does not neatly divide, and never has neatly divided, law from equity. There were many non-monetary legal remedies. *See* Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 558–62 (2016) (discussing, among others, the writs of mandamus, habeas corpus, replevin, and ejectment). And, likewise, there were many monetary equitable remedies. *See id.* at 554–55 (discussing the constructive trust and the equitable lien). Moreover, the types of monetary relief available in equity differed depending on whether the suit was within equity's exclusive or concurrent jurisdiction.

The general proposition that equitable courts could offer broader remedies in exclusive-jurisdiction cases than in concurrent-jurisdiction cases carried through to monetary remedies. So courts of equity acting in exclusive-jurisdiction cases had a relatively free hand to award financial remedies. At times, they could even order defendants to pay "equitable compensation"—in trust cases, called a "surcharge"—which is a remedy essentially equivalent to money damages. Samuel L. Bray, *Fiduciary Remedies, in* The Oxford Handbook of Fiduciary Law 449, 456 (Evan J. Criddle et al. eds., 2019). Like legal damages, "equitable compensation" or "surcharge" subjected the trustee to *personal* liability based on the *plaintiff's losses. Id.* at 456–58. [7]

**\*7** Courts of equity in concurrent-jurisdiction cases could sometimes provide monetary relief too, but they were more constrained. Most relevantly, a court of equity could use money to remedy "unjust enrichment." *See* Bray, *The System of Equitable Remedies, supra*, at 553–56. Unjust enrichment is somewhat self-defining: "A person is unjustly enriched if the retention of [a] benefit would be unjust." Restatement (First) of Restitution § 1 cmt. a (1937). Sometimes that benefit was money, and courts of equity could award equitable restitution by ordering the unjustly enriched to give that "wrongfully obtained" money to its rightful owner either via a constructive trust or an equitable lien. [8] *See* 1 Dan B. Dobbs & Caprice L. Roberts, Law of Remedies § 1.1, at 4–5 (3d ed. 2018); Bray, *Fiduciary Remedies, supra*, at 553–56. Yet—unlike with exclusive-jurisdiction monetary remedies—the plaintiff had to identify the specific property (funds) that the defendant wrongfully possessed and that rightfully belonged to the plaintiff. *See* Great-West, 534 U.S. at 213, 122 S.Ct. 708 ("[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."); *see also* Montanile, 577 U.S. at 145, 136 S.Ct. 651; McCutchen, 569 U.S. at 95, 133 S.Ct. 1537; Sereboff, 547 U.S. at 362–63, 126 S.Ct. 1869.

### 3. When can plaintiffs get money as "equitable relief" under ERISA?

This set up naturally raises a question: Because courts of equity could provide a remedy that looked like money damages in breach-of-trust cases, does that mean that such a remedy is "equitable relief" under ERISA? *See, e.g.*, John H. Langbein, *What ERISA Means by Equitable*, 103 Colum. L. Rev. 1317 (2003) (arguing that trust-law remedies should be available under ERISA). In other words, does "equitable relief" under ERISA include relief available in exclusive-jurisdiction cases rather than just the relief available in concurrent-jurisdiction cases?

**[14]** No. Plaintiffs can get monetary relief under § 502(a)(3) only if such relief was "*typically* available in equity." *Montanile,* 577 U.S. at 142, 136 S.Ct. 651 (quoting *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063). Exclusive-jurisdiction remedies—like the trust remedy of surcharge—were not "typically" available. Rather, as the Supreme Court has used the term, to be a "typically" available remedy, the relief must have been traditionally available in concurrent-jurisdiction cases. And in concurrent-jurisdiction cases—as the Supreme Court has acknowledged and as we have explained—equity courts could sometimes award monetary restitution for unjust enrichment,[9] but they could not award the broad, personal, and compensatory relief available in law and in exclusive-jurisdiction cases.

***8** **[15]** In short: A plaintiff can recover money under § 502(a)(3) only if a court of equity could have awarded it in a concurrent-jurisdiction case, and a court of equity could award money when a plaintiff pointed to specific funds that he rightfully owned but that the defendant possessed as a result of unjust enrichment. *See Montanile,* 577 U.S. at 142–43, 136 S.Ct. 651. There's a lot going on there. And a great deal went into building this framework. Its thus worth going over the steps the Supreme Court took to erect it.

The Court laid its first bricks in *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). *Mertens* announced that courts looking to see whether a sought remedy is "equitable" under ERISA may look only to "those categories of relief that were *typically* available in equity." *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063 (focusing on the divided law-equity bench and its technical refinements). And "compensatory damages" were not typically available in equity.[10] *Id. Mertens* eschewed remedies that courts of equity could award only in "exclusive jurisdiction" cases because it rejected a reading that would allow relief available only in breach-of-trust cases *Mertens,* 508 U.S. at 256–57, 113 S.Ct. 2063. Trust law, *Mertens* held, cannot determine the outer bounds of "equitable relief" under ERISA since the remarkable remedies available in such exclusive-jurisdiction cases were "purely legal" and ordinarily "beyond the scope" of an equity court's authority. *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063 (quoting 1 Pomeroy, *supra,* § 181, at 257). *Real* equitable remedies are those that were *typically* available, not those that were available only in specialized cases.[11]

About a decade after *Mertens*, the Supreme Court revisited the issue of what ERISA means by "equitable relief" in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). And *Great-West* reinforced the same approach used in *Mertens*: "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity." *Id.* at 219, 122 S.Ct. 708 (quoting *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063). The "special equity-court powers applicable to trusts [do not] define the reach of § 502(a)(3)." *Id.* Instead, the "trust remedies are simply inapposite" because they were *special* to trust cases, not *typical* of cases brought in equity more broadly. *Id.* To determine what relief was *typically* available in equity, we cannot look to equity's exclusive domain.

***9** **[16]** **[17]** *Great-West* did not just confirm the *Mertens* approach: it added layers to it, explaining what that approach means for monetary remedies. The Court discussed the concept of equitable restitution—a remedy awarding money to the plaintiff "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213, 122 S.Ct. 708 (citing 1 Dobbs & Roberts, *supra,* § 4.3, at 587–88; *see also Great-West*, 534 U.S. at 229, 122 S.Ct. 708 (Ginsburg, J., dissenting)). According to *Great-West*, however, not all restitutionary remedies count as "equitable." *See* 534 U.S. at 212, 122 S.Ct. 708. Some, like the constructive trust and the equitable lien, certainly qualify. *Id.* at 213, 122 S.Ct. 708. But that label—"equitable" or "legal"—"depends on 'the basis for the plaintiff's claim' and the nature of the underlying remedies sought." *Id.* (cleaned up) (quoting *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994) (Posner, J.)). And, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 214, 122 S.Ct. 708.

**[18]** In other words, *Great-West* tells us that, to qualify as "equitable," restitutionary relief imposed to remedy unjust enrichment must be *proprietary*, not *personal*: The plaintiff cannot recover out of the defendant's general assets. Instead, the plaintiff must (1) identify certain property or money "belonging in good conscience" to him, and (2) that property must "clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213, 122 S.Ct. 708; *see also* Bray, *Fiduciary Remedies, supra*, at 455 (discussing the difference between "personal" and "proprietary" remedies). Only after performing this "tracing" could courts of equity "order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." *Great-West*, 534 U.S. at 214, 122 S.Ct. 708.

*Montanile* is the most recent Supreme Court case to take up this issue, and it follows the same line. *Montanile* reiterates that "equitable relief" in ERISA refers to "those categories of relief that were *typically* available in equity." *Montanile*, 577 U.S. at 142, 136 S.Ct. 651 (quoting *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063). And it explains that "[e]quitable remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing rather than a right to recover a sum of money generally out of the defendant's assets." *Id.* at 145, 136 S.Ct. 651 (cleaned up).

To sum up, these cases teach the same lessons. First is a lesson about how to interpret "equitable relief." We must ask what relief was "*typically*" available in equity." That means that we must look to equity's traditional concurrent jurisdiction; pointing to its exclusive jurisdiction is not enough. [12] True, the Supreme Court did not use the term "concurrent." But its application of the "typically available" test made it clear that is what it meant: The Court consistently rejected trust-specific remedies on the grounds that they were from the equity courts' "exclusive jurisdiction." *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063; *see also Great-West*, 534 U.S. at 219, 122 S.Ct. 708.

**[19]** **[20]** That leads us to the second lesson: A plaintiff alleging unjust enrichment can get a monetary remedy under ERISA only if she seeks specific funds that are wrongfully in the defendant's possession and rightfully belong to her. Courts cannot award her relief that amounts to personal liability paid from the defendant's general assets to make the plaintiff whole.[13]

**\*10** The Supreme Court has not, however, been perfectly consistent in its view. In between *Great-West* and *Montanile*, the Supreme Court decided *CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). There, the Supreme Court suggested it might allow certain plaintiffs to pursue "make-whole," loss-based, monetary relief under § 502(a)(3). *Id.* at 442, 131 S.Ct. 1866. And it did so because such relief was analogous to "surcharge," an "exclusively equitable" remedy under the law of trusts. *Id.* It thus broke with *Mertens* and *Great-West*'s explicit refusal to look to trust-law remedies and their implicit distinction between exclusive and concurrent jurisdiction.[14]

As the Supreme Court has since acknowledged, this part of *Amara* was dicta. See *Montanile*, 577 U.S. at 148 n.3, 136 S.Ct. 651; *see also McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176, 181 n.2 (4th Cir. 2012) (assuming *Amara* was dicta). And, as we have recognized, adopting it would be a "striking development" that "expanded the relief" available under § 502(a)(3) to include "make-whole relief" such as "surcharge." *McCravy*, 690 F.3d at 180 (citation omitted). Still, we followed *Amara*'s dicta shortly after it was decided, allowing, for the first time in our Circuit, plaintiffs to seek "make-whole relief" under § 502(a)(3) because it was available in courts of equity in trust cases. *McCravy*, 690 F.3d at 180 (citation omitted).[15] And we have adhered to that understanding, applying it just two years ago in *Peters v. Aetna, Inc.*, 2 F.4th 199, 216 (4th Cir. 2021) ("The Supreme Court has recognized surcharge as a form of 'appropriate equitable relief' available under § 502(a) (3)." (quoting *Amara*, 563 U.S. at 439, 441–42, 131 S.Ct. 1866)).

**\*11** The problem is that the Supreme Court has since rejected the turn that it contemplated in *Amara* and therefore rejected the turn that we took in

*McCravy.* In *Montanile*, the Court went beyond labeling *Amara*'s reasoning "dicta" and expressly declared that the "interpretation of 'equitable relief' in *Mertens* [and] *Great-West ... remains unchanged.*" *Montanile,* 577 U.S. at 148 n.3, 136 S.Ct. 651 (emphasis added). And, as discussed, that interpretation is flatly inconsistent with *Amara*'s suggestions. Indeed, aside from these chidings, *Montanile* did not otherwise cite *Amara.* The implication was clear: *Amara*'s approach is antithetical to a proper § 502(a)(3) analysis.

Since *Montanile's* approach—which is really *Mertens*'s and *Great-West*'s approach—is inconsistent with *Amara*'s approach, it is also inconsistent with ours. We currently allow plaintiffs suing for breach of fiduciary duty to seek make-whole, compensatory relief under § 502(a)(3) on the logic that such relief was available for breach of trust. Even the name that we give such relief—"surcharge"—is a term specific to trust law. *See* Bray, *Fiduciary Remedies, supra*, at 456 (calling "surcharge" a name "redolent of trusts"). But *Mertens* and *Great-West* made plain that trust-law remedies do not count as "equitable" unless they were "*typically* available in equity." *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063; *Great-West,* 534 U.S. at 210, 122 S.Ct. 708. And *Montanile* reinforced that test: "In many situations"—that is, in equity's *exclusive* jurisdiction—"an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority." 577 U.S. at 147, 136 S.Ct. 651 (internal quotation marks omitted) (quoting *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063). Yet "these legal remedies were not relief 'typically available in equity.' " *Id.* at 147, 136 S.Ct. 651 (quoting *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063). "Typical" relief is defined by equity's *concurrent* jurisdiction. So, while our Circuit's resort to trust law might have made sense in the immediate aftermath of *Amara*, it no longer does.[16] *Montanile* revived *Mertens* and *Great-West* and put *Amara*'s discussion to rest.

**[21]** It is time that we did too. We have never considered *Montanile*'s effect on *Amara*. *Peters* conceptually followed *McCravy*'s lead, relying on both *McCravy* and *Amara.* It also sequentially followed *Montanile.* Yet it did not explain why we should stick with *McCravy* and *Amara* in *Montanile*'s wake. In fact, it did not so much as cite *Montanile. See generally Peters,* 2 F.4th 199. Where "prior decisions" in our Circuit use "reasoning inconsistent with Supreme Court authority," "we are not bound to follow them." *United States v. Banks,* 29 F.4th 168, 178 (4th Cir. 2022). That is true even where some of the prior panel decisions "were decided after" the Supreme Court case rendered them untenable. *Id.* Absent an indication that *Peters* considered the viability of *Amara*'s rule after *Montanile*—and there is no such indication—it cannot bind us to a path inconsistent with the Supreme Court's dictates.

***12** **[22]** **[23]** Accordingly, we return to the same rule that applied at the Supreme Court, and in this Circuit, before *Amara*: Plaintiffs that seek "merely personal liability upon the defendants to pay a sum of money" ask for legal, not equitable, relief under § 502(a)(3). *See LaRue,* 450 F.3d at 575 (cleaned up) (quoting *Great-West,* 534 U.S. at 213, 122 S.Ct. 708). But plaintiffs that seek to strip away defendant's unjust gains might have better luck. Their sought relief qualifies as "equitable," so long as the plaintiff can trace those unjust gains to "specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds." *Montanile,* 577 U.S. at 144–45, 136 S.Ct. 651.

**B. Has Rose sought an "equitable" remedy?**

**[24]** With those rules in mind, we agree with the district court that compensatory "make-whole" monetary relief is unavailable under § 502(a)(3). But the district court did not consider whether Rose plausibly alleged facts that would support relief that was "typically" available in equity. *Montanile,* 577 U.S. at 142, 136 S.Ct. 651. As we have discussed, one such remedy is based on the defendant's unjust enrichment. But the question remains whether Rose has plausibly alleged facts that would entitle her to such relief by alleging (1) that a defendant was unjustly enriched by

interfering with Kyree's rights [17] and (2) that the fruits of that unjust enrichment remain in the defendant's possession or can be traced to other assets.

[25] Rather than determine for ourselves whether Rose properly alleged such a theory, we remand for the district court to decide in the first instance whether Rose has met this burden for each defendant. [18]

* * *

Rose has not plausibly alleged facts that could entitle her to monetary relief on behalf of her son's estate under § 502(a)(1)(B) because that provision only authorizes a beneficiary to sue to recover the benefits that they were due *under the terms of their plan*. Kyree's health plan did not entitle him to money; only to the surgery, which he never received. So the district court was correct to dismiss Rose's § 502(a)(1)(B) claim.

Yet § 502(a)(3) authorizes Rose to seek "equitable relief." And, while monetary relief awarded to compensate for a plaintiff's loss does not qualify as "equitable" under the Supreme Court's test, relief awarded under an unjust-enrichment theory may indeed qualify. We thus remand for the district court to determine whether Rose has—or can—plausibly allege such a claim.

Accordingly, the district court's decision is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

TOBY HEYTENS, Circuit Judge, concurring in part and dissenting in part:

I agree the district court correctly dismissed Rose's 502(a)(1)(B) claim and that the 502(a)(3) claim should be remanded for further proceedings. In my view, however, Rose need not show the fruits of a defendant's wrongdoing are traceable to particular funds remaining in that defendant's possession to state a claim under ERISA. Instead, I would hold Rose need only plead and prove the defendant was a fiduciary and that any money sought represents "make-whole relief" for a "violation of a duty imposed upon that fiduciary." *CIGNA Corp. v. Amara*, 563 U.S. 421, 442, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011).

The relevant statutory provision authorizes Rose to sue for an injunction or "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). This provision empowers district courts to provide "those categories of relief that were *typically* available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). And in *Amara*, the Supreme Court told us that "the category of traditionally equitable relief" includes "monetary 'compensation' for a loss resulting from a trustee's breach of duty"—"sometimes called a 'surcharge' "—and that remedy is available against "the plan administrator" of an ERISA plan. 563 U.S. at 441–42, 131 S.Ct. 1866. Two previous published opinions of this Court have understood *Amara* in precisely this way. See *Peters v. Aetna, Inc.*, 2 F.4th 199, 216 (4th Cir. 2021) ("The Supreme Court has recognized surcharge as a form of 'appropriate equitable relief' available under § 502(a)(3) because it was 'typically available in equity[.]' " (quoting *Amara*, 563 U.S. at 439, 441–42, 131 S.Ct. 1866)); *McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176, 181 (4th Cir. 2012) (describing *Amara* as "stand[ing] for the proposition that remedies traditionally available in courts of equity, expressly including ... surcharge, are indeed available to plaintiffs suing fiduciaries under Section [502](a)(3)").

*13 The Court's opinion offers several potential justifications for departing from what *Amara* said and what *Peters* and *McCravy* held. I am unconvinced.

For example, the opinion spends considerable time suggesting *Amara* misunderstood the relevant history and that its approach departed from the Supreme Court's earlier decisions in *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), and *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). But we are bound by the Supreme Court's formulation of the relevant principles even when we think the Court may have gotten those principles —or their application—wrong. This seems all-the-more-true here, where the relevant portion of the Supreme Court's opinion in *Amara* extensively discussed both *Mertens*

and *Great-West.* See *Amara*, 563 U.S. at 438–39, 131 S.Ct. 1866.

True, *Amara*'s discussion of Section 502(a)(3) was "not essential to resolving that case" and was thus arguably dicta. *Montanile v. Board Trs. Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 148 n.3, 136 S.Ct. 651, 193 L.Ed.2d 556 (2016). But a previous panel of this Court has already considered that fact and decided it should follow *Amara*'s lead here anyway. See *McCravy*, 690 F.3d at 181 n.2. And, under our well-settled procedures, "one panel cannot overrule another." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc).

The issue that gives me the most pause is the Supreme Court's treatment of *Amara* in its 2016 decision in *Montanile.* I agree, of course, that previous "panel precedent"—here, this Court's decisions in *Peters* and *McCravy*—"is not binding if it subsequently proves untenable considering Supreme Court decisions." *Carrera v. E.M.D. Sales Inc.*, 75 F.4th 345, 352 (4th Cir. 2023) (quotation marks omitted). "But that is a high standard, and I am not confident it is satisfied here." *United States v. Brown*, 67 F.4th 200, 217 (4th Cir. 2023) (Heytens, J., concurring in the judgment).

To show the Supreme Court has rejected *Amara*'s blessing of surcharge as a proper remedy under Section 502(a)(3) —and thus has abrogated *Peters* and *McCravy*—the Court's opinion relies on a footnote in *Montanile.* In that footnote, the Supreme Court noted the relevant discussion in *Amara* was "not essential to resolving that case" and stated that—notwithstanding *Amara*—the Court's "interpretation of 'equitable relief' in *Mertens, Great-West*, and *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), remains unchanged." 577 U.S. at 148 n.3, 136 S.Ct. 651; see *id.* (also referencing *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013)).

To me, that is not enough to permit a panel of this Court to depart from our previous holdings in *Peters* and *McCravy. Montanile* did not say *Amara* had been inconsistent with the Court's previous decisions. Nor did it say the Court was now adopting an approach contrary to *Amara.* Instead, *Montanile* rejected a litigant's broad reading of *Amara* that would have "all but overrul[ed]" *Mertens* and *Great-West*, emphasizing that *Amara* "reaffirmed" the traditional equitable limitations covering "a lien or a constructive trust" that drove the Court's decision in *Montanile.* See *Montanile*, 577 U.S. at 148 n.3, 136 S.Ct. 651.

*14 Viewed in this light, *Amara*'s explanation of why its discussion of surcharge was consistent with *Mertens* covers *Great-West, Sereboff, McCutchen*, and *Montanile* as well. As *Amara* noted, surcharge was not available against just anyone. Rather, surcharge only "extended to a breach of trust committed *by a fiduciary* encompassing any violation of a duty imposed upon that fiduciary," which is why "the fact that the defendant in [*Amara*], unlike the defendant in *Mertens*, [was] analogous to a trustee ma[de] a critical difference." 563 U.S. at 442, 131 S.Ct. 1866 (emphasis added). Like the defendants in *Great-West, Sereboff*, and *McCutchen*, however, the defendant in *Montanile* was not a fiduciary. Instead, those cases all involved situations where a fiduciary (an ERISA plan administrator) was suing a non-fiduciary (the plan's own beneficiaries) to claw back benefits that had been paid out. See *Montanile*, 577 U.S. at 139, 136 S.Ct. 651; *Sereboff*, 547 U.S. at 359, 126 S.Ct. 1869; *Great-West*, 534 U.S. at 208, 122 S.Ct. 708; *McCutchen*, 569 U.S. at 91, 133 S.Ct. 1537.[*]

The fact that *Amara* can be reconciled with *Montanile* in this way means *Peters* and *McCravy* can too. I have no doubt one could have a robust debate about whether a fiduciary versus non-fiduciary line makes sense as a matter of history or first principles or if it was, in fact, consistent with *Mertens* and *Great-West.* But that distinction comes directly from the Supreme Court's decision in *Amara.* It is reflected in this Court's decisions in

*Peters* and *McCravy*—both of which were premised on the defendants' status as fiduciaries. See *Peters*, 2 F.4th at 227; *McCravy*, 690 F.3d at 181. And it is not "impossible to reconcile" with the Supreme Court's terse footnote in *Montanile.* See *Carrera*, 75 F.4th at 352. To me, that should be the end of the matter.

\* \* \*

This Court "do[es] not lightly presume that the law of the circuit has been overturned ... or rendered no longer tenable."

*Carrera*, 75 F.4th at 352 (quotation marks omitted). Because I do not believe that high standard is satisfied here, I believe this panel remains bound by *Peters* and *McCravy*, and would conclude that Rose's ability to obtain relief does not turn on an ability to show traceability.

**All Citations**

--- F.4th ----, 2023 WL 5839282

## Footnotes

1 The Plan's terms are not themselves in the record. But because we are at the pleading stage, our characterization of the Plan's terms—like all the facts that we recount here—are taken from Rose's complaint, read in the light most favorable to her.

2 Subparagraph 502(a)(1)(B) and § 502(a)(3) of ERISA are codified at 29 U.S.C. § 1132(a)(1)(B) and (a)(3), respectively. But, in keeping with the trend in this practice area, we refer to them and the other statutory provisions by their ERISA designation, not by their place in the U.S. Code.

3 Subparagraph 502(a)(1)(B) also allows a plaintiff to sue "to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). But because Kyree is dead, he has no rights to future health benefits. So the declaratory relief that this provision authorizes does not apply.

4 Defendants contended in their briefing that Rose cannot proceed with her § 502(a)(3) claim because she also pursued a claim for denial of benefits under § 502(a)(1)(B). And it is true that "where Congress elsewhere provided adequate relief for a beneficiary's injury," the beneficiary cannot also obtain relief under § 502(a)(3) since such relief would not be "appropriate." *Varity*, 516 U.S. at 515, 116 S.Ct. 1065. But alternative "relief" is only "adequate" if the plaintiff's "injury is redressable elsewhere in ERISA's scheme." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006). Rose's *incorrect* argument that her son's injury was redressable under § 502(a)(1)(B) does not mean that it was. Plaintiffs are allowed to plead in the alternative, "so nothing would have prevented [Rose] from suing under both provisions," § 502(a)(1)(B) and § 502(a)(3). *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 855 (4th Cir. 2023).

5 Though Rose frames the relief that she requests under § 502(a)(3) in many ways—discussing "surcharge, disgorgement, constructive trust, [and] restitution," J.A. 40–41—the Supreme Court has emphasized that the "labels" for such benefits-based relief are unimportant. See *Liu v. SEC*, ––– U.S. ––––, 140 S. Ct. 1936, 1942–44, 207 L.Ed.2d 401 (2020) ("[E]quity practice long authorized courts to strip wrongdoers of their ill-gotten gains, with scholars and courts using various labels for the remedy," including "accounting," "restitution," "disgorgement," and "constructive trust."). And "[n]o matter the label," the Court has said, a "profit-based measure of unjust enrichment reflected a foundational principle: 'It would be inequitable that

a wrongdoer should make a profit out of his own wrong." *Id.* at 1943 (cleaned up) (quoting *Root v. Railway Co.*, 105 U.S. 189, 207, 26 L.Ed. 975 (1881)). At base, Rose argues that it would be inequitable for defendants to benefit—i.e., retain the cost of the surgery—because they breached their fiduciary duty to Kyree. So unjust enrichment is the allegation we most closely analyze.

To the extent that Rose seeks "equitable estoppel," that remedy is plainly inapplicable to her case. Estoppel is not a monetary remedy at all. Instead, it is a remedy aimed at holding the defendant to their promises when those promises engender good faith reliance by the plaintiff. 3 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 804, at 189 (Spencer W. Symons ed., 5th ed. 1941). But Rose does not contend that the plan's terms were misrepresented to Kyree, thereby inducing him to give up something; instead, her argument is that the actual terms were not followed. So she does not actually seek anything resembling "estoppel."

6   It bears stating clearly that the equitable remedy of the constructive trust and the more substantive "law" of trusts are quite different. "An express trust and a constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts." Restatement (First) of Restitution § 160 cmt. a. Our references to "trust-specific remedies" do not include constructive trusts but rather refer to the remedies, like surcharge, that are attendant and unique to the substantive law of trusts.

7   One "central" remedy in breach-of-trust cases was an "accounting for profits," an "investigative process that culminates in an award to the plaintiff of the defendant fiduciary's profits." *See* Bray, *Fiduciary Remedies, supra*, at 456; *see also* Bray, *Equity, Law, and the Seventh Amendment, supra*, at 493–94 (describing fiduciary law as "an outgrowth of trust law ... belonging to the exclusive jurisdiction" of equity). In other words, if the accounting discovered that the trustee had wrongfully profited off of trust property, then a beneficiary could sue him for the profits through the mechanism of an accounting. And, in contrast to most equitable monetary remedies, an accounting subjected the trustee to personal liability, as tracing the misappropriated property was not required. *See* Bray, *Fiduciary Remedies, supra*, at 454. But unlike legal damages, the accounting remedy turned on the trustee's gain and not the plaintiff's loss. *See id.*; *see also* *Great-West*, 534 U.S. at 214 n.2, 122 S.Ct. 708.

8   "Rightful" owner does not necessarily mean "original" owner. At equity, plaintiffs could seek a defendant's unjustly gained benefit rather than merely trying to recover their losses. *See* 1 Dobbs & Roberts, *supra* § 1.1, at 4 (explaining that equitable restitution, unlike legal damages, is "measured by defendant's gains, not by plaintiff's losses"); Restatement (First) of Restitution § 1 cmt. e; *id.* § 1 cmt. b (noting that a "benefit" includes saving the defendant from an expense). Thus, if Tayloe steals ten dollars of Landry's to invest in a company that goes on to cure cancer, a court of equity might award Landry all of Tayloe's profits.

And while the plaintiff had to suffer some type of harm at the hands of the unjustly enriched that made him the rightful owner of the enrichment, that harm did not have to be a tangible loss. *See* George E. Palmer, 1 Law of Restitution § 2.11 (1978); Restatement (First) of Restitution § 1 cmt. e. Instead, the harm may be a wrongful interference with the plaintiff's rights that caused the unjust gain. For instance, if a man uses another man's egg washer without permission, he must give the owner the ill-gotten egg profits—even if he does not damage the machine—because he has interfered with the owner's exclusive-use rights. *See* *Olwell v. Nye & Nissen Co.*, 26 Wash. 2d 282, 285–86, 173 P.2d 652 (1946). Likewise, a fiduciary who profits by breaching his duty "is ordinarily accountable to his beneficiary for the profit, although the beneficiary suffered no loss." Restatement (First) of Restitution § 1 cmt. e; Palmer, *supra*, § 2.12.

9   To be clear, we are not saying that the only time a court of equity could award monetary relief in concurrent-jurisdiction cases was when remedying unjust enrichment. That question is not before us. But we focus on unjust enrichment because that is the only plausible path to recovery on Rose's allegations.

10   One might say that the first brick was actually laid in *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), when the Court explained that "there is a stark absence—in [ERISA] itself and in its legislative history—of any reference to an intention to authorize the recovery of extracontractual damages."

11   The Court additionally reasoned that "equitable relief" could not include trust-specific remedies because that would make the modifier "equitable" superfluous. *Mertens*, 508 U.S. at 257–58, 113 S.Ct. 2063. In § 502(a)(3), the word "equitable" was intended to work as a limitation on what relief a court could provide. Yet if the word were taken to include "*all* relief available for breach of trust," *id.* at 257, 113 S.Ct. 2063, including relief akin to money damages, *id.* at 256, 113 S.Ct. 2063, then the statute would mean the same thing whether the word "equitable" was included or not. That would "deprive of all meaning the distinction Congress drew between ... 'equitable' and 'legal' relief" within § 502. *Id.* at 258, 113 S.Ct. 2063 (citing 29 U.S.C. § 1132(g)(2)(E)). That outcome, the Court stated, was "unacceptable." *Id.*

12   Indeed, in some cases, even pointing to concurrent jurisdiction may not be enough if the remedy was available only in a small sliver of concurrent-jurisdiction cases. See *Great-West*, 534 U.S. at 211–12, 122 S.Ct. 708 (acknowledging that an injunction for past-due money was available in some breach-of-contract cases but was not "typically available in equity").

13   This should sound familiar. As we saw when we reviewed the history of equity, the decision to so limit restitution for unjust enrichment flows naturally from the choice to limit "equitable relief" under § 502(a)(3) to what was available in concurrent-jurisdiction cases. Another natural consequence of tying ERISA's "equitable relief" to the relief historically available in concurrent-jurisdiction cases is that the funds sought need not have originated with the plaintiff. It is enough that the funds are an unjust benefit that rightfully belong to the plaintiff—either because they were stolen from him or because the defendant interfered with the plaintiff's interests to get them. *See supra* note 8.

14   *Amara* ignored *Mertens* and *Great-West*'s refusal to look to trust-law remedies in defining § 502(a)(3)'s "appropriate equitable relief." But *Amara* was not actually faced with interpreting § 502(a)(3). The plaintiff there had sued their employer for adopting a new plan. *Amara*, 563 U.S. at 424, 131 S.Ct. 1866. The district court agreed that the employer had "violated its obligations under ERISA" and ordered the plan to be "reformed" and the employer "to pay benefits accordingly." *Id.* at 425, 131 S.Ct. 1866. It rooted its decision in § 502(a)(1)(B). As you may recall from above, that provision only allows a plaintiff to seek relief under "the terms of the plan." And the plaintiff's gripe in *Amara* was not that his employer had violated the terms of his plan but that the employer had violated ERISA by wrongfully changing those terms. So, the Supreme Court held, § 502(a)(1)(B) did not authorize the district court to reform the plaintiff's plan and award benefits. See *Amara*, 563 U.S. at 435–38, 131 S.Ct. 1866. It thus vacated and remanded.

You might think the opinion would stop there. But the Court continued to "identify equitable principles that the court *might* apply on remand." *Id.* at 425, 131 S.Ct. 1866 (emphasis added). The "equitable principles" that *Amara* then identified are inconsistent with *Mertens* and *Great-West*. *Amara* suggested that the plaintiff could seek "make-whole relief," but only by reference to trust law: Because he alleged a "breach of trust," the plaintiff could seek a "surcharge." 563 U.S. at 442, 131 S.Ct. 1866. In other words, "the fact

that the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference." *Id.*

But any such distinction is not one that matters under the reasoning of *Great-West* and *Mertens*. *Great-West* and *Mertens* required looking to "those categories of relief that were *typically* available in equity." *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063. *Mertens* rejected the idea that the statutory phrase "equitable relief" meant "whatever relief a court of equity [would be] empowered to provide in the particular case at issue." *Id.* In other words, according to *Mertens*, whether a given remedy is "equitable" under the statute does not depend on the "particular case" that plaintiff brings, or on the identities of the plaintiff and the defendant. On this logic, it should not matter whether the defendant is analogous to a trustee because trust-specific remedies are "simply inapposite." *See Great-West*, 534 U.S. at 219, 122 S.Ct. 708.

15   On the same day the Supreme Court handed down its decision in *Amara*, we had issued a panel decision in *McCravy.* In the original opinion, the *McCravy* panel rejected the claim that the special equity-court powers applicable to trusts defined ERISA's reach. *See McCravy v. Metropolitan Life Ins. Co.*, 650 F.3d 414, 418–20 (4th Cir. 2011); *see also LaRue v. DeWolff, Boberg & Assocs.*, 450 F.3d 570, 575–77 (4th Cir. 2006) (reaching the same conclusion), *vacated on other grounds*, 552 U.S. 248, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008). But, recognizing that *Amara* advocated for a dramatically different rule from *Mertens* and *Great-West* about what relief was available under § 502(a)(3), we granted a panel rehearing, vacated that earlier decision, and replaced it with a new one. *See McCravy*, 690 F.3d 176.

16   The Supreme Court's recent decision in *Liu v. SEC*, ––– U.S. ––––, 140 S. Ct. 1936, 207 L.Ed.2d 401 (2020), reinforces that trust-specific remedies do not qualify as remedies "*typically* available in equity." When noting that an "accounting"—"an equitable remedy requiring disgorgement of ill-gotten profits"—qualified as a remedy "typically available in equity," the Court showed that the remedy was not merely used in "cases involving a breach of trust or of fiduciary duty" and that courts of equity "authorized profits-based relief in patent-infringement actions where no trust or special relationship existed." *Id.* at 1944.

17   Such as by breaching their fiduciary duties to him. *See* Restatement (First) of Restitution § 1 cmt. e; Palmer, *supra*, § 2.12.

18   Other questions may also remain. For example, if UMR, Quantum, or MCMC were somehow unjustly enriched by the refusal to pay, then the district court may need to decide whether UMR, Quantum, or MCMC were "fiduciaries" under ERISA.

\*   *Montanile* also quoted a leading treatise's statement that "[e]quitable remedies are, as a general rule, directed against some specific thing ... rather than a right to recover a sum of money generally." 577 U.S. at 145, 136 S.Ct. 651 (quoting 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941)). Saying something is generally true is different from saying it always is. *Montanile* also states that "*all* types of equitable liens must be enforced against a specifically identified fund in the defendant's possession." *Id.*

at 146, 136 S.Ct. 651. But Rose does not seek an equitable lien—which, 🚩*Montanile* notes, "is simply a right of special nature *over*" a "specifically identified" thing. 🚩*Id.* at 145, 136 S.Ct. 651.

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.