# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LEONA FAREN,                                    *

     **Plaintiff,**                           *

v.                                              *          **Civil Action No.: EA-23-1270**

ZENIMAX ONLINE STUDIOS, LLC,                    *
*et al.*,
                                                *
     **Defendants.**                          *

                                                *

## MEMORANDUM OPINION

Plaintiff Leona Faren initiated the above-captioned action on May 14, 2023, asserting

violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001

*et seq.*, based on the alleged failure of Defendants ZeniMax Online Studios, LLC (ZOS) and AP

Benefit Advisors, LLC (AP) to provide her healthcare continuation coverage, and seeking

damages, injunctive relief, equitable remedies, and attorney's fees and costs.  ECF No. 1.

Pending before the Court is ZOS's Motion to Dismiss and to Strike.  ECF No. 34.  ZOS seeks to

dismiss the Amended Complaint (ECF No. 31-1) in its entirety and, in the alternative, to strike

Ms. Faren's demand for a jury trial.  ECF No. 34 at 1.[1]  The issues are fully briefed (ECF Nos.

34, 37, and 40), and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons

set forth below, ZOS's motion (ECF No. 34) is granted in part and denied in part as moot.

## I.     Background[2]

In 2018, Ms. Faren started working at ZOS as a media artist.  ECF No. 31-1 ¶ 9.  While

Ms. Faren was employed at ZOS, CareFirst Blue Cross Blue Shield (BCBS) provided her

---

[1]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

[2]  This factual summary is drawn from the allegations in the Amended Complaint (ECF No. 31-1), which are accepted as true for the purposes of deciding this motion.  *E.I. du Pont de*

medical benefits.  *Id.* at ¶ 20.  AP served as the third-party administrator for the group healthcare plan that ZOS's parent company, ZeniMax Media Inc. (ZMI), sponsors to provide health benefits to its and ZOS's employees.  *Id.* at ¶¶ 5 and 19.

After being outed as transgender by her supervisor, Ms. Faren was forced to come out in January 2021.  *Id.* at ¶ 11.  In April 2021, following approximately four months of daily harassment by her supervisor and certain employees based on Ms. Faren's gender identity and expression, Ms. Faren reported the issue to human resources.  *Id.* at ¶¶ 12-13.

In January 2022, ZOS offered Ms. Faren a severance agreement (ECF No. 35-1), advising that the agreement was a one-time offer.[3]  *Id.* at ¶¶ 14-15.  The severance agreement was offered on the condition that Ms. Faren would not bring a lawsuit.  *Id.* at ¶ 16.  The severance agreement provided Ms. Faren with 18 months of continuation coverage of medical, dental, and vision benefits under the Consolidated Omnibus Budget Reconciliation Act (COBRA), starting on June 1, 2022, and ending on November 30, 2023.  *Id.* at ¶¶ 17-18.  The agreement also provided that ZMI would pay the employee portion of Ms. Faren's COBRA premium for four months, starting on June 1, 2022, and ending on September 30, 2022.  *Id.* at

---

*Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  As discussed in greater detail in Section II, *infra*, the factual summary also incorporates information from the severance agreement (ECF No. 35-1, Exhibit A to ZOS's motion) and correspondence between Ms. Faren and ZeniMax Media Inc. personnel (ECF No. 34-6, Exhibit C to ZOS's motion), as those documents are integral to the Amended Complaint and their authenticity is unchallenged.  *United States ex rel. Oberg* v. *Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

[3]  The severance agreement was presented with a performance improvement plan (PIP). ECF No. 31-1 ¶ 15.  Further details regarding the PIP are not alleged in the Amended Complaint other than assertions that "[a]fter months of pressure from the PIP Ms. Faren executed the [severance] [a]greement," and that "ZOS acted as a fiduciary when it presented the [severance] [a]greement to Ms. Faren under the threat of a PIP."  *Id.* at ¶¶ 17 and 63.

¶¶ 18-19.  Ms. Faren signed the severance agreement on May 13, 2022, thereby terminating her employment at ZOS.  *Id.* at ¶¶ 17 and 21.

On May 27, 2022, AP sent Ms. Faren a notice summarizing her COBRA rights, terms of the group healthcare plan, and information regarding how to elect continuation coverage.  *Id.* at ¶¶ 19 and 22.  Ms. Faren elected to continue coverage on May 31, 2022, and she paid her first month's premium to AP.  *Id.* at ¶ 23.  Thereafter, the medical clinic through which Ms. Faren planned to undergo certain surgeries alerted her that the pre-authorizations had been canceled due to a lack of insurance coverage.  *Id.* at ¶ 24.  The medical clinic further advised Ms. Faren that it needed active insurance information to restart the authorization process, which could take weeks.  *Id.*  BCBS and AP told Ms. Faren that her insurance had been canceled and directed her to contact her former employer's Human Resources Department.  *Id.* at ¶ 25.

On June 2, 2022, Ms. Faren emailed ZMI's Human Resources Director for assistance with her insurance, who in turn added ZMI's Benefits Director to the conversation.  *Id.* at ¶ 26.  ZMI's Benefits Director sent an "urgent message" to BCBS to identify when its system would be updated.  *Id.* at ¶ 27.  ZMI's Benefits Director was told that the problem stemmed from the timing associated with sending the file from AP to BCBS.  *Id.*  ZMI's Benefits Director informed Ms. Faren that they were working to set up her insurance by the close of business; that coverage would be retroactive to June 1, 2022; and that BCBS had represented it would try to reactivate any prior authorizations.  *Id.* at ¶¶ 28-29.  Although Ms. Faren's medical clinic attempted to resubmit authorizations, its system would not permit the submission while her insurance was inactive.  *Id.* at ¶ 30.

On June 3, 2022, Ms. Faren again emailed ZMI's Human Resources Director for assistance because she was unable to refill a prescription because her insurance was not up to date.  *Id.* at ¶ 32.  The Human Resources Director replied:

> I am truly sorry to hear that you are experiencing these difficulties, but please understand that like you, [ZOS] has done all that it was supposed to so that your benefits could be continued through COBRA and this issue is outside of the Company's control.

ECF No. 34-6 at 2; *see also* ECF No. 31-1 ¶ 32.

The Human Resources Director further wrote that BCBS was "working diligently" to set up Ms. Faren's COBRA coverage; that the enrollment process was being "expedited" at the Company's request; and that the insurance benefits would be retroactive to June 1, 2022. ECF No. 34-6 at 2. The Human Resources Director noted:

> We have repeatedly responded to your concerns and attempted to help you, and will continue to try to do so. To that end, please find an attached letter that we have drafted to confirm your COBRA coverage, in the hopes that this will assist you. If there is anything further that we can do, please let me know.
> *Id.*

A letter confirming Ms. Faren's COBRA coverage was attached to the reply email. *Id.* at 3; ECF No. 31-1 ¶ 32.

In mid-June 2022, Ms. Faren confirmed her coverage under ZMI's group plan with BCBS and scheduled her surgeries for July 2022. *Id.* at ¶ 35. After her surgeries, Ms. Faren received medical bills stating that she was not, in fact, covered because the "[e]xpenses [were] incurred after coverage terminated." *Id.* at ¶ 37. Ms. Faren's coverage under the group healthcare plan was no longer effective after June 1, 2022. *Id.* at ¶ 41. Ms. Faren did not receive a benefit denial letter "when BCBS reversed the previously approved charges," nor did she receive any notice beyond her medical bills that her health coverage had been retroactively terminated. *Id.* at ¶ 38-39. Ms. Faren remained without health insurance until September 25, 2022, when she started a new job. *Id.* at ¶ 40.

Neither Defendant sought to remedy the situation after June 3, 2022, until Ms. Faren initiated this action. *Id.* at ¶ 42. As a result, Ms. Faren was forced to pay for medically necessary expenses, including prescription drugs, out-of-pocket. *Id.* at ¶¶ 34 and 44.

## II.     Standard of Review

Defendant ZOS moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and, alternatively, to strike Ms. Faren's jury demand pursuant to Rule 12(b)(f).  Rule 12(b)(6) provides that a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" *sua sponte* or on the motion of any party.  Fed. R. Civ. P. 12(f).

It is fundamental that the "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."  *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted).  When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the legal remedy sought.  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  The same does not hold true for legal conclusions.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  To determine whether the Rule 8(a)(2) pleading standard is met, the court separates the complaint's legal conclusions from the factual allegations.  *A Society Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A complaint does not need to contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  To survive a motion

to dismiss, a complaint must have "enough facts to state a claim to relief that is plausible on its

face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 662.  The plausibility standard falls somewhere in between

"probability," which is not required, and "sheer possibility," which is insufficient.  *Id.*; *Twombly*,

550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

speculative level.").  The determination of whether a complaint states a plausible claim for relief

is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Iqbal*, 556 U.S. at 679.

Ordinarily a court may not consider matters outside the pleadings when reviewing a

motion to dismiss without converting it into a motion for summary judgment.[4]  *United States ex

rel. Oberg* v. *Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *see also*

Fed. R. Civ. P. 12(d).  The Court may, however, "consider documents expressly incorporated by

reference into the complaint or attached to the motion to dismiss, so long as they are integral to

the complaint and authentic." *Chavis* v. *Plumbers & Steamfitters Loc. 486 Pension Plan*, Civil

Action No. ELH-17-2729, 2018 WL 4052182, at *5 (D. Md. Aug. 23, 2018) (internal quotation

marks and citation omitted); *see also Hainey* v. *SAG-AFTRA Health Plan*, Civil Action No. PX-

21-2618, 2023 WL 3645514, at *3 (D. Md. May 25, 2023) ("[W]hen the plaintiff fails to

introduce a pertinent document as part of her pleading, . . . the defendant may introduce the

document as an exhibit to a motion attacking the sufficiency of the pleading").  A document is

---

[4]  The parties disagree as to the scope of documents the undersigned may consider when
ruling on ZOS's motion to dismiss.  While Ms. Faren did not attach any documents to the
Amended Complaint, ZOS attached eight exhibits to its motion.  Ms. Faren does not challenge
the authenticity of ZOS's exhibits but argues that Exhibits D and G are irrelevant and prejudicial
to her.  ECF No. 37 at 8 and 17 n.1.

integral to the complaint if "by its very existence, and *not the mere information it contains*, [it] gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc.* v. *Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (internal quotation marks and citation omitted).  As a result, when a document is incorporated into the complaint by reference, "or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016).

This Court has previously determined a wide array of documents to be integral to complaints when ruling on motions to dismiss ERISA claims.  *E.g.*, *Hurley* v. *Hartford, Hartford Life & Accident Co.*, Civil Action No. SAG-21-2307, 2022 WL 36444, at *3 (D. Md. Jan. 4, 2022) (Long Term Disability Policy and letter denying appeal of benefit determination); *Hooker* v. *Tunnell Gov't Servs., Inc.*, 447 F. Supp. 3d 384, 391-392 (D. Md. 2020) (ERISA plan documents); *Gordon* v. *CIGNA Corp.*, Civil Action No. GJH-17-2835, 2018 WL 3375099, at *3 (D. Md. July 11, 2018) (letter approving life insurance claim); *Damiano* v. *Inst. for In Vitro Scis.*, Civil Action No. PX-16-920, 2016 WL 7474535, at *3 (D. Md. Dec. 29, 2016) (COBRA notices and termination letter); *Kirby* v. *Frontier Medex, Inc.*, Civil Action No. ELH-13-12, 2013 WL 5883811, at *4 (D. Md. Oct. 30, 2013) (severance plan and termination letter).

Ms. Faren's claims are predicated on Defendants' alleged failure to provide continuation coverage and/or retroactive cancellation of her health insurance.  ECF No. 31-1.  Although not attached to the Amended Complaint, the severance agreement (ECF No. 35-1, Exhibit A to ZOS's motion) explicitly provides for continuation coverage and is referenced throughout the pleading (ECF No. 31-1 ¶¶ 14-19, 21, 47, 63, 66, and 70).  Similarly, correspondence between Ms. Faren and ZMI personnel regarding the availability of continuation coverage (ECF No. 34-6, Exhibit C to ZOS's motion) is referenced and quoted in the Amended Complaint.  ECF No. 31-1

¶¶ 26-29 and 32-33.  Both Exhibits A and C are integral to the Amended Complaint and Ms. Faren does not dispute the authenticity of these documents.  Therefore, the Court will consider these two documents without converting ZOS's motion into one for summary judgment.  The Court will not, however, consider the remaining exhibits submitted by ZOS because they are not integral to the Amended Complaint and are unnecessary to resolve the motion.

## III.   Discussion

Ms. Faren pleads four counts of ERISA violations in the Amended Complaint (ECF No. 31-1 ¶¶ 45-70), which she asserts pursuant to Section 502(a)(3) of ERISA's enforcement provisions (*id.* at ¶ 1).  In her prayer for relief, Ms. Faren seeks actual and consequential damages, injunctive relief, surcharge, and attorney's fees and costs.  *Id.* at 10.  ZOS moves to dismiss all four counts in the Amended Complaint pursuant to Rule 12(b)(6) based on Ms. Faren's failure to state a claim.  Each of the four counts is discussed below.  Because each count must be dismissed, it is unnecessary to reach ZOS's alternative argument to strike Ms. Faren's jury demand pursuant to Rule 12(f).

A.      <u>Counts I and II – Interference and Retaliation</u>

Counts I and II allege violations of ERISA Section 510, codified at 29 U.S.C. § 1140.  In Count I, Ms. Faren asserts that ZOS interfered with her right to obtain health benefits by failing to provide her with continuation coverage and retroactively canceling her coverage.  ECF No. 31-1 ¶ 51.  In Count II, Ms. Faren asserts that ZOS retaliated against her for exercising her right to continuation coverage by retroactively canceling her insurance.  *Id.* at ¶ 55.  ZOS argues that these counts must be dismissed because Ms. Faren failed to plead any facts beyond the mere denial of coverage, and that without factual allegations that Defendants engaged in conduct

proscribed by Section 510, Ms. Faren's interference and retaliation claims are not plausible. ECF No. 34-1 at 12-16.

Section 510 makes it "unlawful for *any person* to discharge, fine, suspend, expel, discipline, or discriminate against a participant" for exercising any right (retaliation) or interfering with the attainment of any right (interference) to which they are entitled under an employee benefit plan or under ERISA.  29 U.S.C. § 1140 (emphasis added).  By signing the severance agreement on May 13, 2022, Ms. Faren terminated her employment with ZOS.  ECF No. 31-1 ¶¶ 17 and 21.  Thus, at the time that ZOS allegedly failed to provide and/or retroactively cancelled Ms. Faren's continuation coverage, ZOS was no longer Ms. Faren's employer.

Although civil actions alleging Section 510 violations typically involve employers, the United States Court of Appeals for the Fourth Circuit has rejected a narrow interpretation of the statutory language that limits liability to employers.  *Custer* v. *Pan Am. Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993) ("In light of the plain language of the section, we cannot agree with the defendants that Congress intended to limit those who could violate § 1140 to employers.").  Other courts in this Circuit have followed suit, although their approach has not been uniform. *Williams* v. *Wright, et al.*, Civil Action No. BPG-21-2076, 2022 WL 2818949, at *3 (D. Md. July 19, 2022); *Eweka* v. *Hartford Life & Acc. Ins. Co.*, 955 F. Supp. 2d 556, 563-564 (E.D. Va. 2013); *Vogel* v. *Indep. Fed. Sav. Bank*, 692 F. Supp. 587, 593 (D. Md. 1988); *but see, e.g., Gross* v. *St. Agnes Health Care, Inc.*, Civil Action No. ELH-12-2990, 2013 WL 4925374, at *18 (D. Md. Sept. 12, 2013) (holding, among other things, that plaintiff could not sue plan administrator and claim administrator under Section 510 because "neither . . . was her employer").  The plain language of the statute, the reasoning of the *Custer* panel, and the weight of authority persuades the undersigned that Section 510 violations may be pled against "any person" who engages in the

statutorily prohibited retaliation or interference. *Custer*, 12 F.3d at 421 ("Since both terms, 'employer' and 'person,' are defined by ERISA, *see* 29 U.S.C. § 1002(5) and (9), we must assume that Congress used the term 'person' deliberately."); *see also Manuel* v. *Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 870 (5th Cir. 2018) (noting that "most circuits have concluded that an action can be maintained against a non-employer" and collecting Court of Appeals decisions).

When a non-employer is alleged to have violated Section 510 the plaintiff must "allege conduct on the part of the defendant that is actually proscribed by" Section 510. *Eweka*, 955 F. Supp. 2d at 563; *see also Williams*, 2022 WL 2818949, at *4. In doing so the plaintiff must meet the plausibility standard articulated in *Iqbal* and *Twombly*. *Williams*, 2022 WL 2818949, at *3; *Eweka*, 955 F. Supp. 2d at 563-564. Additionally, to state a claim for relief under Section 510, a plaintiff must plead that the defendant possessed specific intent to interfere or retaliate. *Conkwright* v. *Westinghouse Elec. Corp.*, 933 F.2d 231, 238-239 (4th Cir.1991). Recognizing that "employers rarely, if ever, memorialize their specific intent to act unlawfully," the Fourth Circuit has allocated the burdens of proof by using the three-step McDonnell Douglas burden-shifting framework. *Id.* at 239.

The first step of this framework requires the plaintiff to establish a *prima facie* case of interference or retaliation. *E.g.*, *Kirby*, 2013 WL 5883811, at *8-9. While courts have articulated the *prima facie* standard differently with respect to interference claims as compared to retaliation claims, their focus is the same: the defendant must perform a prohibited action for the purpose of interfering with the plaintiff's attainment of ERISA rights or retaliating against the plaintiff for exercising ERISA rights. *Csicsmann* v. *Sallada*, 211 Fed. Appx. 163, 168 (4th Cir. 2006); *Williams*, 2022 WL 2818949, at *3; *Hooker*, 447 F. Supp. 3d at 392. On a motion to dismiss, however, the required showing is somewhat different. Due to the posture of the case, a complaint need not allege specific facts establishing a *prima facie* case to survive a motion to

dismiss. *Kirby*, 2013 WL 5883811, at *9. Instead, the complaint must only "state a plausible

claim for relief that permit[s] the court to infer more than the mere possibility of misconduct

based upon its judicial experience and common sense." *Id.* (internal quotation marks and citation

omitted); *see also Hooker*, 447 F. Supp. 3d at 392.

Mere subjective speculation is insufficient to plead a plausible claim under Section 510.

*Eweka*, 955 F. Supp. 2d at 565. Additional factual allegations are required. *See*, *e.g.*, *Kirby*,

2013 WL 5883811, at *10 (defendant's statements that it would fire plaintiff after his eligibility

for severance benefits expired and misrepresentation of plaintiff's date of termination established

plausible claim for ERISA interference); *Williams*, 2022 WL 2818949, at *4-5 (the timing and

contents of defendant's state court lawsuit targeting plaintiff, among other allegations, were

sufficient to establish plausible claim for ERISA retaliation); *Hooker*, 447 F. Supp. 3d at 393

(defendant's falsified reason for terminating plaintiff, refusal to provide long-term disability

forms, and refusal to help plaintiff with the application established plausible ERISA

interference).

Viewing the facts alleged in the light most favorable to Ms. Faren and drawing all

reasonable inferences from those facts in her favor, the Amended Complaint fails to allege

sufficient facts to establish a facially plausible claim for interference or retaliation under Section

510. Ms. Faren alleges that ZOS and AP failed to provide her with continuation coverage and

retroactively canceled her insurance "to avoid bearing the cost of her medical expenses, and in

particular, those procedures relating to her transition." ECF No. 31-1 ¶¶ 51 and 55. These

allegations, without more, are "nothing more than [Ms. Faren's] own subjective speculation."

*Eweka*, 955 F. Supp. 2d at 565.

In support of her claims, Ms. Faren alleges that the discrimination based on her gender

identity and expression she experienced while working at ZOS; the close temporal proximity

between the exercise of her ERISA rights and the subsequent denial and/or retroactive cancellation of her health insurance; and ZOS's refusal after June 3, 2022, to assist her or provide notice of the denial of her benefits all give rise to the inference that Defendants violated Section 510.  ECF No. 37 at 11.  Each point fails to support a plausible claim.  First, Ms. Faren has not alleged that the discrimination she allegedly experienced from her supervisor and other employees beginning in January 2021 was in any way intended to adversely affect her rights under ERISA.  Second, the temporal proximity between Ms. Faren's exercise of her ERISA rights and the subsequent denial and/or retroactive cancellation of her insurance, standing alone, does not supply factual allegations that rise above the "sheer possibility" that Defendants engaged in conduct proscribed by Section 510.

Finally, the Amended Complaint is bereft of any facts that allege prohibited actions by Defendants specifically intended to interfere with Ms. Faren's attainment of continuation coverage or to retaliate for her exercise of continuation coverage.  In fact, other allegations in the Amended Complaint and the documents integral to her claims state otherwise.  When Ms. Faren first communicated her problems obtaining coverage to ZMI on June 2, 2022, ZMI's Benefits Director sent an "urgent message" to BCBS to obtain more information that same day.  ECF No. 31-1 ¶ 27.  ZMI's Benefits Director informed Ms. Faren that they were working to set up her insurance by the close of business; that coverage would be retroactive to June 1, 2022; and that BCBS had represented it would try to reactivate any prior authorizations.  *Id.* at ¶¶ 28-29.  ZMI continued to communicate with both Ms. Faren and BCBS (*id.* at ¶¶ 28-29 and 32), stating that the process for securing her continuation coverage was being "expedited" at ZOS's request and offering to continue to assist Ms. Faren in securing her benefits (ECF No. 34-6 at 2).  Although Ms. Faren alleges that neither Defendant sought to assist her after June 3, 2022, until she initiated this action, she fails to allege that she asked for assistance from Defendants after June 3,

2022.  The documents integral to the Amended Complaint establish that ZOS offered to continue to assist Ms. Faren in securing continuation coverage, which removes her interference and retaliation claims from the realm of plausibility.  The conclusory allegations that Ms. Faren points to in support of Counts I and II provide no safe harbor, as legal conclusions couched as factual allegations cannot support a finding of plausibility.  *See* ECF Nos. 37 at 13; 31-1 ¶¶ 51 and 55; *Iqbal*, 556 U.S. at 678.  Therefore, Counts I and II must be dismissed.

        B.      <u>Count IV – Breach of Fiduciary Duty</u>

Count IV alleges that Defendants breached their fiduciary duties, as defined in Section 404, codified at 29 U.S.C. § 1104, when they misrepresented that they would uphold the terms of the severance agreement; took Ms. Faren's premium payment; and failed to provide continuation coverage, make reasonable efforts to remedy the situation, and disclose that ZOS had cancelled her health insurance coverage.  ECF No. 31-1 ¶ 70.  ZOS argues that this count must be dismissed because Ms. Faren does not plead sufficient facts to establish a fiduciary duty or breach thereof and that, in any event, Count IV is actually a masked claim for benefits.  ECF No. 34-1 at 21-26.

To establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must allege that (1) defendant was a fiduciary of the ERISA plan; (2) defendant breached their fiduciary responsibilities under the plan; and (3) plaintiff requires injunctive or other equitable relief to remedy the violation or enforce the plan.  *Adams* v. *Brink's Co.*, 261 Fed. Appx. 583, 589-590 (4th Cir. 2008).  With respect to the first element, ERISA contemplates two types of fiduciaries: (1) fiduciaries named in the plan documents "as having the authority to control and manage the operation and administration of the plan" and (2) functional fiduciaries who perform "specified discretionary functions with respect to the plan's management, assets, or

administration of a plan in a *de facto* capacity." *Juric* v. *USALCO, LLC*, 659 F. Supp. 3d 619,

630 (D. Md. 2023) (internal quotation marks and citation omitted).

An employer that does not have authority to control or manage the ERISA plan or

perform discretionary functions with respect to the ERISA plan is not an ERISA fiduciary.

*Gross*, 2013 WL 4925374, at *16. "Under ERISA an employer that establishes or maintains an

employee benefit plan is a 'sponsor.'" *Coyne & Delany Co.* v. *Selman*, 98 F.3d 1457, 1465 n.8

(4th Cir. 1996) (quoting 29 U.S.C. § 1002(16)(B)). However, the mere fact that "an employer is

an ERISA plan sponsor does not automatically convert the employer into a plan fiduciary."

*Moon* v. *BWX Techs., Inc.*, 577 Fed. Appx. 224, 229 (4th Cir. 2014); *Coyne & Delany Co.*, 98

F.3d at 465 ("[A] plan sponsor does not become a fiduciary by performing settlor-type functions

such as establishing a plan and designing its benefits.").

Viewing the facts alleged in the light most favorable to Ms. Faren and drawing all

reasonable inferences from those facts in her favor, the Amended Complaint fails to plead

sufficient facts to establish that ZOS acted as an ERISA fiduciary. Ms. Faren alleges in her

Amended Complaint that AP served as the third-party administrator for the group healthcare plan

that ZMI sponsors. ECF No. 31-1 ¶¶ 5 and 19. The Amended Complaint is devoid of any

factual allegations that ZOS had authority to control or manage the ERISA plan or that it

performed any discretionary functions with respect to the plan. Instead, Ms. Faren asserts only

that ZOS acted as a fiduciary when it presented the severance agreement to her and represented

that her health insurance was active when it was not. *Id.* at ¶¶ 63-64. These assertions fail to

allege that ZOS acted as an ERISA fiduciary.

First, nothing in the Amended Complaint or the severance agreement indicates that ZOS

was acting as an ERISA fiduciary when presenting the severance agreement to Ms. Faren. The

severance agreement provides that Ms. Faren would have 18 months of continuation coverage

under COBRA and that ZMI would pay the employee portion of the premium for the first four months, but it in no way alters ZMI's role as the plan sponsor.  ECF No. 31-1 ¶¶ 17-19. Moreover, the severance agreement contains language that implicitly disavows that ZOS was acting as a fiduciary on behalf of Ms. Faren in any capacity.  ECF No. 35-1 at 6 and 8.

Second, the representation that Ms. Faren had continuation coverage was merely an administrative task, not a fiduciary function.  *E.g.*, *Estate of Weeks* v. *Advance Stores Co.*, 99 Fed. Appx. 470, 476 (4th Cir. 2004) ("[R]eading a computer screen to determine who is and who is not covered does not make someone an ERISA fiduciary because such a function is administrative rather than discretionary.") (internal quotation marks and citation omitted).  In sum, Ms. Faren fails to plead any facts alleging that ZOS acted as a fiduciary within the meaning of ERISA, *i.e.*, that ZOS controlled or managed the plan or performed specified discretionary functions with respect to the plan.

Furthermore, it is evident that Ms. Faren's breach of fiduciary duty claim is little more than a repackaged claim for benefits that is not cognizable as pleaded in the Amended Complaint.  Section 502, codified at 29 U.S.C. § 1132, contains ERISA's civil enforcement provisions.  As the Fourth Circuit has explained, a plan participant may bring a civil action under Section 502(a)(2) to recover losses to the plan caused by a breach of a fiduciary duty.  *Rose* v. *PSA Airlines, Inc.*, 80 F.4th 488, 494 (4th Cir. 2023).  Any such recovery, however, inures to the benefit of the plan, not the individual beneficiary.  *Id.*

For a plan participant to recover directly, the participant must bring suit under Section 502(a)(1)(B) to recover benefits due or enforce rights under the plan, or under Section 502(a)(3), the "catch all provision" that provides for injunctive or other equitable relief.  *Id.*  The "catch all provision," however, is available only to redress violations that Section 502 does not elsewhere provide an adequate remedy.  *Korotynska* v. *Metro. Life Ins. Co.*, 474 F.3d 101, 106-107 (4th

Cir. 2006) (holding that a breach of fiduciary duty claim brought under Section 502(a)(3) could not lie because plaintiff had an adequate remedy for her denial of benefits claim under Section 502(a)(1)(B)).  The *Korotynska* panel explained that allowing claims under Section 502(a)(3) "would permit ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected."  *Id.* at 107 (quoting *Wilkins* v. *Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615-616 (6th Cir. 1998) (collecting cases).

Thus, courts in this Circuit do not permit the repackaging of an individual benefits claim under Section 502(a)(1)(B) as a breach of fiduciary duty claim under Section 502(a)(3).  *Estate of Spinner* v. *Anthem Health Plans of VA*, 589 F. Supp. 2d 738, 745 (W.D. Va. 2008), *aff'd sub nom.*, 388 Fed. Appx. 275 (4th Cir. 2010) ("Courts have repeatedly dismissed § 502(a)(2) claims used by plaintiffs as a means to recover individual benefits allegedly owed to individual participants or beneficiaries.") (collecting cases); *accord Juric*, 659 F. Supp. 3d at 629; *Chavis*, 2018 WL 4052182, at *12; *Wozniak* v. *S.T.A. of Baltimore--I.L.A. Container Royalty Fund*, Civil Action No. GLR-12-1540, 2012 WL 5388845, at *4 (D. Md. Oct. 31, 2012).  A claim for breach of fiduciary duty is, in actuality, a claim for benefits when resolution of the claim requires interpretation and application of the plan rather than the ERISA statute.  *E.g.*, *Hainey*, 2023 WL 3645514, at *8; *Juric*, 659 F. Supp. 3d at 628-631; *Barnett* v. *Perry*, Civil Action No. CCB-11-122, 2011 WL 5825987, at *4-5 (D. Md. Nov. 16, 2011).  Also instructive is the type of relief sought.  Individual remedies, such as "retroactive reinstatement to the Plan and reimbursement for their costs," are indicative that an "ERISA breach of fiduciary duty claim is actually a claim for ERISA benefits."  *Barnett*, 2011 WL 5825987, at *5.

Similar to the cited cases, Ms. Faren's breach of fiduciary claim is a masked claim for benefits because it requires interpretation and application of the plan and it seeks individualized remedies, including "out of pocket costs resulting from the discontinuance of her health care

16

coverage." ECF No. 31-1 at 10. At its core, the Amended Complaint alleges that Ms. Faren's benefits claims were improperly denied. *Korotynska*, 474 F.3d at 106 (holding that breach of fiduciary duty was denial of benefits claim, in part, because "the only injury of which she complains is the termination of benefits and the resulting financial harm to her"). Yet, Ms. Faren declined to bring a benefits claim under Section 502(a)(1)(B). She cannot now seek individual compensation for a denial of benefits under the guise of a breach of fiduciary duty claim. Count IV of the Amended Complaint must therefore be dismissed.

C.     Count III – Violation of COBRA

Count III alleges a violation of ERISA Section 601, codified at 29 U.S.C. § 1161, based on allegations that Defendants failed to provide Ms. Faren with continuation coverage. ECF No. 31-1 ¶¶ 59-60. ZOS argues, among other things, that this count must be dismissed because Ms. Faren fails to allege that it failed to fulfill its duties under COBRA. ECF No. 34-1 at 16-21.

Section 601(a) requires that an employer that sponsors a group health plan provide qualified beneficiaries the opportunity to elect continuation coverage if they experience a qualifying event that would cause them to lose their existing coverage.[5] 29 U.S.C. § 1161(a); *Homan* v. *T.W. Garner Food Co.*, Civil Action No. 95-1936, 1996 WL 537116 (4th Cir. Sept. 23, 1996) (noting that COBRA amended ERISA to provide "for limited continuation of coverage rights under employer-provided group health insurance"). An employee's termination (other than for the employee's gross misconduct) is a qualifying event that triggers the employer's required notice to the plan administrator, which must then provide notice to the qualified beneficiary of the right to continuation coverage under COBRA. 29 U.S.C. §§ 1163(2);

---

[5] An exception to this requirement based on the employer's size is set out in Section 601(b), codified at 29 U.S.C. § 1161(b).

1166(a)(2) and (c).  Both notice requirements must occur within a statutorily defined timeframe.  29 U.S.C. §§ 1166(a)(2) and (c).[6]

If the plan administrator fails to provide the requisite notice of COBRA rights or timely respond to a request for information that the administrator is required to furnish, a plan participant or beneficiary may initiate a civil action for relief pursuant to ERISA's civil enforcement provisions set out in Section 502.  *Pressley* v. *Tupperware Long Term Disability Plan*, 553 F.3d 334, 337 (4th Cir. 2009); 29 U.S.C. § 1132(a)(1)(A) and (c)(1)(A)-(B).  The applicable enforcement provision, Section 502(c)(1), provides that, in the court's discretion, the plan administrator may be penalized in the amount of up to $110 per day from the date it failed to provide notice or refused to send required information upon request.  29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1; *Covert* v. *Lane Constr. Corp.*, Civil Action No. 1:11-CV-1156, 2013 WL 12136499, at *1 (M.D.N.C. Apr. 19, 2013).  The purpose of the statutory penalty is "not to compensate the participants for injuries, but to punish noncompliance with ERISA."  *Faircloth* v. *Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996).

Ms. Faren acknowledges that Defendants provided her with the required COBRA notice (ECF No. 31-1 ¶¶ 19 and 22) and does not allege that Defendants failed to timely respond to a request for information.  There is therefore no factual basis for the imposition of penalties under Section 503(c)(1).  Ms. Faren's core contention, once again, is that Defendants failed to provide continuation coverage to which she was entitled.  ECF No. 31-1 ¶ 59.  This denial of benefits claim is not cognizable under the COBRA enforcement provisions.  29 U.S.C. § 1132(c)(1).  As discussed previously, Section 502(a)(1)(B) is the proper enforcement vehicle to seek relief for an individual benefits claim.  29 U.S.C. § 1132(a)(1)(B) (authorizing suit by a participant or

---

[6]  There is a separate timeframe for the notice requirement where the employer is both the plan sponsor and administrator.  29 C.F.R. § 2590.606–4(b).

beneficiary to, among other things, recover benefits due under the terms of his plan); *Rose*, 80 F.4th at 494 (explaining that a plaintiff may pay for the treatment and later seek reimbursement under Section 502(a)(1)(B)).  Ms. Faren's response in opposition to ZOS's motion asserts that "[e]nforcement of COBRA may be brought under ERISA's civil enforcement provisions, which [she] has done by bringing claims under ERISA § 510 (Claims I and II) and ERISA § 502 (Claim IV)."  ECF No. 37 at 14.  To the extent that Ms. Faren argues that her COBRA violation claim is duplicative of her interference, retaliation, and breach of fiduciary duty claims or may be asserted in tandem with those claims, it also fails for the reasons previously discussed.

        D.      <u>Entitlement to Relief Under Section 502(a)(3)</u>

Even if the Amended Complaint had pleaded facts sufficient to allege plausible claims, Counts I through IV must nevertheless be dismissed because they fail to state plausible claims that are *entitled to relief*.  Ms. Faren's prayer for relief seeks actual and consequential damages, injunctive relief directing Defendants to reinstate Ms. Faren as a participant in the group healthcare plan until the end of the 18-month period of continuation coverage, surcharge, and attorney's fees and costs.  ECF No. 31-1 at 10.  None of these remedies are available to Ms. Faren as the Amended Complaint is pleaded.

The relief available to plan participants through civil enforcement of ERISA violations is outlined in Section 502, codified at 29 U.S.C. § 1132.  Here, the Amended Complaint seeks relief only under the "catch all provision," Section 502(a)(3).  ECF No. 31-1 ¶ 1.  Accordingly, Ms. Faren's remedies are limited to injunctive or other equitable relief to redress violations or enforce provisions of ERISA or the terms of the plan.  29 U.S.C. § 1132(a)(3).  Neither compensatory "make whole" damages nor surcharge damages are permitted under Section 502(a)(3).  *Rose*, 80 F.4th at 504-505; *Suchin* v. *Fresenius Med. Care Holdings, Inc.*, Civil Action No. JKB-23-01243, 2024 WL 449322, at *17 (D. Md. Feb. 6, 2024).  To the extent the

Amended Complaint seeks reimbursement for medical care following the denial of benefits, it fails to seek relief under Section 502(a)(1)(B).

Ms. Faren may seek injunctive relief, but her requested reinstatement as a plan participant is moot for two reasons.  First, she elected to obtain new coverage when she started a new job in September 2022.  Second, the 18-month period for continuation coverage expired in November 2023.  Therefore, even if Ms. Faren had adequately alleged ERISA violations, she is not entitled to equitable relief.  *Suchin*, 2024 WL 449322, at *17 ("[T]he fact that a defendant violates ERISA 'does not necessarily mandate' that the Court impose a remedy.") (quoting *Pender* v. *Bank of Am. Corp.*, 736 Fed. Appx. 359, 369 (4th Cir. 2018)); *see also DiSabatino* v. *DiSabatino Bros., Inc.*, 894 F. Supp. 810, 815 (D. Del. 1995) (holding that "plaintiff's continuation period has ended and the defendants are relieved of the duty of offering the option of continuation coverage to plaintiff").

Finally, an award of attorney's fees under ERISA lies within the discretion of the court. 29 U.S.C. § 1132(g); *Quesinberry* v. *Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (4th Cir. 1993).  However, the Supreme Court has instructed that "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)."  *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).  A stand-alone fee award is therefore unavailable to Ms. Faren because she has not adequately pleaded plausible ERISA claims or that she is entitled to relief under the statute.  *See Plasterers' Loc. Union No. 96 Pension Plan* v. *Pepper*, 663 F.3d 210, 223 (4th Cir. 2011) (advising that the district "court should use the *Hardt* analysis to first determine whether either party is eligible for an attorney['s] fee award, and then analyze the *Quesinberry* factors in exercising its discretion whether to make an award").

**IV.    Conclusion**

For the forgoing reasons, it is hereby ordered that ZOS's Motion to Dismiss and to Strike (ECF No. 34) is granted as to dismissal of the claims and denied as moot as to striking the jury demand in the Amended Complaint.  Ms. Faren's Amended Complaint (ECF No. 31-1) is dismissed without prejudice as to Defendant ZOS.  A separate Order will follow.

Pursuant to the Court's previous Order (ECF No. 46), Defendant AP, which did not join in ZOS's motion, remains in this action.[7]  Accordingly, by April 15, 2024, Ms. Faren shall file a stipulation of dismissal as to AP signed by all remaining parties (Ms. Faren and AP), move for a court order dismissing AP from this action, or show cause as to why the Court should not enter an order dismissing AP from this case in light of Ms. Faren's previous filing (ECF No. 45).


Date: March 29, 2024                                                   _____/s/_____

                                                                                       Erin Aslan
                                                                                       United States Magistrate Judge

---

[7] On July 21, 2023, ZOS moved to dismiss the Complaint.  ECF No. 25.  Instead of opposing the motion, Ms. Faren filed an Amended Complaint (ECF No. 31), to which AP timely filed an Answer (ECF No. 38).  Ms. Faren subsequently filed a notice of voluntary dismissal with prejudice against AP pursuant to Federal Rule of Civil Procedure 41(a).  ECF No. 45.  The undersigned entered an order advising Ms. Faren that her notice was deficient because AP had already responded to the Amended Complaint and therefore she could not dismiss her claims against AP without either a stipulation of dismissal signed by all parties or a court order.  ECF No. 46; Fed. R. Civ. P. 41(a)(1)-(2).